IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALENA W. HAMMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 13 C 6397 |
| | ) | |
| RESIDENTIAL CREDIT SOLUTIONS, INC., | ) | Judge Durkin |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S AMENDED MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Residential Credit Solutions ("RCS"), by and through its attorneys, David M. Schultz, John P. Ryan, and Palak N. Shah, present its Motion to Dismiss pursuant to Fed.Civ.Pro Rule 12(b)(6), and in support of its motion RCS states as follows:

**INTRODUCTION**

There is currently an action pending between RCS and Alena Hammer ("Plaintiff") in the Eighteenth Judicial Circuit of Illinois under case number 2011 CH 4503 ("Foreclosure Action"). In the Foreclosure Action, RCS as servicer of Plaintiff's mortgage filed a complaint seeking to foreclose on Plaintiff's defaulted mortgage. Plaintiff claims in the Foreclosure Action that her mortgage is not in default because she had a contract to modify her loan.

Approximately two years later, Plaintiff filed this four count complaint in Federal Court on September 6, 2013. [DKT#1]. The Counts are titled as follows: Count I "Breach of Contract"; Count II "Violation of Fair Debt Collection Practices Act"; Count III "Violation of Consumer Fraud Act"; Count IV "Real Estate Settlement Procedures Act (Against RCS)". The primary premise underlying each count of Plaintiff's complaint is that RCS allegedly filed a wrongful foreclosure action against Plaintiff because Plaintiff agreed to a loan modification with

AmTrust Bank prior to RCS becoming the servicer. RCS moves to dismiss each count of Plaintiff's complaint.

## SUMMARY OF RELEVANT ALLEGATIONS

Plaintiff alleges that all of her claims "stem from" the foreclosure complaints that were filed in 2009 and 2011. [DKT#1, ¶2]. On December 9, 2003, Plaintiff executed a mortgage in favor of First Centennial Mortgage, Inc. (the "Mortgage"). *Id.* at ¶19. Subsequently, AmTrust began servicing the Mortgage. *Id.* at ¶23. Plaintiff alleges that in August 2009, AmTrust declared the Mortgage in default because Plaintiff failed to make the required payments. *Id.* at ¶¶26-27. Thereafter, AmTrust filed a foreclosure action on September 9, 2009 in DuPage County, Illinois. *Id.* at ¶28. While AmTrust's foreclosure action was pending, it was taken over by the Federal Deposit Insurance Corporation ("FDIC"). *Id.* at ¶29. Plaintiff alleges that she applied for a loan modification in February of 2010. *Id.* at ¶34. Plaintiff argues that the loan modification sought to add $2,303.60 in fees and costs to her loan. *Id.* at ¶¶33-42. Plaintiff refused to pay the fees and costs for the loan modification. *Id.* at ¶¶38-46. Plaintiff refused to sign the loan modification agreement because it contained the aforementioned fees and costs. However, she still made two payments to AmTrust in the amount of what her new payments would have been under the loan modification. *Id.* at ¶¶41, 44.

Prior to Plaintiff signing the loan modification agreement, RCS began servicing Plaintiff's mortgage on August 1, 2010. *Id.* at ¶43. Plaintiff admits that she knew on July 23, 2010 that RCS would begin servicing her mortgage on August 1, 2010. Thereafter on August 14, 2010, without any agreement from RCS, Hammer revised the principal amount of the loan identified in the loan modification agreement, signed it and then sent it to RCS. *Id.* at ¶46.

Although she admits that RCS was servicing the loan in August of 2010 and she never spoke to any at RCS about modifying the terms of the loan modification, Plaintiff argues that the loan modification agreement is still enforceable and thus, the foreclosure action was improper.

## ARGUMENT

I.   **Hammer's Complaint should Be Dismissed in Its Entirety Because the Allegations fail to State a Valid Claim.**

All four counts of Hammer's complaint should be dismissed because the allegations, even assuming them to be true, fail to state a valid claim. F.R.C.P 12(b)(6) provides for dismissal of a complaint when it fails to state a claim upon which relief can be granted. A plaintiff is obligated to provide more than conclusions, and a formulaic recitation of the elements of a cause of action to survive dismissal. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). In considering a motion to dismiss, a district court may consider any facts set forth in the complaint that undermine the plaintiff's claim, including exhibits attached to the complaint. *See* Fed.R.Civ.P. 10(c); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

The *Twombly/Iqbal* standard requires a pleading to contain sufficient factual allegations to show a "plausible" claim for relief. *Bissesur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009). In determining "plausibility" the court may disregard conclusory allegations even if they are alleged in the form of factual allegations. *Twombly*, 127 S. Ct. at 1950. ("for the purposes of a motion to dismiss ... we are not bound to accept as true a legal conclusion couched as a factual allegation").

### A. Count I alleging breach of contract should be dismissed because RCS never assented to the loan modification, therefore, no contract existed.

Hammer's breach of contract claim should be dismissed because RCS cannot be held liable for a contract it did not sign or assent to. Under Illinois law, a plaintiff alleging breach of

130725864v1 0951421

contract must show first and foremost show the existence of a valid and enforceable contract. In Illinois, the "test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender." *Avevedo v. CitiMortgage, Inc.*, 2012 WL 3134222, at *4 (N.D. Ill. July 25, 2012) quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012); *see also* Restatement (Second) of Contracts § 24 (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.").

A failure to execute an agreement by not signing and assenting to its terms is fatal to a breach of contract claim. *Avevedo*, 2012 WL 3134222 at *8. In *Avevedo*, the plaintiffs claimed that the defendant was liable for breach of contract because the Home Affordable Modification Program Trial Period Plan agreement (TPP) contained an offer for a HAMP loan modification, which they accepted by executing the TPP and returning it to defendant. *Id.* at *1. This Court agreed with the defendant that the TPP did not create an enforceable contract because although the defendant sent a TPP to the plaintiffs, it advised them that the TPP would not take effect unless and until both the defendant and the lender signed the TPP, which they did not. *Id.* This Court held that the lack of signature by the defendant rendered the TPP unenforceable, therefore, the breach of contract claim was dismissed. *Id.* at *8.

Similarly here, even though AmTrust offered Plaintiff a loan modification, Plaintiff refused to sign the loan modification because it included fees and costs that Plaintiff did not want to pay. The loan modification agreement which Plaintiff seeks to enforce was not signed by either RCS or AmTrust. *See* Dkt#1, Ex. A. Moreover, Plaintiff admits that she never agreed to the loan modification with AmTrust before RCS took control of the Mortgage on August 1, 2010. It was not until thirteen days after RCS took control of the Mortgage that Hammer

4

unilaterally modified the loan modification, signed it and mailed the modification to RCS.

Importantly, Plaintiff knew that RCS became the servicer of her Mortgage on August 1, 2010 and she admits that she failed to discuss the modification with anyone at RCS prior to changing the agreement. *See* Dkt#1, ¶¶43, 46. Plaintiff alleges that someone from AmTrust gave her permission on August 14, 2010, to strike out the principal balance on the loan modification and reduce it by $2,303.30.[1] Plaintiff knew that AmTrust had no authority to tell her that she could revise the principal terms of the loan modification because Plaintiff knew that AmTrust no longer was the servicer of her Mortgage after August 1, 2010. In fact after Plaintiff made unilateral changes to the loan modification agreement, she sent the agreement to RCS and not AmTrust. Further, the loan modification was never signed and agreed upon by RCS; nobody from AmTrust signed it either. Hammer does not allege that anyone from RCS authorized her to modify the loan modification agreement. Therefore, no meeting of the minds occurred between RCS and Hammer regarding the loan modification agreement. As such, the loan modification is unenforceable because there was no mutual assent of the parties to bind themselves.

Moreover, Hammer's breach of contract claims should be dismissed because she fails to plead sufficient damages with respect to the claim. "Proof of damages is an essential element of a breach of contract claim." *Kevelighan v. Orlans Assocs., P.C.*, 498 Fed.Appx. 469, 476 (6th Cir. 2012). Damages for embarrassment, humiliation, and emotional distress are not available for breach of contract. *Id.* Hammer did not allege any proof of actual damages because there were none; she was able to live in a house that she quit making payments. Consequently, her clam for breach of contract should be dismissed.

---

[1] Assuming Plaintiff's allegations are true, it is odd that an AmTrust representative told her to change the principal loan amount without changing any of the interest payments which are calculated based upon the principal amount. Consequently, if the principal amount was lowered, the interests payments would have had to be lowered as well, but they were not.

### B. Count II alleging an FDCPA violation should be dismissed because it is time barred.

Hammer's claim against RCS alleging an FDCPA violation should be dismissed because it is time barred. Claims under the FDCPA are subject to a one-year limitation period that begins to run on the date of the violation of the statute. 15 U.S.C. § 1692k(d). An FDCPA claim based upon wrongful litigation begins to run when the alleged wrongful litigation begins. *Woods v. Wells Fargo Financial Bank*, 2010 WL 4629905, at *3 (S.D. Ind. Nov. 4, 2010) citing *Judy v. Blatt, Hasenmiller, Liebsker and Moore, LLC*, 2010 WL 431484, at *3 (N.D. Ill. Jan. 29, 2010); *see also Gulley v. Pierce & Associates*, 2010 WL 5060257, at *3 (N.D. Ill. 2010) (claim did not accrue until defendant attempted to collect the debt). "When the allegations of the complaint reveal that relief is barred by the statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins,* 644 F.3d 577, 582 (7th Cir. 2011); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

The Northern District of Illinois has recognized that there is a split of authority over whether the filing of a debt collection lawsuit or its service on the consumer starts the clock for FDCPA purposes. *Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 545-56 (N.D. Ill. 2012). However, the Northern District held in *Terech* that the clock runs from the date of service reasoning that "whether the statute of limitations did not begin to run until [service], or the limitations period was equitably tolled until plaintiff was served," the result is the same. *Id.*

Regardless of whether we use the date that the foreclosure complaint was filed or served upon Plaintiff, Count II is time barred. Plaintiff even concedes that *any* alleged FDCPA violations occurred during or before 2011 which is well outside the one year statute of limitations in which she had to file her claim. Plaintiff filed this action on September 6, 2013, therefore, the FDCPA violation that is the basis for her claim must have occurred on or after

September 6, 2012, which they did not. Plaintiff's complaint plainly states that "All of the claims stated herein stem from the wrongful servicing, debt collection, and loss mitigation activities related to Hammer's mortgage loan, and the ensuing wrongful foreclosure actions filed against Hammer in both 2009 and 2011." [DKT#1, ¶2]. As such, Hammer's alleged FDCPA should be dismissed as untimely.

### C. Count III alleging a violation of the Illinois Consumer Fraud Act should be dismissed because proximate cause and actual damages have not been pled with specificity, because the foreclosure actions are not governed by the Illinois Consumer Fraud Act, and because some of Hammer's allegations are time barred.

Count III for an alleged violation of the Consumer Fraud Act should be dismissed because Plaintiff fails to plead each element with specificity as required by Rule 9. To the extent that the foreclosure actions against Plaintiff forms the basis of her Consumer Fraud claim, it must be dismissed because litigation is not trade or commerce, and therefore, it is not governed by the Consumer Fraud Act. Moreover, any allegations in support of Hammer's consumer fraud claim that occurred on or before September 6, 2010 must be stricken as they are outside the three year statute of limitations.

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") a plaintiff must allege: 1) a deceptive act or practice by the defendant; 2) the defendant's intent that plaintiff rely on the deception; 3) that the deception occurred in the course of conduct of trade or commerce; 4) actual damage to the plaintiff; and 5) that the damage was proximately caused by the defendant. *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 2009 WL 2777995, at *4 (N.D. Ill. Aug. 31, 2009). Moreover, "a complaint alleging a violation of the ICFA must be pleaded with particularity and must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Id.* (ICFA claim dismissed for failure to plead with

7

specificity the who, what, where, when, and how of the alleged consumer fraud); *see also Davis v. G .N. Mortgage Corp.,* 396 F.3d 869, 883 (7th Cir. 2005). This heightened standard requires that a plaintiff allege the identity of the person making the representation, the time, place and contents of the misrepresentation, and the method by which the misrepresentation was communicated. *See DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990) (describing Rule 9(b) particularity as "the who, what, when, where, and how: the first paragraph of any newspaper story").

### 1. Hammer fails to plead proximate cause and actual damages with specificity.

Count III should be dismissed because there was no deception which proximately caused Plaintiff to suffer actual damages. Plaintiff fails to allege with specificity any facts regarding how she was deceived by RCS or anyone else in this case. Rather, Plaintiff makes conclusory allegations of "deception" without providing any of the "who, what, when, where, and how" details or without explaining how these alleged acts actually deceived her.

Additionally, Plaintiff has not suffered nor pled any actual damages. The failure to allege specific actual damages precludes a plaintiff from pursuing a claim under the ICFA. *Cooney v. Chicago Public Schools,* 943 N.E.2d 23, 31 (1st Dist. 2010). The actual damages must arise from "purely economic injuries" to state a violation of the ICFA. *See Morris v. Harvey Cycle & Camper, Inc.,* 392 Ill.App.3d 399 (1st Dist. 2009). Plaintiff fails to allege how, when or why she suffered actual damages. Plaintiff has lived in her home, essentially, for free since early 2009. Outside of three alleged payments at a reduced amount, Plaintiff has not made any other payments on her mortgage for over four years. Plaintiff alleges that she has been charged for hazard insurance and taxes; however, she has not made any payments for those charges nor any amounts due on the loan. Thus, Count III of Plaintiff's complaint should be dismissed because

she has fails to plead proximate cause and actual damages with specificity.

### 2. To the extent that Count III is based upon litigation, it must be dismissed because the ICFA does not govern litigation.

To the extent that Count III is based upon the filing of a lawsuit or correspondence between counsel regarding the lawsuit, Plaintiff's claim for consumer fraud fails. Litigation is not trade or commerce as defined by the ICFA, and therefore, is not governed by the ICFA. The ICFA defines "trade" and "commerce" as

> "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILCS 505/1(f).

Thus, Plaintiff's consumer fraud claim should be dismissed because her claim is based upon the filing of a foreclosure action (which is litigation) and such conduct is not governed by the consumer fraud act as it does not qualify as trade or commerce. *See Genschorck v. Suttell & Hammer, P.S.*, 2013 WL 6118678 (E.D.Wash. Nov. 2013) (holding the filing of a wrongful wage garnishment is not trade or commerce, so it is not governed by the consumer protection act).

Further, the filing of a foreclosure lawsuit and the allegations contained therein, cannot be the basis for a consumer fraud claim because of the litigation privilege. *PSN Illinois, Inc. v. Ivoclar Vivadent, Inc.*, 2005 WL 2347209, at *6 (N.D. Ill. Sept. 21, 2005) (in dismissing Ivoclar's counterclaim for an alleged violation of the ICFA, the court held that "the litigation privilege also precludes Ivoclar's deceptive trade practices claim based on statements made in the course of litigation"). "Free access to the Courts as a means of settling private claims or disputes is a fundamental component of our judicial system, and courts should be open to litigants for the settlement of their rights without fear of prosecution for calling upon the courts to determine such rights . . . This same public interest demands that we reject any effort to extend

9

tort liability for the wrongful filing of a lawsuit beyond the ambit of an action for malicious prosecution or abuse of process." *Havoco of America, Ltd. v. Hollobow,* 702 F.2d 643, 647 (7th Cir. 1983), quoting, *Lyddon v. Shaw,* 56 Ill.App.3d 815, 821 (2d Dist. 1978). These considerations apply with equal force to both litigants and their attorneys. *Lyddon,* 56 Ill.App.3d at 822. "The very purpose of a court of law is to determine whether an action filed by a party has merit and we refuse to recognize a rule which render a litigant and his attorney liable in tort for negligently (or even, willfully and wantonly) failing to determine in advance that which, ultimately, only the Courts could determine." *Id.* Thus, Count III should be dismissed.

### 3. To the extent that Count III is based upon any allegations occurring on or before September 6, 2010, those allegations are time barred.

To the extent that Plaintiff's consumer fraud claim is based upon any allegations that occurred on or before September 5, 2010, those allegations should be stricken because they are time barred. A claim under the Consumer Fraud Act is "forever barred unless commenced within 3 years after the cause of action accrued." 815 ILCS 505/10a(e). Plaintiff filed her claim on September 6, 2013. Thus, Plaintiff's consumer fraud claim is barred, at least in part, because she bases this count on conduct that occurred prior to September 6, 2010.

### D. Count IV alleging a RESPA violation should be dismissed because RESPA does not apply to mortgages already in foreclosure.

Plaintiff's alleged RESPA violation count should be dismissed because RESPA does not apply to loans in default. RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans. *Catalan v. GMAC Mortgage Corp.,* 629 F.3d 676, 680 (7th Cir. 2011). The statute imposes duties on loan servicers including responding within 20 days of a borrower's qualified written request (QWR) for information *relating to the servicing of such loan. Bilek v. Bank of America, N.A.,* 2011 WL

830948, at *4 (N.D.Ill. Mar. 3, 2011) citing 12 U.S.C. § 2605(e)(1)(A). RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

A loan that is in default or a mortgage that is in foreclosure falls outside the purview of RESPA because the servicer is no longer receiving any scheduled periodic payments, and thereby, no longer "servicing" the loan. *Bilek*, 2011 WL 830948 at *5 (RESPA did not apply to mortgage that was in foreclosure almost two years before plaintiff made any type of QWR because servicer was no longer receiving any scheduled periodic payments at the time QWR letters were sent); *Daw v. Peoples Bank & Trust Co.*, 2001 WL 195077, at *1 (7th Cir. Feb. 22, 2001) (RESPA did not apply because after default, there were no longer any scheduled periodic payments to make or to collect, and thus there were no servicing rights to assign, sell, or transfer); *Sanchez v. Onewest Bank, FSB*, 2013 WL 139870, at *3 (N.D. Ill. Jan. 10, 2013) (Servicer had no obligation to respond to QWR under RESPA because property was already in foreclosure three weeks prior to receiving QWR).

Plaintiff admits that she fell into default of her mortgage in August 2009, but, she sent RCS a QWR on October 28, 2011. [DKT#1, ¶¶ 27, 101]. As of Plaintiff default in August 2009, no servicing rights existed to be assigned, sold or transferred, so RESPA did not apply at the time Plaintiff sent RCS a QWR. Therefore, there were no longer any scheduled periodic payments for RCS to collect or "service." As such, Plaintiff's RESPA count should be dismissed as RESPA does not apply to loans and mortgages in default. Plaintiff's Complaint fails to state any valid claims, and therefore, it should be dismissed in its entirety.

## **CONCLUSION**

WHEREFORE, defendant, Residential Credit Solutions, Inc., respectfully requests this Court dismiss Plaintiff's Complaint with prejudice pursuant to F.R.C.P 12(b) and for any other relief this Court deems appropriate.

Respectfully submitted,
Residential Credit Solutions, Inc.

By: /s/ John P. Ryan
    One of its Attorneys
    John P. Ryan
    HINSHAW & CULBERTSON
    222 N. LaSalle Street, Ste 300
    Chicago, IL 60601
    (312) 704-3000

130725864v1 0951421

## **CERTIFICATE OF SERVICE**

      I, an attorney, hereby certify that on January 27, 2014, I electronically filed Defendant's Memorandum in Support of its Amended Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                          /s/ John P. Ryan
                                          John P. Ryan

130725864v1 0951421