UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALENA W. HAMMER, | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| | ) | File No. 1:13-cv-6397 |
| v. | ) | |
| RESIDENTIAL CREDIT SOLUTIONS, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | Honorable Judge Durkin |
| | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO SEEK INFORMATION ABOUT DEFENDANT'S FINANCES, NET WORTH, AND WEALTH FOR PURPOSES OF PUNITIVE DAMAGES**

Plaintiff Alena W. Hammer ("Hammer") brings this motion for leave to seek information about Defendant Residential Credit Solutions, Inc.'s finances, net worth, and wealth for purposes of punitive damages sought in Count II and Count III of Hammer's amended complaint:

**BACKGROUND**

1. On September 6, 2013, Hammer filed the instant lawsuit against Defendant Residential Credit Solutions, Inc. ("RCS"). On September 26, 2014, Hammer filed an amended complaint against RCS that included the following causes of action:

   a. **Count I** – Breach of Contract;
   b. **Counts II & III** – Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Unfairness and Deception); and
   c. **Count IV** – Violations of the Real Estate Settlement Procedures Act.

   (hereinafter "Compl.") [DKT #43.]

2. Hammer alleged that RCS refused to acknowledge a valid loan modification since August 2010, rejected over 50 timely monthly mortgage payments, and continued to treat Hammer's loan as if it were is default through the date of this motion. In doing so, RCS proceeded with two

wrongful foreclosures against Hammer, even though Hammer was fully current on her payment obligations. (Compl. *generally*.)

3. Hammer further alleged that RCS illegally force placed insurance on Hammer's home, charged Hammer, and set up an illegal escrow account, even though Hammer maintained adequate insurance at all times. (*Id*.)

4. Specifically, Hammer alleged that it was unfair and deceptive for RCS to:

  i. falsely claim that Hammer did not have property insurance in correspondences dated September 19, 2010, November 5, 2010, December 3, 2010, January 4, 2011, August 8, 2011, and September 30, 2011;
  ii. falsely claim that Hammer failed to provide RCS proof of her insurance policies when Hammer provided RCS proof of her insurance in correspondences on at least December 3, 2010, January 11, 2011, and August 8, 2011;
  iii. falsely claim that Hammer's real estate taxes were delinquent;
  iv. falsely claim in correspondence dated September 19, 2012 and October 5, 2012 that Hammer's insurance policy was inadequate compared to her outstanding loan balance;
  v. falsely claim an "escrow shortage" in a correspondence dated December 3, 2010 when Hammer was current on her taxes and insurance;
  vi. falsely claim in a correspondence dated December 3, 2010 that RCS had the right to increase Hammer's monthly payment because Hammer did not have insurance which was in contravention of the factual realties and the operative contract;
  vii. falsely allege in Foreclosure Case #2 on September 21, 2012 that the loan modification did not exist, after RCS admitted that the modification "had been finalized" on "August 9, 2011" in a correspondence dated November 7, 2011;
  viii. falsely claim in a May 12, 2011 correspondence that Hammer owed $33,486.64 to bring the loan current;
  ix. falsely claim in a August 1, 2011 correspondence that Hammer owed $32,050.60 to bring the loan current;
  x. falsely declare illegal fees on the loan – lumped with the principal debt obligation – that were not authorized by contract or law on September 14, 2010, October 15, 2010, February 3, 2011, April, 8, 2011, May 27, 2011, June 14, 2011, July 7, 2011, July 19, 2011, August 1, 2011, and August 2, 2011.

(Compl. ¶¶154-155.)

5. RCS's overall scheme to confuse and trick Hammer, a senior citizen, and foreclose upon a mortgage loan that was fully current was unfair and deceptive. (*Id*. ¶ 156.)

6. RCS's communications to Hammer were purposely confusing and designed to thwart Hammer's attempts to perform on the mortgage loan. RCS provided conflicting and materially false and inaccurate correspondences, falsely denied the existence of the loan modification (after admitting to it on November 7, 2011), and falsely assessed fees and costs. (*Id*. ¶ 157.)

7. Moreover, RCS took advantage of a senior citizen by intensifying its unfair and deceptive acts in response to Hammer's objections. (*Id*. ¶ 158.)

8. RCS discouraged Hammer from any continuing efforts to keep her home – by sending her false and confusing correspondence and ignoring her requests for information – only to re-file a foreclosure action knowing that it was difficult for Hammer to physically travel to court in her ailing physical condition. Hammer's deteriorating health was directly caused by the never-ending stress related to RCS's conduct and the wrongful foreclosure of her home. (*Id*. ¶ 159.)

### DISCOVERY STANDARD

9. Federal Rule 26(b)(1) provides that the "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense or any party..."

10. "Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." *Platcher v. Health Professionals, Ltd*., 2007 WL 2772855, at *1 (C.D.Ill. 2007).

11. "The party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Id*. (citing *Etienne v. Wolverine Tube, Inc*., 185 F.R.D. 653, 656 (D.Kan. 1999); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co*., 132 F.R.D. 204, 207 (N.D. Ind. 1990).

      **a. Punitive Damages**

12. A defendant's financial condition is relevant to the pursuit of punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981) ("evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages"). *See also Kemezy v. Peters*, 79 F.3d 33, 36 (7th Cir. 1996) (holding that a plaintiff is not *required* to introduce evidence of wealth to recover punitives, but recognizing that plaintiffs often *do* present evidence of a defendant's wealth); *Aspen v. King World Productions Corp.*, 2001 WL 1403001, at *3 (N.D.Ill. 2001) (Magistrate Judge Schenkier) ("[T]here can be no doubt that net worth is discoverable under Rule 26(b)(1) of the Federal Rules of Civil Procedure, as it regards... plaintiff's punitive damages.").

## ARGUMENT

13. ICFA allows a successful plaintiff to recover punitive damages from a defendant. 815 ILCS 505/10a(a). *Oshana v. Coca-Cola*, 471 F.3d 506, 512 (7th Cir. 2006); *Goldberg v. 401 North Wabash Venture LLC*, 2013 WL 941964, at *6 (N.D.Ill. 2013); *Wendorf v. Landers*, 755 F.Supp.2d 972, 978 n. 6 (N.D.Ill. 2010).

14. In her ICFA counts, Hammer alleged, "An award of punitive damages is appropriate because RCS's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the rights of Hammer over a three year period. Additionally, when Hammer objected and demanded proper accounting on her loan, RCS attempted to silence Hammer by intensifying its harassment and illegal efforts." (Compl. ¶¶ 151, 164.)

15. Therefore, the issue of punitive damages is relevant, and the financial information of RCS is discoverable to establish an appropriate amount of punitive damages. *See City* of *Newport.*, 453 U.S. at 270.

### a. Prima Facie Showing

16. RCS may argue that a prima facie showing of merit on a claim for punitive damages must be made before permitting discovery on a defendant's financial net worth. However, this position would be misguided.

17. First, most courts do not require such a prima facie showing. *See* 6 James Wm. Moore, et al., *Moore's Fed. Prac. Civ.* Section 26.41[8][c] (3d ed. 2007) ("When the complaint asserts a claim that will sustain an award of punitive damages if proven, a majority of federal courts permit discovery of the net worth and financial condition of the defendant, without requiring the plaintiff to establish a prima facie case on the issue of punitive damages.") (collecting cases on both sides at n. 71-73). *See also U.S. v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (S.D.Ohio 2001); *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 34 (D.C.Kan. 1996) ("a plaintiff need not establish a prima facie case on the issue of punitive damages before it can obtain pretrial discovery of the defendant's financial statements and tax returns.").[1]

18. Since Hammer has sought and requested punitive damages in her complaint and amended complaint under ICFA, Hammer is entitled to proceed with discovery related to the finances and wealth of RCS to establish a measure of punitive damages. *See City* of *Newport v*, 453 U.S. at 270.

19. Hammer is requesting leave to seek RCS's current or most recent financial statements, tax returns, balance sheets, income statements, annual financial reports, and information with respect to profits.

---

[1] If this Court believes a prima face showing is necessary, Plaintiffs can easily make such a showing. All of the information in paragraphs 2 through 8 above has been confirmed in RCS's own documentation. The seriousness of the conduct and the duration – *which has continued since August 2010* – would establish a prima facie showing.

WHEREFORE, Plaintiff Alena W. Hammer respectfully requests that this Honorable Court:

a. Enter an order granting Hammer leave to seek and obtain discovery related to the finances, net worth, and wealth of RCS; and

b. Enter any further relief this Court deems just and proper.

Date: October 13, 2014

        Respectfully Submitted,

        By: ___/s:/Ross M. Zambon____
        **Ross M. Zambon**
        Attorney for Plaintiff

Sulaiman Law Group, Ltd.
Ross M. Zambon
ARDC # 6294149
Mara A. Baltabols
ARDC # 6299033
900 Jorie Blvd., Suite 150
Oak Brook, IL 60523