## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALENA W. HAMMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 13 C 6397 |
| | ) | |
| RESIDENTIAL CREDIT SOLUTIONS, | ) | Judge Durkin |
| INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION TO COMPEL

NOW COMES the Defendant, Residential Credit Solutions, Inc. ("Defendant") by its attorneys, David M. Schultz, John P. Ryan, and Palak N. Shah, to move this Court pursuant to Fed.Civ.Pro.Rule 37 and local Rule 37.2 to compel deponent Jack Kozar to appear for his deposition on December 19, 2014 and to answer questions regarding his representation of the Plaintiff. In support of its motion, Defendant states follows:

## INTRODUCTION

1.     Ms. Hammer's claims are based upon an alleged loan modification and two underlying foreclosure cases. Ms. Hammer alleges that suffered damages because RCS never offered her the opportunity to resolve her loan by agreeing to abide by the terms of the loan modification; which she revised without any authority from the Defendant.[1]

2.     Ms. Hammer testified that she hired Joseph Giralamo, Esq., to review the loan modification agreement that she received from FDIC/AmTrust.

---

[1] Ms. Hammer's allegations about the loan modification defy logic and simple protocol for the industry. First, if the principal is reduced by $2,300, then the monthly payments must be reduced accordingly. Second, the regulations governing loan modifications require re-submission of the agreement if the principal is changed.

3.      Scott Brower, Esq. represented Ms. Hammer the first foreclosure action in case number 09 CH 3951 (DuPage County).

4.      Jack Kozar, Esq. represented Ms. Hammer in the second foreclosure action in case number 11 CH 4503 (DuPage County); until Ms. Hammer hired her current counsel.

5.      Ms. Hammer's own allegations show that her claim is based upon the following:

     a.      the alleged loan modification;

     b.      correspondence with RCS and/or FDIC regarding the alleged loan modification;

     c.      Ms. Hammer's refusal to agree to a loan modification agreement;

     d.      the arguments made in the first foreclosure action in case number 09 CH 3951 (DuPage County);

     e.      the settlement discussions in the first foreclosure action in case number 09 CH 3951 (DuPage County);

     f.      Ms. Hammer's refusal to resolve the first foreclosure action in case number 09 CH 3951 (DuPage County);

     g.      correspondence with RCS regarding Ms. Hammer's loan, the first foreclosure action, and/or the second foreclosure action;

     h.      the arguments made in the second foreclosure action in case number 11 CH 4503 (DuPage County);

     i.      the settlement discussions in the second foreclosure action in case number 11 CH 4503 (DuPage County);

     j.      Ms. Hammer's refusal to resolve the second foreclosure action in case number 11 CH 4503 (DuPage County);

     k.      the Court's ruling in the first foreclosure action in case number 09 CH 3951 (DuPage County);

     l.      the Court's ruling in the second foreclosure action in case number 11 CH 4503 (DuPage County);

     m.      correspondence with Ms. Hammer regarding the loan modification, the first foreclosure and the second foreclosure.

130950548v1 0951421

6.      Each of the aforementioned attorneys have knowledge and/or information relating to one or several of the issues described in subparagraphs a through g.

7.      Ms. Hammer should not be allowed to argue that Defendant refused to try to resolve this matter with her, but then shield Defendant from establishing in discovery that this argument is false.

8.      Ms. Hammer should also not be allowed to argue that Defendant continued to "ignore" Judge Gibson's rulings in the foreclosure cases, but then shield Defendant from discovery showing that this argument is completely wrong.

9.      In fact, Ms. Hammer's version about how she reached the loan modification agreement has changed.  For example, a review of the documents in the underlying foreclosure actions show that Ms. Hammer's counsel argued that she had an agreement to revise the loan modification before she sent in her first two payments.  However, she now states that she did not have an agreement to revise the loan modification agreement before she sent in her first two payments under the alleged loan modification agreement.

10.     Ms. Hammer appears to concede that her previous attorneys have discoverable information because she listed Jack Kozar in her Rule 26(a)(1) disclosures.  Ms. Hammer stated in her initial disclosures that "Kozar Law Office has information related to the allegations in the complaint including but not limited to the foreclosure cases 09 CH 3951 and 11 CH 4503 (DuPage County)."

11.     We have not received an objection from Ms. Hammer regarding in response to Defendant's subpoenas to her former counsel.  Defendant felt the best way to proceed would be

130950548v1 0951421

to hold the deposition and allow Plaintiff to object to specific questions that she feels are privileged. If her counsel fails to object to the question, the privilege should be deemed waived.

12.    The parties could not agree on this point and Mr. Kozar felt that he needed an agreement in place or a Court order on the issue before he should be deposed.

## SUMMARY OF THE MEET AND CONFERS UNDER LOCAL RULE 37.2

13.    Since Ms. Hammer listed Mr. Kozar in her initial disclosures, Defense counsel contacted Mr. Kozar about sitting for a deposition.    Mr. Kozar stated that he could not sit for his deposition until he received a waiver of the attorney client privilege from Ms. Hammer or an order from the Court.

14.    Defense counsel spoke to counsel for Ms. Hammer to discuss whether Ms. Hammer would waive the attorney client privilege. Opposing counsel stated that he understood that Ms. Hammer may waive the attorney client privilege on some matters because of the nature of her alleged claim.    However, opposing counsel would not entirely waive the attorney-client privilege. Instead, opposing counsel stated that Ms. Hammer would assert the attorney-client privilege on question by question basis.

15.    Thereafter, Defense counsel recommended that we depose Mr. Kozar and if Ms. Hammer wished to assert the attorney-client privilege regarding any question asked, then she could assert such an objection to each individual question.    Thereafter, the parties could obtain a ruling from the Court on opposing counsel's objection.    If opposing counsel did not object based upon the attorney-client privilege, then Ms. Hammer would agree that she waives the privilege.

130950548v1 0951421

16.    Opposing counsel rejected this proposal and asked that he be provided a list of questions that Defense counsel would ask prior to the deposition.

17.    Counsel for the Defendant then issued a subpoena to Mr. Kozar to request his deposition and for documents in his file.

18.    Mr. Kozar requested that Ms. Hammer provide him with a signed waiver, but, Ms. Hammer rejected his request.  Therefore, Mr. Kozar politely said that he could not testify or provide a copy of his complete file without a waiver from Ms. Hammer or a Court order on the privilege issue.[2]

19.    Defendant brings this motion to compel without any specific objections from opposing counsel because Plaintiff's counsel never objected to Defendant's subpoena to Mr. Kozar.[3]

20.    The undersigned counsel certifies that he has conferred in good faith with Mr. Kozar and Plaintiff's counsel to resolve this matter without Court action.

## ARGUMENT

21.    Regardless of whether we apply Illinois attorney-client privilege or the federal attorney-client privilege, it does not exist here.  Plaintiff brings both state and federal law claims in her amended complaint. Fed.Rule.Ev. 501 provides that the Illinois law will apply to Plaintiff's state law claims and the common law applies to the adjudication of Plaintiff federal rights. *See The Medicines Co. v. Mylan, Inc.*, 936 F.Supp.2d 894, 899 (N.D.Ill. March 19, 2013).

---

[2] The depositions of Jack Kozar and Joseph Giralamo are scheduled for December 19, 2014.
[3] Mr. Giralamo and Mr. Brower have agreed to sit for their depositions, but it is expected that similar attorney client privilege issues will arise.

130950548v1 0951421

22.     The party asserting the attorney client privilege bears the burden of showing that it applies. *Hudson v. Preckwinkle*, 2014 WL 2598814, *2 (N.D.Ill. June 10, 2014). The Court must narrowly construe the privilege because the privilege is in derogation of the search for the truth. *U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). "Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option." *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003). A voluntary disclosure of privileged communications constitutes waiver of the privilege as to all other communications on the same subject. *Washburn v. Brown*, 1985 WL 1004, *2 (N.D.Ill. April 26, 1985). The privilege can also be impliedly waived. *Remus v. Sheahan*, 2006 WL 1460006, *2 (N.D.Ill. May 23, 2006).

23.     Similar to the federal common law, Illinois adheres to "a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit." *Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 144 Ill.2d 178, 190 (1991). Therefore, it is privilege that is the exception rather than the duty to disclose. *Id.* Moreover, the privilege will be confined to within its narrowest possible limits. *Lama v. Preskill*, 353 Ill.App.3d 300, 305 (2004). The privilege can be expressly or impliedly waived under Illinois law. *Hassebrock v. Bernoft*, 2014 WL 1491246, *2 (S.D.Ill. April 16, 2014). An implied waiver occurs when a party voluntarily injects either a factual or a legal issue into the case, the truthful resolution of which requires an examination of the confidential communications. *Id.*

24.     Thus, regardless of whether we apply federal common law or Illinois law the attorney client privilege does not apply here.

130950548v1 0951421

A. **Settlement Negotiations Are Not Privileged And/Or Plaintiff Has Waived Her Right To Assert A Privilege**

25.     Any and all discussions between Ms. Hammer's previous attorneys and RCS or some other third-party regarding a possible resolution are not privileged. Likewise, Ms. Hammer's former attorney's opinions regarding these negotiations are not privileged.

26.     Mr. Giralamo's negotiations with RCS regarding the loan modification agreement are not privileged. Additionally, the reason why Ms. Hammer refused to negotiate a loan modification agreement with RCS is likewise not privileged. To extent this information is privileged, Ms. Hammer has waived her right to assert the attorney-client privilege based upon the nature of her claims and her testimony from her deposition. Ms. Hammer testified why she refused to negotiate a loan modification agreement with RCS.

27.     Similarly, Mr. Brower's and Mr. Kozar's negotiations with RCS are not privileged because such correspondence involves communication with a third-party. Further, the reason why Ms. Hammer rejected RCS's settlement offers are likewise not privileged because it is presumed that her reasons for rejecting the offer were disclosed to RCS and/or the Court. Regardless, to extent that Ms. Hammer considers this information privileged, she has waived her right to assert the attorney-client privilege based upon the nature of her claims and her testimony from her deposition. Ms. Hammer's own allegations place at issue what happened in the early foreclosure proceedings. *See Lama*, 353 Ill.App.3d at 305 (Plaintiff waived privilege by trying to toll the statute of limitations via the discovery rule). Ms. Hammer also waived any privilege

130950548v1 0951421

because she testified why she rejected the settlement offers. Significantly, her current testimony regarding why she rejected the offer conflicts with at least one of the offers that she claims was not made. The foreclosure Court held a settlement conference with Mr. Kozar and RCS. Contrary to Ms. Hammer's theory for relief, the Court recommended a settlement and RCS offered it. Ms. Hammer rejected the settlement. Ms. Hammer has waived her right to assert the attorney-client privilege regarding her correspondence with Mr. Kozar.

28.     Further, her son admitted that he was present for all of her in-person meetings with Mr. Kozar, so there was a known disclosure to a third-party. *Burden-Meeks*, 319 F.3d at 899.

## B.     The Arguments Made In The Foreclosure Actions Are Not Privileged And/Or Plaintiff Has Waived Her Right To Assert A Privilege

29.     The arguments made by Mr. Brower and Mr. Kozar in the underlying foreclosure actions are not privileged. Further, their interpretations of the Court's various rulings are not privileged.

30.     Ms. Hammer's alleged claims undoubtedly rest upon two previously filed foreclosure actions, which she alleges were wrongfully filed. Am. Comp. ¶10. In the first foreclosure action, Ms. Hammer's attorney argued that she had an oral agreement to revise the terms of the loan modification agreement before she made her first two payments.

31.     Ms. Hammer now alleges that she did not have an agreement in place at the time she made her first two payments. This is a significant change in Ms. Hammer's story and it has a significant impact on Ms. Hammer's theory regarding the alleged loan modification with FDIC/AmTrust.

32.     To the extent that her communications with previous counsel can be considered privileged, Ms. Hammer waived her right to assert the privileged. Her allegations in this case

130950548v1 0951421

squarely contradict the arguments that her attorneys made in the foreclosure actions. Further, there is no question that she has placed at issue the foreclosure Court's ruling and the basis for that ruling.

### C. Plaintiff Has Waived The Right To Assert A Privilege Regarding Correspondence With Her Former Counsel.

33. Plaintiff has placed her correspondence with her former counsel at issue in this case. Plaintiff testified that Mr. Giralamo did not see a problem with her handwritten revisions to the loan modification because he notarized it. She also testified that Mr. Giralamo needed to review loan modification agreement before she could sign and return it. Further, she testified that she believed that she had a loan modification agreement by making the handwritten revisions and signing it. Plaintiff's claims rests upon the idea that she in fact had a loan modification agreement or she believed that she had a loan modification agreement after signed her revised version. Thus, Plaintiff waived her right to assert the attorney client privilege regarding her correspondence with Mr. Giralamo because she placed at issue what Mr. Giralamo said to her regarding the loan modification and her revisions to it. *Remus*, 2006 WL 1460006, *2

34. Similarly, Plaintiff placed at issue what she told Mr. Brower about whether she had a loan modification agreement. Mr. Brower argued in the first foreclosure action that Plaintiff had an agreement before she made either her first or second payment under the loan modification. However, Plaintiff admitted at her deposition that she did not have an agreement in place when she mailed in her first or second payment.

35. Moreover, Plaintiff's claims rests upon the allegation that she did not understand how much it would cost to reinstate her loan at various times (while she was represented by Mr. Brower or Mr. Kozar) and this alleged caused her damage. Therefore, Plaintiff placed at issue

130950548v1 0951421

all of her correspondence with Mr. Brower and Mr. Kozar regarding the amount she owed to reinstate the loan.

36. Plaintiff also testified that she did not resolve this matter after the ruling in the first foreclosure case because RCS did not agree to pay her attorney's fees and costs. Further, her claim rests upon the allegation that RCS never attempted to abide by the loan modification agreement that she revised. Therefore, Plaintiff placed at issue all of her correspondence with Mr. Brower and Mr. Kozar regarding the Court's order from the first foreclosure and whether RCS ever attempted to abide by the loan modification agreement that Plaintiff revised.

37. Plaintiff also seeks as damages the attorney's fees that she allegedly paid Mr. Brower and Mr. Kozar. Therefore, Plaintiff placed at issue how much she paid them and the services that they provided.

WHEREFORE, Defendant Residential Credit Solutions, Inc., respectfully requests this Court to enter an order compelling Jack Kozar to testify as to all matters for which he has knowledge and/or award any other relief to the Defendant which is equitable and just.

Respectfully submitted,

Residential Credit Solutions, Inc.

By: /s/ John P. Ryan
    One of its Attorneys
    John P. Ryan
    HINSHAW & CULBERTSON
    222 N. LaSalle Street, Ste. 300
    Chicago, IL 60601
    (312) 704-3000
    jryan@hinshawlaw.com

130950548v1 0951421

## **CERTIFICATE OF SERVICE**

     I, an attorney, hereby certify that on December 12, 2014, I electronically filed Defendant's Motion to Compel with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record. Defendant also served the deponent Jack Kozar via e-mail and U.S. mail at the following:

Jack Kozar, Esq.
105 S. Adell Place
Elmhurst, IL, 60126
JackKozarlawoffice.com

               /s/ John P. Ryan
               John P. Ryan

130950548v1 0951421