# MOTION IN LIMINE NO. 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALENA W. HAMMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 13 C 6397 |
| | ) | |
| RESIDENTIAL CREDIT SOLUTIONS, INC., | ) | Judge Durkin |
| | ) | |
| Defendant. | ) | |

**MOTION IN LIMINE NO. 6
TO BAR PLAINTIFF FROM OFFERING ANY EVIDENCE REGARDING HER
ALLEGED NON-ECONOMIC DAMAGES FOR HER CLAIM OF BREACH OF
CONTRACT**

Defendant, Residential Credit Solutions ("RCS"), by and through its attorneys, David M. Schultz, James M. Lydon, John P. Ryan, Palak N. Shah, and Linnea Schramm moves in limine for an Order prohibiting comment, argument, or statement by counsel or any witness during opening or closing statement, *Voir Dire*, or otherwise during trial, on any testimony or evidence regarding the existence of Plaintiff's alleged non-economic damages, and in support of its motion, RCS states as follows:

**I. Non- Economic Damages, Such As Emotional Distress, Are Not Recoverable On A Claim For A Breach Of Contract.**

Plaintiff improperly seeks non-economic damages, such as emotional distress damages, for a breach of contract. Generally, damages for mental suffering allegedly caused by a breach of contract are not recoverable in Illinois. *Harrison v. Sears, Roebuck & Co.*, 189 Ill.App.3d 980, 994 (Ill.App. 1989). The existence of a contract limits the damages to no more than the damages which flow directly from the alleged breach. *Parks v. Wells Fargo Home Mortgage, Inc.*, 398 F.3d 937, 941 (7th Cir. 2005). Further, the general rule is that mental suffering which accompanies a breach of contract is too remote for compensation. *Maere v. Churchill*, 116

Ill.App.3d 939, 944 (Ill.App. 1983). Thus, "damages for breach will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm, or where the defendant had reason to know, when the contract was made, that its breach would cause mental suffering for reasons other than mere pecuniary loss." *Id.*

There are no allegations (let alone evidence) to support a claim that RCS breached any contract with Plaintiff wantonly or recklessly and caused Plaintiff bodily harm. Plaintiff testified that she received a proposed loan modification agreement from FDIC/AmTrust in late June of 2010. *See* Hammer Depo. p. 21. FDIC/AmTrust told her that the signed modification agreement and her first payment were due on July 1, 2010. *Id.* Ms. Hammer testified that she needed an attorney to review the proposed loan modification agreement before she would sign it and send it back to FDIC/AmTrust. *Id.* She said that FDIC/AmTrust told her to send in her first payment before July 1, 2010 without the proposed loan modification agreement. *Id.* at 24. FDIC/AmTrust also told Plaintiff to send the proposed loan modification agreement in within a reasonable time. *Id.* Thereafter, Plaintiff sent another payment to FDIC/AmTrust for August, but she still did not submit the executed loan modification agreement.

On July 23, 2010, Plaintiff received a letter stating that RCS was taking over as servicer on her mortgage as of August 1, 2010 and all correspondence should be with RCS. *Id.* at 39-40. Plaintiff also said that she understood that RCS and FDIC were not the same company. *Id.* at 42. Yet, Plaintiff contacted FDIC/AmTrust between August 9, 2010 and August 16, 2010 regarding her loan modification agreement. *Id.* at 75. Plaintiff states during this conversation with FDIC/AmTrust in August of 2010, someone at FDIC/AmTrust told her to change the proposed loan modification agreement, sign it and send it in to Jim Bass at RCS. *Id.* 25, 38, 71-72. Plaintiff admits that her written agreement was pending because she was waiting for Jim Bass to sign it.

2

*Id.* at 71-72. Plaintiff stated that Jim Bass immediately rejected the revised terms, upon receipt of this document. *Id.* at p. 41. Both her attorney Mr. Giralamo and Mr. Bass asked her to execute a new loan modification agreement, but, she refused and thereafter, fired Mr. Giralamo as her attorney. *Id.* at 69-70.

Mr. Giralamo testified that Plaintiff wanted to make sure that she had an agreement with RCS before her next payment, which was due on September 1. *See* Giralamo depo. p. 22. Mr. Giralamo wanted RCS to agree to the change that Plaintiff made to the amount listed in the loan modification agreement, but that never occurred because RCS rejected Plaintiff's revision. *Id.* at 22, 47; Plaintiff's depo. p. 41.

Since Plaintiff unilaterally revised the proposed loan modification agreement from FDIC/AmTrust and rejected RCS's proposed loan modification agreement, RCS's attorney's proceeded with the foreclosure. Plaintiff argued in a motion to dismiss before Judge Gibson that before she made her first payment she had an agreement with FDIC/AmTrust to revise the amount in the loan modification agreement. Brower depo. p. 8-9. Plaintiff's attorney Scott Brower testified that without the fact that Plaintiff said she had an agreement to change the loan modification before her first payment, there would not have been a basis for him to argue the existence of a loan modification agreement. *Id.* at 10. Moreover, Judge Gibson used this fact as the basis for his ruling to dismiss the first foreclosure action. *Id.* at 33.[1]

Plaintiff admitted that based upon Judge Gibson's ruling that she immediately owed RCS $749.88 for every month in which RCS returned her payment. Hammer depo. p. 54, 99. However, Plaintiff refused to make this lump sum payment to RCS because she incorrectly

---

[1] Contrary to her position in the foreclosure action, Plaintiff now admits in this case that she did not have an agreement to change the amount in the loan modification agreement until between August 9, 2010 and August 16, 2010; which was after she made her two payments. *See* Hammer depo., p. 25, 38, 71-72.

3

believed that Judge Gibson's dismissal order required RCS to pay her attorneys' fees and costs. *Id.* at 54, 99.

As a result, Plaintiff's refusal to make the required lump sum back payment or to place these payments into a new loan modification agreement forced RCS to institute another foreclosure action based upon a loan modification in which Judge Gibson ruled that Plaintiff was required to pay $749.88 per month. The second foreclosure action has been stayed pending this action.

The facts above show that Plaintiff cannot establish that RCS wantonly and recklessly breached a contract with Plaintiff to cause her bodily harm. Significantly, Plaintiff does not even make such an allegation in her complaint. Instead, Plaintiff alleges that RCS knew when the contract was made, that its breach would cause more than pecuniary loss, but her own allegations squarely contradict this argument. Plaintiff's theory is that she entered a loan modification agreement with FDIC/AmTrust, so RCS as its successor should be bound by this alleged agreement. Thus, RCS was not an original party to the alleged loan modification agreement, so RCS could not have form any knowledge about anything at the time the contract was made. [Dkt#42, p. 19]; *Hammer v. RCS*, 2014 WL 4477948, *8 (N.D.Ill. Sept. 11, 2014) (Illinois does not generally allow for emotional distress for breach of contract claims).

4

## **CONCLUSION**

WHEREFORE, defendant, Residential Credit Solutions, Inc., respectfully requests this Court to enter an Order prohibiting comment, argument, or statement by counsel or any witness during opening or closing statement, *Voir Dire*, or otherwise during trial, on any testimony or evidence regarding the existence of Plaintiff's alleged emotional distress damages and for any other relief to the Defendant that this Court deems equitable and just.

        Respectfully submitted,

        Residential Credit Solutions, Inc.

By: /s/ John P. Ryan
    One of its Attorneys
    John P. Ryan
    HINSHAW & CULBERTSON LLP
    222 N. LaSalle Street, Ste 300
    Chicago, IL 60601
    (312) 704-3000

130995652v1 0951421