# MOTION IN LIMINE NO. 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALENA W. HAMMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 13 C 6397 |
| | ) | |
| RESIDENTIAL CREDIT SOLUTIONS, | ) | Judge Durkin |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION IN LIMINE NO. 7
## TO BAR PLAINTIFF FROM OFFERING ANY EVIDENCE REGARDING PUNITIVE DAMAGES

Defendant, Residential Credit Solutions ("RCS"), by and through its attorneys, David M. Schultz, James M. Lydon, John P. Ryan, Palak N. Shah, and Linnea Schramm moves in limine for an Order prohibiting comment, argument, or statement by any witness or counsel during *Voir Dire*, opening or closing statement or otherwise during trial, on any testimony or evidence regarding the existence of punitive damages, and in support of its motion, RCS states as follows:

Plaintiff has stated in open Court that the only counts which allow Plaintiff to seek punitive damages are Counts II and III.[1] Since Counts II and III are brought under the Illinois Consumer Fraud Act ("ICFA"), Illinois law applies in determining the appropriateness of punitive damages. *Anthony v. Security Pacific Financial Services Inc.*, 75 F.3d 311, 315-16 (7th Cir. 1996).

---

[1] To the extent that Plaintiff changes her mind and now seeks punitive damages under Counts I and IV, she is wrong. Illinois law does not permit punitive damages for breach of contract. *Morrow v. L.A. Goldschmidt Associates, Inc.*, 112 Ill.2d 87, 98 (1986) (Illinois does not allow for punitive damages based upon a breach of contract; unless there is an independent tort claim). Further, RESPA does not allow for the recovery of punitive damages, so Plaintiff cannot seek such relief under Count IV. *See* 12 U.S.C. § 2605(f); *Varela v. Wells Fargo Home Mortgage, Inc.*, 2012 WL 6680261, *12 (N.D.Cal. Dec. 21, 2012) ("RESPA does not allow recovery for punitive damages").

Whether allegations in a claim justify an award of punitive damages is a question of law for the trial judge to decide. *Stojkovich v. Monadnock Building*, 281 Ill. App. 3d 733, 742, 666 N.E.2d 704, 711 (1996). Claims for punitive damages are disfavored under Illinois law. *Stojkovich*, 281 Ill. App. 3d 733, 666 N.E.2d 704; *Loitz v. Remington Arms Co.*, 138 Ill.2d 404, 414-5, 563 N.E.2d 397 (1990). Plaintiff must provide a showing of conduct by the Defendant that is conscious disregard, deliberate violence, evinces an evil motive or "involves some element of outrage similar to that usually found in crime." *Loitz*, 138 Ill.2d at 415-6, 563 N.E.2d 397; *Stojkovich*, 281 Ill. App. 3d 733, 666 N.E.2d 704; *Kelsay v. Motorola*, 74 Ill.2d 172, 186, 384 N.E.2d 353 (1979). Willful and wanton misconduct is a more serious offense than negligence. *Bernier v. Skripek*, 86 Ill.App.2d 118, 129, 229 N.E.2d 890 (1st Dist. 1967). The important distinction is in the mental attitude. *Id.* Negligence consists of a mere failure or momentary lapse from the degree of attentiveness required by due care. *Id.* Mere negligence cannot be bootstrapped into an award of punitive damages because facts exhibiting only negligence or carelessness are not sufficiently aggravated to justify an award of punitive damages, even if Plaintiff labels the facts willful and wanton in the complaint. *Tucker v. Illinois Power Co.*, 232 Ill.App.3d 15, 17, 597 N.E.2d 397, 402 (5th Dist. 1992); *Pendowski v. Patton Scaffolding Co.*, 89 Ill.App.3d 48, 411 N.E.2d 910 (1st Dist. 1980). Willful and wanton misconduct, however, means a course action that shows a deliberate intention to harm others or a conscious disregard for the safety of others. *Loftus v. Mingo*, 158 Ill.App.3d 733, 740, 511 N.E.2d 203 (4th Dist. 1987).

The Illinois Supreme Court has commented on the high burden imposed upon a party seeking to plead punitive damages. "Punitive, or exemplary, damages are not awarded as compensation, but serve instead to punish the offender and to deter that party and others from

130999078v1 0951421

committing similar acts of wrongdoing in the future. [Citations.] Because of their penal nature, punitive damages are not favored in the law. [Citations.]" *Loitz*, 138 Ill.2d at 414. The Illinois Supreme Court in *Loitz* has observed that:

> Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence. [Citation]." "Since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate — which is to say, conduct involving some element of outrage similar to that usually found in crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others. [Citation]." In this context, willful and wanton misconduct "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it. [Citation.]'"

*Loitz*, 138 Ill.2d at 415-16.

Moreover, due to their penal nature, Courts must be cautious in seeing that punitive damages are not improperly or unwisely awarded. *In re Estate of Wernick*, 127 Ill.2d 61, 83 (1989). Therefore, the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law. *Parsons v. Winter*, 142 Ill.App.3d 354, 360 (1st Dist. 1986).

Here, Plaintiff does not present any evidence to support her claim that Defendant acted with an evil motive or a reckless indifference of the rights of others. Plaintiff testified that she made revisions to the loan modification agreement, which was proposed by FDIC/Amtrust, in August of 2010. She said that she knew FDIC/AmTrust was no longer servicing her loan in August of 2010, but "someone" from FDIC/AmTrust told her to cross out the principal amount and hand-write in a new amount. Hammer depo. at p. 24-25. Thereafter, she signed the revised loan modification agreement and sent to RCS for its approval. RCS immediately denied her

3

revised agreement.[2] *Id.* at p. 41. Notwithstanding, RCS's rejection Plaintiff continued to try to make monthly payments of $749.88 per month; which RCS consistently returned to her. It should also be noted that the proposed loan modification agreement would not amortize properly at $749.88 per month if in fact Plaintiff had the authority to change the principal amount owed.

Thus, there is no evidence to support a theory that Plaintiff made any payments to RCS because she thought she had a loan modification agreement. *Target Market Publishing Inc. v. Advo, Inc.*, 1995 WL 88994 (N.D.Ill. Feb. 24, 1995) (holding that the plaintiff alleged deliberate malicious intent in a conclusory fashion and without factual support. Therefore, the "Court concludes that there are not sufficient allegations from which reasonable inferences could be drawn to support an award of punitive damages."); *Guice v. Sentinel Tech. Inc.*, 294 Ill.App.3d 97, 110-11 (1st Dist. 1997) (holding that mere addition of a conclusory allegation is insufficient to support a claim for punitive damages). In fact, Plaintiff cannot present any evidence that she made any payments based upon the belief that she had a loan modification agreement because she testified that at the time she sent in both payments to FDIC/AmTrust she had not agreed to the proposed loan modification agreement provided by FDIC/AmTrust. Hammer Depo. p. 35-36.

However, even if Plaintiff can show that she had a loan modification agreement with FDIC/AmTrust (which will not occur), there is no evidence to show that RCS's alleged willful and wanton misconduct approached the degree of moral blame attached an intentional harm. *See Loitz*, 138 Ill.2d at 415-16. In fact, Plaintiff appears to concede this point by previously arguing that even innocent misrepresentations can sometimes establish a claim under the ICFA.

Moreover, Judge Gibson dismissed the first foreclosure because Plaintiff stated that she had an agreement with FDIC/AmTrust to modify the loan modification agreement before she

---

[2] About a month later RCS offered plaintiff a new loan modification, which was substantially similar to the one she revised from FDIC/AmTrust. The payments were a little over $1 more per month.

4

sent in her first payment. She testified in this case that she did not have an agreement to revise the proposed loan modification agreement until August of 2010, which is well over one month after she made her first payment and more importantly after she knew her loan had been transferred to RCS. RCS adhered to Judge Gibson's ruling and booked a loan modification agreement for Plaintiff wherein her monthly payment would be $749.88 per month.

On the date of Judge Gibson's ruling in March of 2011, there was no question that Plaintiff was in default for the payments that were returned to her; which was for September 2010 through March of 2011. Plaintiff refused to make a lump sum payment or to place the amount owed into a new loan modification agreement, so RCS filed another foreclosure action.[3]

Additionally, discovery has shown that Plaintiff refused on several occasions to show RCS (even though she knew) that she had property insurance. In fact, during one of her initial conversations with RCS, Plaintiff told an RCS employee that if RCS did not accept her revised loan modification agreement, then she would not pay her property insurance. Once RCS received confirmation that Plaintiff had property insurance, RCS removed all charges for insurance. Further, Plaintiff did not make any payments for these insurance charges or the alleged fees because she knew she had property insurance. *See* Hammer Depo. at 92-93; *See Kellerman v. Mar-Rue Realty and Builders, Inc.*, 132 Ill.App.3d 300, 307 (1st Dist. 1985) (no ICFA claim because plaintiff knew plaintiff was aware of the mortgage insurance, so plaintiff fails to establish the proximate cause element). Instead, she believed that she did not owe RCS for any of these charges, so she never provided RCS with any payments for these charges. *Id.* at

---

[3] To the extent that Plaintiff argues that she has an ICFA claim based upon a loan modification, the entire claim fails. *See Bankier v. First Federal Savings & Loan Association of Champaign*, 225 Ill.App.3d 864, 874 (4th Dist. 1992) (the ICFA does not apply to breach of contract claims. The act is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to redress a purely private wrong); *Exchange National Bank v. Farm Bureau Life Ins. Co. of Michigan*, 108 Ill.App.3d 212, 215-16 (3rd Dist. 1982).

130999078v1 0951421

92-93. Furthermore, none of these statements can support a claim for punitive damages under the ICFA because none of the alleged acts or conduct occurred prior to the date of the alleged agreement. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 502 (1997) (affirming dismissal of counts based upon statements which were made after the date of purchase because the ICFA "only" allows for injuries proximately caused by the alleged consumer fraud. "[P]laintiffs can state a valid claim of consumer fraud only where premised upon statements made prior to their dates of purchase.")

As a result, there is no evidence to support a theory of punitive damages under Illinois law because even RCS's alleged misconduct does not amount to willful and wanton misconduct. On the contrary, after RCS immediately rejected Plaintiff's revised loan modification agreement, RCS attempted to offer Plaintiff a new agreement, but she refused.

## CONCLUSION

WHEREFORE, defendant, Residential Credit Solutions, Inc., respectfully requests this Court to enter an order granting this motion to prohibit comment, argument, or statement by any witness or counsel during opening or closing statement, *Voir Dire* or otherwise during trial, on any testimony or evidence regarding punitive damages and for any other relief to the Defendant that this Court deems equitable and just.

Respectfully submitted,

Residential Credit Solutions, Inc.

By: /s/ John P. Ryan
    One of its Attorneys
    John P. Ryan
    HINSHAW & CULBERTSON LLP
    222 N. LaSalle Street, Ste 300
    Chicago, IL 60601
    (312) 704-3000

6