# MOTION IN LIMINE NO. 10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALENA W. HAMMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.:  13 C 6397 |
| | ) | |
| RESIDENTIAL CREDIT SOLUTIONS, INC., | ) | Judge Durkin |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION IN LIMINE NO. 10
TO BAR PLAINTIFF FROM OFFERING ANY STATEMENT THAT THE LETTER
SENT BY JACK KOZAR AND/OR THE LETTER SENT BY OPPOSING COUNSEL
AND/OR ANY OF THE LETTERS SENT TO THE FDIC QUALIFY AS A QWR UNDER
RESPA**

Defendant, Residential Credit Solutions ("RCS"), by and through its attorneys, David M. Schultz, James M. Lydon, John P. Ryan, Palak N. Shah, and Linnea Schramm moves in limine for an order granting this motion to prohibit comment, argument, or statement by any witness or counsel during opening or closing statement, *Voir Dire*, or otherwise during trial, that the letter sent by Jack Kozar and/or the letter sent by opposing counsel and/or any of the letters sent to the FDIC qualify as a qualified written request ("QWR") under RESPA.  In support of its motion, RCS states as follows:

**Introduction**

Plaintiff's amended complaint alleges that "RCS failed to send Hammer the required RESPA notices or properly respond to Hammer's QWRs."  [Doc#43;PageID#396 ¶ 170].  However, plaintiff's amended complaint does not identify any QWRs.  In supplemental responses to interrogatories dated February 4, 2015, plaintiff identified two (and only two) letters as the purported QWRs at issue in this case, dated October 28, 2011 and October 31, 2013.  *See* Answer to Interrogatory #3.  However, these letters do not qualify as QWRs under RESPA.

Therefore, this Court should enter an order prohibiting comment, argument, or statement by any witness or counsel at trial referring to QWRs in this case because there are no QWRs at issue in this case.

**<u>Argument</u>**

I.     **The Letter From Jack Kozar To RCS Is Not A QWR.**

    A.     **It is Not a QWR Because it Was Not Sent to RCS' Designated QWR Address.**

At the time Mr. Kozar's letter was sent and at all relevant times in this case, the Department of Housing and Urban Development had promulgated 12 U.S.C. Regulation X, 24 C.F.R. § 3500, as a means to implement RESPA. 24 C.F.R. § 3500.21(e)(1), which was titled "Duty of law servicer to respond to borrower inquiries," addressed a mortgage servicer's obligation under 12 U.S.C. § 2605(e) to respond to a borrower's QWR. *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181-182 (2d Cir. 2014); *Berneike v. CitiMortgage Inc.*, 708 F.3d 1141, 1147 (10th Cir. 2013); *Steele v. Green Tree Serv., LLC*, 2010 WL 3565415, *3 (S.D. Tex. 2010) *aff'd by* 453 Fed. Appx. 473 (5th Cir. 2011); *Bally v. Homeside Lending, Inc.*, 2005 WL 2250856, *2 (N.D. Ill. 2005). The same paragraph of this regulation also provided, "By notice … included in the Notice of Transfer … a servicer may establish a separate and **exclusive** office and address for the receipt and handling of qualified written requests." 24 C.F.R. § 3500.21(e)(1) [Emphasis added]; *Bally* at *2. Therefore, RESPA's implementing regulations allowed servicers to establish a designated address for QWRs and, furthermore, if a letter was not properly sent to the servicer's designated address, it is not to be considered a QWR. *Roth* at 181-182; *Berneike* at 1147; *Steele* at *3; *Bally* at *2.

In this case, RCS sent a July 23, 2010 Notice of Transfer to Plaintiff, attached hereto as Exhibit A, which designated an exclusive street address for QWRs at 4282 N. Freeway, Fort

2

Worth, TX 76137. However, the letter that Jack Kozar sent on October 28, 2011, attached hereto as Exhibit B, is not addressed to 4282 N. Freeway, Fort Worth, TX 76137. Instead, it is addressed to a law firm and a P.O Box in a different zip code, 76161-3889. Therefore, it is not a QWR. *Roth* at 181-182; *Berneike* at 1147; *Steele* at *3; *Bally* at *2.

### B.    It is Not a QWR Because It Does Not Indicate the Account is in Error.

In order for a letter to be a QWR, it must "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error ..." 12 U.S.C. § 2605(e)(1)(B)(ii). A laundry list of requests for information, like Mr. Kozar's letter (Ex. B), does not constitute a QWR. Even if the letter somehow could be perceived as indicating an issue with the validity of the loan itself and the validity of any the mortgage documents, it still fails to request the correction of errors relating to allocation of payments, final balances or other standard servicer duties, which are required in order for the letter to be a QWR. *See Todd v. ShoreBank*, 2013 WL 3790966, *4-5 (N.D. Ill. 2013). Where there is no claim of improper servicing, the letter is not a qualified written request. *MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000). ("Mortgagor's letter requesting information about validity of loan and mortgage documents, but which made no inquiry as to status of mortgagor's account balance did not relate to servicing of loan and, thus, was not covered by [RESPA].") Other courts have faced this same type of claim before, based on similar allegations, and have also found them lacking. *See Moore v. Federal Deposit Ins. Corp.*, 2009 WL 4405538, at *4 (N.D. Ill. 2009) (plaintiffs' letters requesting information did not relate to "servicing" and thus were not qualified written requests); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1042-43 (E.D. Cal. 2009) (plaintiffs' claim for RESPA violation dismissed because plaintiffs did not allege that request related to "servicing" and thus were not qualified written requests); *Keen v. American*

*Home Mortgage Servicing*, 664 F. Supp. 2d 1086, 1097 (E.D. Cal. 2009) (plaintiff's letter which did not dispute the "servicing" of the loan was not a qualified written request); *Pettie v. Saxon Mortgage Services*, 2009 WL 1325947, at *2 (W.D. Wash. 2009) (plaintiff's letter requesting 26 sets of documents did not offer reasons for dispute and thus was not a qualified written request).

Notably, this case is distinguishable from *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676 (7th Cir. 2011), because the letter in this case in no way requests an investigation, requests corrections, or describes any error or dispute concerning servicing like the letter(s) in *Catalan* did. *See Todd v. ShoreBank*, 2013 WL 3790966, *4-5 (N.D. Ill. 2013) (distinguishing *Catalan*).

### C. It is Not a QWR Because Mr. Kozar Admits it Was Not a QWR and Plaintiff Was in Foreclosure.

Furthermore, the letter that Jack Kozar sent to RCS on October 28, 2011 (Ex. B) is not a QWR because Mr. Kozar admits he did not send a valid QWR because Plaintiff was in foreclosure at the time he sent this letter to RCS. *Bajwa v. John Adams Mortgage Co.*, 2011 WL 6009266, *5 (E.D. Mich. 2011) (no RESPA claim because QWR was sent while home was already in foreclosure).

Mr. Kozar testified that he never sent RCS a valid QWR under RESPA because Plaintiff was in default for the entire time that he represented her. *See* Ex. A, Kozar Dep. p. 43-46. Since Plaintiff was in default, Mr. Kozar admitted that RCS had no duty under RESPA to respond to his QWR. *Id.* Additionally, Plaintiff admitted that following Judge Gibson's ruling in March of 2011, she was required to pay RCS $749.88 per month for every previous month that RCS returned her payment, but, she refused to make this payment. *See* Ex. B, Hammer Depo. pgs. 98-99. Thus, Plaintiff admitted that at the time Jack Kozar sent his letter to RCS on October 28, 2011, she was in default.

4

Mr. Kozar represented Plaintiff in the second foreclosure action. RCS filed its action because Plaintiff refused to make the required back payment $749.88 per month for the months prior to Judge Gibson's ruling. Therefore, Mr. Kozar could not have sent a valid QWR under RESPA because Plaintiff's claim was already in foreclosure. *Jones v. Wells Fargo Home Mortgage, Inc.*, 2014 WL 3974261, *3-4 (N.D. Ill. 2014) (RESPA requirements to furnish plaintiff with information no longer applied because defendant stopped receiving scheduled payments and plaintiff was in default); *Sanchez v. OneWest Bank FSB*, 2013 WL 139870 (N.D. Ill. 2013) (property foreclosed before the time to respond to the QWR expired, so plaintiff has no claim under RESPA); *Bilek v. Bank of America, N.A.*, 2011 WL 830948, *6 (N.D.Ill. 2011) (granting summary judgment in favor of defendant on a RESPA count because the loan was in foreclosure proceedings at the time plaintiff sent his QWR).

## II. The Letter That Opposing Counsel Sent To RCS Almost Two Months After They Filed This Lawsuit Is Not A QWR.

Plaintiff should also be barred from offering any statement that the letter opposing counsel sent on October 31, 2013, attached hereto as Exhibit C, amounts to a QWR under RESPA. Plaintiff never makes any reference to this letter in her First Amended Complaint.

To be clear, opposing counsel in this case improperly sent a letter directly to the undersigned counsel's client nearly two months after they filed this action. In other words, plaintiff's counsel sent a letter *directly* to RCS at a time when RCS was represented by counsel *that had already filed an appearance in this case* on RCS' behalf. Now, Plaintiff indicates in her supplemental responses to interrogatories dated February 4, 2015, that she intends to argue that this letter entitles her to a recovery in this case. This entire argument, factually and legally, should be rejected by this Court.

5

It makes no sense under the Federal Rules of Civil Procedure for this Court to consider the October 31, 2013 letter a QWR and thereby impose a duty upon RCS to respond to Plaintiff outside of this litigation when it is already engaged in litigation and discovery in this litigation. For this reason, a servicer has no duty to respond to a purported QWR that is redundant and duplicative. *Hawkins-El v. First American Funding, LLC*, 891 F. Supp. 2d 402 (E.D.N.Y. 2012) *aff'd by* 529 Fed. Appx. 45, 2013 WL 3388462 (loan servicer was not required, under RESPA, to respond in writing to borrower's numerous qualified written requests which raised essentially the same dispute described in his initial letter, to which servicer had already adequately addressed). Plaintiff's counsel's letter is more akin to an improper discovery request than a QWR. *Holmes v. Countrwide Home Loans*, 2013 WL 1787182 *3 (W.D. Wash. 2011) (dismissing a RESPA claim because the letter was more akin to a discovery request than a QWR); *Reyes v. Bank of America, N.A.*, 2012 WL 6089480, *3 (D.Nev. 2012). As a matter of common sense, a letter sent after a plaintiff has filed a RESPA claim in federal court should not be considered a proper QWR, as the defendant servicer in the case (by law and rule) will necessarily be in the process of responding to any related RESPA issues via pleadings and discovery. This Court should not allow its own pleadings and discovery schedule to be side-stepped and ignored by plaintiff's counsel by their improper sending of a QWR *directly* to a represented defendant.

Moreover, RESPA only requires one response. *See Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1134-35 (11th Cir. 2014) (subsequent QWR requests already addressed are not proper and there is no duty to respond). The letter also fails to amount to a QWR because there is no way for plaintiff to argue that RCS was still servicing her account under RESPA. *Bilek*, 2011 WL 830948 at *5 (RESPA did not apply to mortgage that was in foreclosure almost two years before plaintiff made any type of QWR because servicer was no longer receiving any

6

scheduled periodic payments at the time QWR letters were sent). Here, RCS was already engaged and responding via this litigation and no argument should be allowed at trial that Plaintiff's counsel's letter sent during this litigation was a QWR. *Daw v. Peoples Bank & Trust Co.*, 2001 WL 195077, at *1 (7th Cir. Feb. 22, 2001) (RESPA did not apply because after default, there were no longer any scheduled periodic payments to make or to collect, and thus there were no servicing rights to assign, sell, or transfer); *Sanchez v. Onewest Bank, FSB*, 2013 WL 139870, at *3 (N.D. Ill. Jan. 10, 2013) (Servicer had no obligation to respond to QWR under RESPA because property was already in foreclosure three weeks prior to receiving QWR).

Further, there is no way for plaintiff to argue that she suffered any damage as a result of RCS failing to respond to her QWR because this lawsuit was already pending for two months. *Orozco v. Experian Information Solutions*, 2012 WL 6720556, *5 (E.D.Cal. Dec. 26, 2012) (failure to allege actual damages caused by an alleged RESPA violation is "fatal" to a claim for a violation of RESPA §2605).

## III. The Letters Sent to the FDIC Are Not QWRs.[1]

There are also two letters, dated August 31, 2010, attached hereto as Exhibit D, and September 30, 2010, attached hereto as Exhibit E, that are not QWRs because they were sent to the FDIC not RCS. As indicated above, a letter that is not properly addressed to the servicer's designated address for QWRs is not considered a QWR. *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181-182 (2d Cir. 2014); *Berneike v. CitiMortgage Inc.*, 708 F.3d 1141, 1147 (10th Cir. 2013); *Steele v. Green Tree Serv., LLC*, 2010 WL 3565415, *3 (S.D. Tex. 2010) *aff'd by* 453 Fed. Appx. 473 (5th Cir. 2011); *Bally v. Homeside Lending, Inc.*, 2005 WL 2250856, *2 (N.D.

---

[1] This is only to the extent that the Court allows Plaintiff to make such an argument. On February 4, 2015, the Court ordered Plaintiff to amend her discovery responses to explain how RCS violated RESPA. Her claims should be limited to her discovery response.

7

Ill. 2005). Therefore, these letters are not QWRs.

Furthermore, these letters, like in *Todd v. ShoreBank*, 2013 WL 3790966, *4-5 (N.D. Ill. 2013), are not QWRs. *See also Alexander v. Bank of America*, 2010 WL 152045, *3 (N.D. Ill. 2010); *MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000); *Moore v. Federal Deposit Ins. Corp.*, 2009 WL 4405538, at *4 (N.D. Ill. 2009); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1042-43 (E.D. Cal. 2009); *Keen v. American Home Mortgage Servicing*, 664 F. Supp. 2d 1086, 1097 (E.D. Cal. 2009); *Pettie v. Saxon Mortgage Services*, 2009 WL 1325947, at *2 (W.D. Wash. 2009).

## CONCLUSION

WHEREFORE, defendant, Residential Credit Solutions, Inc., respectfully requests this Court to enter an order granting this motion to prohibit comment, argument, or statement by any witness or counsel during opening or closing statement, *Vior Dire*, or otherwise during trial, the letter sent by Jack Kozar and/or the letter sent by opposing counsel and/or the letter sent by Plaintiff to the FDIC qualify as a QWR under RESPA and for any other relief to the Defendant that this Court deems equitable and just.

Respectfully submitted,

Residential Credit Solutions, Inc.

By: /s/ John P. Ryan
    One of its Attorneys
    John P. Ryan
    HINSHAW & CULBERTSON LLP
    222 N. LaSalle Street, Ste 300
    Chicago, IL 60601
    (312) 704-3000

131028498v1 0951421

# EXHIBIT A

 **RCS** RESIDENTIAL CREDIT SOLUTIONS, INC.

4282 N. Freeway
Fort Worth, TX 76137
Toll-Free 1-800-737-1192

ALENA HAMMER
LUDMILA WURM
355 N ADDISON RD
VILLA PARK IL 60181-1950

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

07/23/10

Re:Loan No.: ████9028    Prior Loan No.:███4675
   Property:    355 N ADDISON RD
                VILLA PARK IL 60181

Dear Valued Customer:

Welcome to Residential Credit Solutions, Inc ("RCS"). We are pleased to inform you that effective 8/1/2010 we will provide loan servicing on your account. The assignment, sale or transfer of the servicing of your mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan. If you elected for mortgage life, disability insurance or any other type of optional insurance with your previous servicer, this service will not be continued upon transfer. If you have questions or would like to continue any optional insurance coverage's please contact AmTrust Bank at 1-888-696-4444 to answer any questions you may have about continuing coverage. Effective 8/1/2010, your previous loan servicer, AmTrust Bank, will no longer accept payments for your loan. Beginning 8/1/2010, please make your payments to RCS at the address provided below.

We have assigned you loan number ████9028. Please include this number on all payments and correspondence to RCS so that there is no delay in processing your payment or your correspondence. If your account is in a past due status with your prior servicer, we strongly encourage you to speak with one of our representatives regarding possible workout options to bring your loan current.

The toll-free telephone number for RCS is 1-800-737-1192. If you have any questions, you may contact us, Monday through Thursday between 7:00 A.M. - 11 P.M. CST, Friday between 7:00 A.M. - 9:00 P.M. CST, Saturday between 7:00 A.M. - 1:00 P.M. CST and Sunday between 4:00 P.M. - 9:00 P.M. CST. Please use the following addresses for RCS:

PAYMENTS                          CORRESPONDENCE
Residential Credit Solutions      Residential Credit Solutions, Inc.
P.O. Box 78954                    4282 N. Freeway
Phoenix, AZ 85062-8954            Fort Worth, TX 76137

You have certain consumer rights which are summarized below, and detailed in Section 6 of the Real Estate Settlement Procedures Act ("RESPA"), section 6 (12 USC 2605): If you send a "Qualified Written Request" ("QWR") to your loan servicer concerning the servicing of your loan, the servicer must either resolve your request or provide you with a written acknowledgment within 20 business days of receipt. A QWR is written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you send a QWR regarding the servicing of your loan, please send it to the Correspondence address listed above.

No later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account if necessary, and must provide you with written explanation or clarification regarding any dispute. During this period, information will not be sent to a consumer reporting agency concerning any overdue payment related to the QWR; however, this does not prevent the servicer from collecting, pursuing remedies or initiating foreclosure if proper grounds exist under the mortgage documents.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

Once again, welcome to RCS. We look forward to servicing your loan.

Sincerely,
Residential Credit Solutions, Inc.

Residential Credit Solutions is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.
Website: www.residentialcredit.com

005-0814-1100F

# EXHIBIT B

## KOZAR LAW OFFICE, LLC
105 S. ADELL PLACE
ELMHURST, IL 60126

(T) 630-561-1408                    (F) 630-834-2393

### 1st Qualified Written Request under RESPA

October 28, 2011

Residential Credit Solutions, Inc.
PO Box 163889
Ft. Worth, TX, 76161-3889

Codilis & Associates, P.C.
15 W030 North Frontage Road
Suite 100
Burr Ridge, IL 60527

Re:     Alena Hammer
        355 N. Addison Rd
        Villa Park, IL 60181-1950

Loan # ▮▮▮▮9028

Attn:  Mortgage Loan Accounting Department

To Whom It May Concern:

Pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), please accept this letter as a *Qualified Written Request* pursuant to the subject property. As such, provide the following information:

1. The monthly principal and interest payment, as well as the monthly escrow payment for the life of the loan; i.e. provide the payment history for the life of the loan.

2. The total amount alleged due and owing to you at the time of your notice of default. Itemize the amounts requested herein.

3. Provide an accounting of all escrow items I paid to you, or paid to you on behalf of Alena W. Hammer.

4. For each payment you received on behalf of this loan, indicate the dollar amount of the payment, the date the payment was received by you, the date you posted the payment to my account, an explanation of how the payment was applied and/or credited to my account (including any portion applied or credited to principal, interest, escrow, suspense, or other treatment), and the month to which the payment was applied.

Hammer000413

5. If interest was calculated on this loan by using the daily accrual accounting method, indicate for each payment the number of days that lapsed from the prior payment application date. If interest was not calculated by the daily accrual method, state what accounting method applied to this loan.

6. Explanation on the alleged lapse in Hazard Insurance that was force placed on the account when proof of insurance had been previously provided.

7. Provide an itemization of the following on this loan if you alleged you expended such costs and/or accessed such costs against me at any time throughout the life of the loan:
   a) All foreclosure expenses;
   b) All late charges;
   c) NSF charges;
   d) Appraisal fees;
   e) Broker price opinion fees;
   f) Property inspection fees;
   g) Maintenance fees;
   h) Insurance charges;
   i) Tax charges;
   j) Legal fees;
   k) Recoverable corporate advances; and
   l) All and any other expenses or costs that have been charged and/or assessed to my account during the life of the loan.

8. Provide an itemization of all escrow accounting items; including but not limited to property taxes, water, insurance, sewer, etc. for the life of the loan.

9. Indicate the date in which you began servicing this loan. Also provide the name and address of the party whom you acquired the servicing rights from on this loan. Provide any and all assignments and/or transfers that gave you such right.

10. I am also requesting the identity of the holder of our mortgage pursuant to U.S.C. § 1641(f) (2).

11. A complete breakdown of how the $33,486.64 was calculated on the correspondence dated March 12, 2011. Specifically I am requesting how the P& I payments of $685.63 was calculated between April 1, 2010 through May 1, 2011, what months you are alleging I am late referencing the $1,178.47 late charges, and a detail breakdown of the $2, 526.03 in misc. fees that you are alleging that I am owing. These fees are disputed in that they are not owed as alleged.


Thank you in advance for your prompt attention to this matter. Provide your responses and the requested documentation pursuant to RESPA §2605(e) to Kozar Law Offices,

Hammer000414

LLC at 105 S. Adell Place, Elmhurst IL 60126. All documents should be a valid copy of the original document as signed.

Should you have any immediate questions, please contact Jack Kozar. See the attached authorization.

Respectfully,

Jack Kozar, Attorney at Law

# EXHIBIT C

# Sulaiman Law Group, LTD
## DEDICATION | INNOVATION | COMPASSION | EXCELLENCE

900 Jorie Boulevard – Suite 150 - Oak Brook, Illinois 60523
Tel 630.575.8181 - Fax 630.575.8188

Ahmad T. Sulaiman
Ross M. Zambon
Mohammed O. Badwan
Matthew H. Hector
Mara A. Baltabols
Nathan C. Volheim
Charles L. Magerski
Paul M. Bach▲

▲ Of Counsel

Mara A. Baltabols, Esq.
Sulaiman Law Group, Ltd.
900 Jorie Boulevard, Suite 150
Oak Brook, Illinois 60523

October 31, 2013

**Via First Class & Certified Mail, Return Receipt Requested & Email**

**Residential Credit Solutions, Inc.**
**c/o John Paul Ryan**
**Hinshaw & Culbertson, LLP**
**222 N. LaSalle St., Ste 300**
**Chicago, IL 60601**

**Residential Credit Solutions, Inc.**
**4282 North Freeway**
**Fortworth, TX 76137**
**Attn: Qualified Written Request**

RE:    **Qualified Written Request**
       **Alena Hammer**
       **Loan #:** ▆▆▆▆9028
       **355 N. Addison, Villa Park, Illinois 60181**

To Whom It May Concern:

Please treat this letter as a "Qualified Written Request" under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 2605(e). Please be advised that we represent Ms. Alena Hammer (hereinafter "Hammer") with regard to the above-referenced mortgage loan (hereinafter the "account" or the "loan" or the "note") and all matters related thereto. This letter is being sent on behalf of Hammer to dispute the servicing of the loan by Residential Credit Solutions, Inc. (hereinafter "RCS") as described in more detail below.

The requests below, and the foregoing dispute, relate to payments made by Hammer on the account and the allocation of the payments to interest, principal, escrow and expenses; use of suspense accounts in connection with receipt of Hammer's payments; assessment of late charges with respect to Hammer's payments; use of automatically triggered force-placed insurance and charges to the account during periods when Hammer maintained her own insurance on the subject property; legal fees and expenses that have attached to the account; corporate advances and fees charged to the account without authorization by Hammer or the mortgage contract; failure to apply Hammer's payments over the course of the loan; reporting the account as past-due and delinquent to credit reporting agencies; filing foreclosure of the subject property, and failing to allow Hammer to redeem or reinstate the loan as provided for in the mortgage documents and under Illinois law.

Since July 2010, RCS has wrongfully: (a) assessed late charges on the account, (b) wrongfully force-placed insurance and charged Hammer for force-placed insurance, (c) wrongfully rejected payments made by Hammer, (d) wrongfully placed Hammer's payments into a suspense account and deducted unauthorized fees from the suspense account, (e) wrongfully reported the account as delinquent to the major credit reporting agencies, (f) wrongfully maintained a past-due account and negative escrow balance, (g) wrongfully failed to provide Hammer with notices required by RESPA, the FDCPA, TILA, and the underlying mortgage contract, and (h) wrongfully failed to make corrections or conduct an investigation in response to Hammer's written and oral disputes.

Page 1 of 3

In short, Hammer made *all* of her payments in full and in a timely fashion since the loan was modified in July 2010. Moreover, Hammer has always maintained insurance on the property and provided RCS and its predecessors with proof of the same. RCS had no legal basis for ever placing Hammer's payments into a suspense account, force-placing insurance, rejecting payments, reporting the account as past-due or in default, and filing foreclosure.

In accordance with RESPA, in response to this letter, RCS is required to (1) make any appropriate corrections to the account, (2) investigate the charges and actions by RCS referenced herein and provide Hammer with written verification as to why RCS believes the charges and actions to be correct and lawful, (3) investigate the account in relation to the disputed charges and actions, and (4) provide both the information requested or an explanation as to why the requested information is unavailable. *See* 12 U.S.C. § 2605(e)(2)(A)-(C).

Specifically, RCS must provide the following in response to Hammer's dispute:

1. A complete and itemized statement of the current amount needed to pay-off the loan in full.
2. A complete and itemized statement of the full amount needed to reinstate the loan.
3. A complete and itemized statement containing the date(s) and reason(s) for any alleged default on the account, as well as when and why RCS stopped accepting Hammer's payments during servicing of the account.
4. A life of the account transactional history that includes the date of each and every debit and credit related to this loan, the nature and purpose of each such debit and credit, and the name and address of the payee of any type of disbursement related to this loan.
5. The total amount received from Hammer over the account's history, and how much went to pay-down principal on the account. Provide all payments that Hammer made above the amount due on the account, and how the overage was allocated to the account, whether it was used to pay down principal, interest, added to the escrow account, or placed into a suspense account.
6. A complete and itemized statement showing which payments Hammer made on the loan by sending a check by mail, and dates that each the payment was made by Hammer.
7. A complete and itemized statement containing which payments RCS accepted from Hammer, the date that RCS received the payments and the date that they were received, how each payment was made, and whether any payment was considered late and why, or for less than the amount owed.
8. A complete and itemized statement of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, monitoring fees, corporate advances, or other similar fees or expenses assessed to and related in any way to this loan.
9. A complete and itemized statement of all advances or charges against this account, restricted or unrestricted, recoverable or non-recoverable, and for any purpose.
10. A complete and itemized statement of all foreclosure expenses, insufficient funds or NSF charges, legal fees, attorney fees, professional fees and other expenses and costs that have been charged against or assessed to this account.
11. A complete and itemized statement of how many times and when RCS force-placed insurance on the account, or debited payment from the account for payment of force-placed insurance, including from escrow or a suspense account.
12. A complete and itemized statement of the amounts charged for any forced-placed insurance, the date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.
13. A complete and itemized statement of the escrow account of the loan, including, but not limited to, any receipts or disbursements with respect to real estate property taxes, fire or hazard insurance,

flood insurance, mortgage insurance, credit insurance, purchase money insurance, or any other type of insurance product.

14. Any and all verification or proof that RCS received from Hammer regarding hazard insurance on the subject property, and whether or not the account was corrected in response to RCS receiving verification of insurance from Hammer, as well as when and to what extent Hammer was reimbursed for costs and/or fees associated with force-placed insurance.

15. A complete and itemized statement of all foreclosure expenses, insufficient funds or NSF charges, legal fees, attorney fees, professional fees and other expenses and costs that have been charged against or assessed to this account and whether or not such charges or fees are recoverable or non-recoverable.

16. A complete and itemized statement of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

17. Copies of all collection notes, collection records, communication files, written notices to Hammer regarding missed or late payments, written acceleration notices, or any other form of recorded data with respect to any communications between you and Hammer.

18. The dates that any RCS employee contacted Hammer via telephone for what purpose.

19. The dates that Hammer contacted any RCS employee via telephone for any purpose.

20. All RESPA § 2605 and Reg. X § 3500.21(d) notices of transfer of servicing sent to Hammer.

21. Verification or certified copies of any correspondence provided to Hammer of a change in loan servicer or identity of the party servicing the loan.

22. All notices of default, demand letters, dunning letters, Grace Period Notices, and acceleration notices sent to Hammer.

You should be advised that you must acknowledge receipt of this qualified written request within 20 business days, pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1). You must take the requested action, provide the requested verification, or make the requested corrections to the account within 60 business days from your receipt of this letter pursuant to 12 U.S.C. § 2605. Please do not report negatively to the credit bureaus during and until the above requested documents and information have been supplied to our firm and we have acknowledged the receipt of same in writing. You should also be advised that Hammer will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein. Hammer also reserves the right to seek statutory damages for each violation of any part of Section 2605 of Title 12 of the United States Code.

Please forward any and all correspondence regarding this matter to the following address:

> Attn:    **Mara A. Baltabols**
> **Attorney At Law**
> **900 Jorie Boulevard, Suite 150**
> **Oak Brook, IL 60523**

We look forward to your timely response. Thank you in advance for your kind assistance with this urgent and important matter. Should you require any further information, please contact us at (630) 575-8181.

Sincerely,

Mara A. Baltabols
Attorney At Law

# EXHIBIT D

sept
2010

8/31/10

Sandy Beauregard,

On monday my Attorney spoke to Jim Bass (RCS) (has signed cont.) He claims FDIC sent no files to them. No knowledge of modification!. I'm sending mortg payment to you for that reason.

I have talked to FDIC also to Ombudsman & will be talking to Fed. Trade Post Closing Asses Mgr.

If I did what has just transpired I would be charged with fraud. I need to know where the money I'm sending is going.

I held up my end and I'm prepared to go to court & tell the judge my story for the past 1½ yr.

Room # ████ 4675    Glenn W Hammer

Hammer00____

no one sent bk to me just letters

# EXHIBIT E

9/30/10.

Sandy Beauregard,

This is a continuation of last months letter to you:

I have a Oral Contract pending written contract with Amtrust/FDIC, therefore I'm sending this months mortgage to you. Last months mortgage payment has not been cashed nor has the check been returned.

I believe the problem is between RCS and Amtrust/FDIC and not me and therefore I'm honoring my end.

Loan # ███████ 4675

Glenace Hammer

Hammer000298