**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALENA W. HAMMER, | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | File No. 1:13-cv-6397 |
| | ) | |
| RESIDENTIAL CREDIT SOLUTIONS, INC., | v. ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | Honorable Judge Durkin |

## <u>PLAINTIFF ALENA HAMMER'S MOTION IN LIMINE #1</u>

Plaintiff, ALENA W. HAMMER ("Hammer"), moves the Court to bar Defendant

Residential Credit Solutions, Inc. ("RCS") from introducing any evidence, argument, or

objections in the presence of the jury, with respect to the issue of contract formation or otherwise

contest the existence and validity of Hammer's loan modification.

In count I of Hammer's amended complaint, Hammer has complained of RCS's breach of

a loan modification contract. In response, RCS has generally denied and challenged the existence

of the loan modification on the basis of contract formation (or lack thereof). This specific issue

has already been adjudicated by a court of competent jurisdiction, and by the application of the

doctrines of collateral estoppel and *res judicata*, RCS should be precluded from relitigating the

issue by presenting any evidence that would challenge contract formation.

Additionally, the validity of Hammer's loan modification would foreclose on at least two

of RCS's affirmative defenses, which will be addressed in the following motion in limine.

Hammer would request that the Court incorporate this motion into the following motion in

limine.

**BACKGROUND**

1. On September 9, 2009, AmTrust Bank filed a foreclosure action against Hammer in the case known as *AmTrust Bank v. Hammer* (DuPage County, Illinois), 2009 CH 3951. *See* Exhibit A, a certified copy of the foreclosure complaint.

2. AmTrust Bank was later taken over by the FDIC (hereinafter AmTrust and the FDIC are collectively referred to as the "FDIC"). Thereafter, Hammer entered into a loan modification with the FDIC, with the first payment on the modification due by July 1, 2010.

3. On August 1, 2010, the FDIC transferred servicing rights on Hammer's loan file to RCS.

4. On January 3, 2011, RCS was substituted in as party plaintiff in the foreclosure case. *See* Exhibit B, a certified copy of the order substituting RCS in as party plaintiff. Once becoming the servicer, RCS denied the existence of the previously mentioned loan modification.

5. On January 5, 2011, Hammer filed a motion to dismiss the foreclosure complaint under Illinois Code of Civil Procedure Section 735 ILCS 5/2-619. *See* Exhibit C, a certified copy of the motion to dismiss. In the motion, Hammer requested that the foreclosure court enter an order enforcing the loan modification and dismissing the complaint with prejudice. *Id*. Hammer attached the loan modification agreement and proof of her initial loan modification payments. *Id*.

6. On January 31, 2011, RCS filed a response brief in opposition to Hammer's motion. RCS argued that no contract was formed and that no loan modification existed. Specifically, RCS argued the Statute of Frauds. *See* Exhibit D, a certified copy of the response brief.

7. On March 4, 2011, Hammer filed a reply brief. *See* Exhibit E, a certified copy of the reply brief.

8. On March 18, 2011, a hearing was conducted on the motion to dismiss. Judge Gibson ruled that:

> What troubles me from the Plaintiff's side is there is attached to this – to the motion – granted, that when the modification agreement was modified and sent and initialed and sent back, there wasn't a meeting of the minds, but then when Ms. Hammer sent in on June 28th, 2010, on or about June 28th, seven forty-nine eighty-eight, which was the amount to be sent pursuant to this agreement as modified, if it were to be accepted, the Plaintiff then went ahead – actually, it was the Plaintiff's predecessor, went ahead and cashed that check. Then a future check, the next month's check, was sent on or about June [July] 28, 2010, for seven forty-nine eighty-eight, and the Plaintiff's predecessor cashed that check as well. *That would be deemed acceptance of the terms of the revised agreement as revised by Ms. Hammer. For the predecessor – for the successor [RCS] to then claim that they're not bound by that, I see no basis for the successor to then ignore the agreement, which by – by cashing these checks, endorsing these checks, which, in fact, is a written endorsement, they've ratified – the agreement was ratified. The modification of the agreement was ratified by the Plaintiff's predecessor, and the successor steps into the shoes of the predecessor as to this. So for those reasons, the motion to dismiss is granted.*

*See* Exhibit F, a certified copy of the March 18, 2010 transcript. (Emphasis added.)

9. Also on March 18, 2010, the Court entered a written order granting Hammer's motion and dismissing the foreclosure case. *See* Exhibit G, a certified copy of the March 18, 2011 court order. This was the final order in the lawsuit.

10. RCS did not file any motion to reconsider. RCS did not appeal the ruling.

11. Therefore, on the basis of collateral estoppel or *res judicata* or both, RCS is precluded from challenging the contract formation in this lawsuit or raising any arguments or defenses on that issue.

## ARGUMENT

a. The Effect of the State Court's Ruling

12. State law applies to determine the preclusive effect of a state court judgment on a subsequent action in federal court. *Cook County v. MidCon Corp.*, 773 F.2d 892, 898 (7th Cir. 1985) (affirming the district court's conclusion that the principle of collateral estoppel barred relitigation of an issue previously decided in state court).

3

13. "Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." Ill. Sup. Ct. R. 273; *see also Kosteski v. Dominick's Finer Foods, Inc. of Illinois*, 361 Ill. App. 3d 362, 846 (1st Dist. 2005) ("Where a dismissal order does not specify that it is 'without prejudice' and does not grant the plaintiff leave to file an amended complaint, the judgment is a final adjudication on the merits under rule governing effect of involuntary dismissals.").

14. Here, there is no dispute that RCS's foreclosure complaint was involuntarily dismissed, there was no "without prejudice" language, no leave granted to amend the complaint, there was a specific finding as to contract formation, and no appeal was filed. *See* Exhibits F & G.

### b. Collateral Estoppel

15. In general, collateral estoppel precludes relitigation of issues in a subsequent proceeding when (a) the party against whom the estoppel is asserted was a party to the prior adjudication, (b) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (c) the resolution of the particular issues was necessary to the court's judgment, and (d) those issues are identical to issues raised in the subsequent suit. *Whitley v. Seibel,* 676 F.2d 245, 248 & n. 1 (7th Cir. 1982), *cert. denied,* 459 U.S. 942, 103 S.Ct. 254 (1982); *Raper v. Hazelett and Erdal,* 114 Ill. App. 3d 649, 652 (1st Dist. 1983).

16. It is undisputed that RCS was a party to the prior adjudication. *See* Exhibits B through E.

17. The dispute over whether the loan modification was valid and enforceable (i.e. contract formation) was specifically litigated and decided on the merits in the foreclosure case. *See* Exhibits C through G. The resolution of whether there was a valid loan modification was necessary to Judge Gibson's ruling. *Id*.

18. Any attempt by RCS in this suit to challenge the state court ruling with respect to contract formation should be barred, as that identical issue (or challenge) was raised and specifically adjudicated in Hammer's favor and against RCS. *Id.*

19. Here offensive collateral estoppel applies. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 & n. 43 (1979). The "offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Id.*

20. Specifically, a party "can be precluded from relitigating facts resolved adversely to them in a prior equitable proceeding...under the general law of collateral estoppel." *Id.* at 326. Collateral estoppel serves to bar any issue actually litigated and necessary to the outcome of the previous suit, whether or not the previous action involved a different cause of action. *Id.* at 327 & n.5.

21. As a result, "there is no further fact finding function for the jury to perform, since the common factual issues have been resolved in the previous action." *Id.* at 335-36. *See also Ross-Berger Cos. v. Equitable Life Assur. Society of the US*, 872 F.2d 1331, 1336-37 (7th Cir.1989).

      **c.** ***Res Judicata***

22. For similar reasons, *res judicata* may apply as well.

23. The doctrine "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Claim preclusion will result where the following is present: (a) a final judgment on the merits in the prior action, (b) an identity of the cause of action in the earlier and subsequent suit, and (c) an identity of the parties

or their privies between the lawsuits. *Tice v. American Airlines*, 162 F.3d 966, 970 (7th Cir.1998), *cert. denied,* 119 S.Ct. 2395 (1999).

24. Once again, there was a final ruling issued by Judge Gibson, there was clear identity as to the dispute over the existence and enforceability of the loan modification, and the same parties are involved in this subsequent action.

25. Since the issue was specifically litigated and specifically ruled upon, RCS should be restricted from presenting any evidence that would challenge the formation of the loan modification contract.

26. To the extent RCS would attempt to raise new arguments on this issue – which it has in its affirmative defenses –  the result does not change, as both collateral estoppel and *res judicata* preclude relitigating (a) issues that were determined or were available to RCS at the time, or (b) facts resolved adversely to RCS in the prior suit. *Brown*, 442 U.S. at 131; *Parklane*, 439 U.S. at 326.

27. Hammer will address RCS's affirmative defenses in the following motion in limine.

WHEREFORE, Plaintiff Alena Hammer prays that this Court:

a. Order that collateral estoppel or *res judicata* or both bar relitigation as to contract formation of the loan modification (included with Exhibit C of this motion and Exhibit A to Hammer's amended complaint);

b. Bar RCS from presenting any arguments or evidence at trial that challenges the validity of the loan modification; and

c. Enter any other relief this Honorable Court deems just and proper.

## PLAINTIFF ALENA HAMMER'S MOTION IN LIMINE #2

Hammer moves the Court to bar all of RCS's affirmative defenses to breach of contract or any evidence in support of its affirmative defenses to breach of contract, as the defenses are untimely, highly prejudicial to Hammer, and facially improper.

On September 26, 2014, Hammer filed an amended complaint that included counts for (a) breach of contract, (b) ICFA, and (c) RESPA. [DKT #43.] On October 24, 2014, RCS answered the breach of contract count. [DKT #57.] RCS did not raise any affirmative defenses.

On March 24, 2015, RCS filed an amended answer that, for the first time, raised eight affirmative defenses. [DKT #128.] Seven of the affirmative defenses are specific to breach of contract: (a) fraud, (b) Unclean Hands; (c) Laches, (d) Set-Off, (e) Statute of Limitations (to the ICFA count); (f) Failure to Mitigate; (g) Statute of Frauds, and (h) Litigation Privilege.[1] *Id*. RCS has effectively "bushwacked" Hammer with seven surprise affirmative defenses on the eve of trial. All of the defenses were available from the onset of litigation. Hammer did not conduct discovery nor had any reason to conduct discovery on these issues.

ARGUMENT

**I.  RCS Should Be Barred From Asserting Any Affirmative Defenses to Breach of Contract or from Presenting Any Evidence Related Thereto.**

A defendant must affirmatively plead any defenses for which he bears the burden of proof. *Substandard Corp. v. Standard Kollsman Indus, Inc*., 488 F.2d 807, 813 (7th Cir. 1973). A failure to include a defense in a responsive pleading will result in waiver. *Johnson v. Sullivan*, 922 F.2d 346, 355 (7th Cir.1990) (en banc). A waiver is particularly appropriate where the defendant has offered no excuse for a failure to plead an affirmative defenses in its answer. *See Higdon v. Entenmann's Sales Co., Inc.*, 2002 WL 1285862, at *3 (N.D.Ill. 2002).

---

[1] This motion does not address the affirmative defense of statute of limitations.

Up until two days ago, RCS had not raised any affirmative defense nor taken the position that any affirmative matter would defeat Hammer's breach of contract claim. Instead, through the entire course of litigation, pleadings, written discovery, and 30(b)(6) testimony, RCS has simply denied Hammer's case-in-chief and denied any liability. After taking this position throughout litigation, RCS cannot now assert new affirmative defenses that had never been raised in any fashion. *See Venters v. City of Delphi*, 123 F.3d 956, 968 (7th Cir. 1997) ("Once the availability of an affirmative defense is reasonably apparent, the defendant must alert the parties and the court to his intent to pursue that defense."). A defendant cannot instead "lie behind a log and ambush plaintiff with an unexpected defense" at trial that was not previously pled. *Id.* (quotations and citations omitted).

Here, as in *Venters*, the parties have engaged in exhaustive discovery and trial is less than three weeks away. *Id.* at 968-69. At this juncture, the Court should not "overlook the failure to comply with Rule 8(c)," as Hammer would be "bushwacked" at the eleventh hour without any opportunity to prepare for a new defense theory that had not been disclosed. *Id.* at 969 (denying a request to plead "eleventh hour" affirmative defenses that were "reasonably apparent" at an earlier stage in litigation). All of RCS's affirmative defenses were reasonably, if not obviously, apparent since the onset of litigation, and RCS has no excuse for failing to plead those defenses prior to three weeks before trial. *Id.*; *Higdon*, 2002 WL 1285862, at *3 (N.D.Ill. 2002).

Allowing the eleventh hour amendments would be particularly prejudicial to Hammer, who did not conduct discovery on these issues, and would effectively ambush Hammer's entire trial preparation.

## II.     Alternatively, the Affirmative Defenses Should Be Barred on Other Grounds

### a.     <u>First Affirmative Defense – Fraud</u>

RCS's fraud defense simply attempts to unwind Judge Gibson's ruling that Hammer had a valid loan modification by rehashing arguments that could have been made in state court in 2011. [DKT # 128, p. 45.] *See* Exhibits F & G attached hereto. This issue was available to RCS at that time, was resolved adversely to RCS, and was adjudicated by final order in the prior suit. *Id.* Therefore, the issue is barred by collateral estoppel and *res judicata*. *Brown*, 442 U.S. at 131; *Parklane*, 439 U.S. at 326. If RCS disputed Judge Gibson's findings, it could have filed an appeal.[2]

### b.     <u>Second Affirmative Defense – Unclean Hands</u>

RCS's affirmative defense of unclean hands is not recognized by Illinois courts, or Northern District Courts applying Illinois law, as a valid defense to an action at law. "Under Illinois law, unclean hands is a defense to a claim seeking equitable relief, not a defense to an action for contract damages." *GITGO Petroleum Corp. v. Integrys Energy Servs., Inc.*, 2012 WL 2129402 (N.D.Ill. 2012). In this case, Hammer seeks damages for breach of contract, not equitable relief, and unclean hands is therefore not a recognized defense. *Id.* (citing cases). *See also General Elec. Business Fin. Servs., Inc. v. Silverman*, 693 F.Supp.2d 796, 804 (N.D.Ill. 2010) ("Because plaintiff's claims are for breach of contract and breach of guaranty, seeking damages at law and not equity, defendants' affirmative defense of unclean hands does not withstand federal pleading standards, and thus cannot defeat plaintiff's motion for summary judgment."); *HSBC Mortg. Servs., Inc. v. Equisouth Mortg., Inc.*, 2011 WL 529412, at *3 (N.D.Ill. 2011).

---

[2] Hammer would request an opportunity to file motion to strike these affirmative defenses prior to trial based on insufficient pleadings under Rule 8 and Rule 9(b) for fraud. However, based on the timing of when these defenses were raised, this motion should at least address some of the issues.

### c.  Third Affirmative Defense – Laches

Laches as an affirmative defense fails for the same reason that unclean hands does; it is only recognized as a defense in equity. [DKT #128, p. 45.] *Nat'l Council on Compensation Inc., Inc.*, 2009 WL 466802, at *7 (N.D.Ill. 2009) (citing cases). Illinois law does not "condone the application of a laches defense in a pure case at law such as this, that is a breach of contract case seeking nothing but money damages." *Conservancy v. Wilder Corp. of Delaware*, 2009 WL 1492177, at *12 (C.D.Ill. 2009).

### d.  Fourth Affirmative Defense – Set-Off

Set-off is also not a recognizable affirmative defense because it does not seek to invalidate Hammer's entire cause of action. RCS is simply asking the Court to award a "set-off" for all the payments that it chose to reject from Hammer (and also states RCS wants a "set-off" for a new loan modification, which does not exist). [DKT #128, p. 46.] "Where setoff does not destroy a plaintiff's cause of action, a claim for setoff is not an affirmative defense." *Nat'l Council*, 2009 WL 466802, at *7 (citing cases). *Cipa Mfg. Corp. v. Allied Golf Corp.*, 1995 WL 337022, at *2 (N.D.Ill. 1995). RCS's allegations, even if true, do not defeat Hammer's claim in any fashion, let alone Hammer's entire action. *Nat'l Council*, 2009 WL 466802, at *7 (citing cases). Therefore, set-off is not an affirmative defense.

### e.  Sixth Affirmative Defense – Statute of Frauds

Regarding RCS's Statute of Frauds affirmative defense, this specific issue has already been fully briefed and adjudicated by Judge Gibson in his dismissal of the first foreclosure action, which has a collateral estoppel effect and bars litigation of the same issue. *See* Exhibits C through G attached hereto. *See Silverman*, 693 F.Supp.2d at 804; *Brown*, 442 U.S. at 131; *Parklane*, 439 U.S. at 326. In response to Hammer's motion to dismiss the foreclosure

complaint, RCS argued the Statute of Frauds and claimed their was no valid contract. *Id*. This argument was adjudicated and rejected by Judge Gibson in his final order. *Id*.

### f.    Seventh Affirmative Defense – Failure to Mitigate

RCS alleges that Hammer failed to mitigate her damages simply because she failed to accept new, subsequent loan modification proposals. [DKT # 128, p. 46, 47.] RCS may not invoke a failure to mitigate damages defense on the basis that Hammer did not accept a new contract to replace an existing contract. First, as a general matter, "the duty to mitigate may not be invoked by one who has breached a contract as grounds for hypercritical examination of the injured party's conduct, or as evidence that the injured party might have taken steps which seemed wiser or would have been more advantageous to the breaching party." *Tucker*, 979 F.Supp. at 660.

Second, and specific to RCS's allegations, Illinois appellate courts have rejected a failure to mitigate damages theory that would have required the plaintiff "to accept [defendant's] offer to perform the original contract on new or modified terms." *Am. Fidelity Fire Ins. Co. v. General Ry. Signal Co.,* 184 Ill.App.3d 601, 614 (1st Dist.1989). As stated therein:

> Railway Signal's second mitigation argument is that if its offer to perform the contracts at increased prices had been accepted, the damages would have been lower. Upon Railway Signal's breach of contract, AFFI was not required to accept Railway Signal's offer to perform the original contract on new or modified terms and Railway Signal cannot now limit AFFI's damages to only those which would have resulted if its offer had been accepted.

In stated in *American Fidelity*, "it comes with ill grace" for RCS to now to say that Hammer's damages should be limited on a contract that RCS breached, just because Hammer did not want a new contract with different terms. *Id. See also Franklin Cap. Corp. v. Baker & Taylor*, 2000 WL 1222043 (N.D.Ill. 2000) (striking an affirmative defense for failure to mitigate damages). Hammer would also point out that any new loan modification offer to date has included either a higher interest rate, monthly payment, principal balance, or all three. *Id. See*

*also Anheuser-Busch, Inc. v. Algonquin Road Ltd. P'ship*, 1992 WL 373159, at * (N.D.Ill. 1992) (Zagel) ("I doubt I can ever consider the settlement offer as evidence under Rule 408 and settlement offers do not trigger the duty to mitigate.").

     **g.**   **<u>Eight Affirmative Defense – Litigation Privilege</u>**

RCS alleges that Hammer cannot seek civil relief for misconduct that occurred in prior litigation. [DKT #128, p 47.] First, RCS made this argument in its second Rule 12(b)(6) motion to dismiss as a legal bar to all of Hammer's causes of action, and the Court rejected that argument. [DKT # 117.] Second, "litigation privilege" is not recognized as a defense to any of Hammer's claims. It exists exclusively as a defense to claims for defamation based on statements made in judicial proceedings. Straight from the case cited by RCS in its answer, *Johnson v. Johnson and Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 15, litigation privilege is defined as:

> An attorney is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding. Restatement (Second) of Torts § 586 (1977). A private litigant enjoys the same privilege concerning a proceeding to which he is a party. Restatement (Second) of Torts § 587 (1977). An absolute privilege provides a complete bar to a claim for defamation, regardless of the defendant's motive or the unreasonableness of his conduct.

*See also Onyango v. Nick & Howard, LLC*, 559 Fed.Appx. 571, 572-73 (7th Cir. 2014) (lawyers could not be liable for their defamatory statements). 4 Illinois Practice Series s 41:7, Grounds for s2-619 motions: other affirmative matter (2014) ("in defamation cases, defenses based on privilege".) The litigation privilege is not a defense to any of Hammer's claims because none of the claims in any way relate to defamation. *Gritters,* 2014 WL 7451682, at *8. (breach of contract and ICFA claim properly based on wrongful foreclosure lawsuit).

## CONCLUSION

To allow RCS to proceed with any of these defenses or present any evidence with respect to these defenses has no probative value and would only serve to confuse and mislead the jury. Fed. R. 402, 403. All of the affirmative defenses are improper on their face, and even taking the allegations as true, the defenses cannot provide RCS with any of its requested relief. Coupled with the fact that all of these defenses were available to RCS at the onset of litigation, but only raised on March 24, 2015 – 20 days before trial and after the conclusion of discovery – is highly prejudicial to Hammer and should be barred.

WHEREFORE, Plaintiff Alena Hammer prays that this Court:

a. Grant Hammer's motion in limine in its entirety;

b. Bar RCS from presenting affirmative defenses 1 through 4 and 6 through 8 at trial or any evidence with respect to those affirmative defenses to breach of contract;

c. Instructed RCS to apprise each of its witnesses of any Court order arising out of this motion and instruct each witness not to violate said order; and

d. Enter any other relief this Honorable Court deems just and proper.

## PLAINTIFF ALENA HAMMER'S MOTION IN LIMINE #3

Hammer moves the Court to bar RCS and its attorneys from mentioning any settlement discussions as described below:

### I.   This Court Should Bar Any Settlement Discussions Between Hammer and RCS

RCS has indicated that it intends to present at trial settlement discussions and offers between RCS and Hammer that occurred during the state foreclosure actions. Presumably, RCS will use the settlement offers to argue that Hammer failed to mitigate her damages. Rule 408 "prohibits admission of settlement negotiations to prove liability for or invalidity of the claim *or its amount.* Evidence that demonstrates a failure to mitigate damages goes to the amount of the claim and...is barred under the plain language of Rule 408." *Clevenger v. Bolingbrook Chevrolet, Inc.*, 401 F.Supp.2d 878, 882 (N.D.Ill. 2005) (quotes and cites omitted) (emphasis in original). "Settlement offers are inadmissible if offered to prove liability or damages." *Cates v. Morgan Portable Bldg. Corp.,* 780 F.2d 683, 691 (7th Cir.1985).

RCS has alleged that it made settlement offers to Hammer in the form of new loan modifications to resolve the dispute between the parties during the state foreclosure cases. *Anheuser-Busch, Inc. v. Algonquin Road Ltd. P'ship*, 1992 WL 373159, at *1-*2 (N.D.Ill. 1992) (Zagel) ("I doubt I can ever consider the settlement offer as evidence under Rule 408 and settlement offers do not trigger the duty to mitigate.").

Additionally, the parties had settlement discussions and exchanged correspondence surrounding a pre-trial settlement conference with Judge Gibson. All of these discussions were in the spirit of compromise and should be barred as well. Fed. R. Evid. 408(a). *See Haack v. Bongiorno*, 2011 WL 862239, at *2 (N.D.Ill. 2011) (granting motion in limine to bar evidence pertaining to settlement negotiations); *Georgeson v. DuPage Surgical Consultants, Ltd.,* 2007

WL 914207, at *3 (N.D.Ill. 2007) (same). *Brewer v. Nat'l R.R. Passenger Corp.*, 165 Ill. 2d 100, 105-06 (1995).

## II.  This Court Should Bar Settlement Discussions Between Hammer and Ocwen

RCS sold the servicing right on Hammer's loan to Ocwen Loan Servicing, LLC during the pendency of this lawsuit. RCS has indicated that it intends to present at trial settlement discussions and offers between Ocwen and Hammer with respect to a loan modification offer. For all of the same reason, these settlement discussion should be barred. The offers were made in the spirit of compromise of the corresponding lawsuit, *Hammer v Ocwen*, 14-cv-7974.

The only settlement offers that were ever made by and between RCS and Hammer and Ocwen and Hammer required Hammer to accept a new loan modification (with, incidentally, a higher interest, principal balance, or payment). As explained in the previous motion in limine, RCS can not argue a failure to mitigate damages on the bases that Hammer did not accept a settlement that required her to enter into a new contractual agreement. *Am. Fidelity Fire Ins. Co.,* 184 Ill.App.3d at 614; *Anheuser-Busch, Inc.*, 1992 WL 373159, at *1-*2 (N.D.Ill. 1992). *See also  ABN AMRO, Inc. v. Capital Intern. Ltd.,* 2006 WL 6898002, at *3 (N.D.Ill. 2006) (settlement discussions with third parties inadmissable under FRE 408); *Pfizer, Inc. v. Apotex, Inc.,* 731 F.Supp.2d 754, 764 (N.D.Ill. 2010) ("the weight of authority bars Apotex from discovering documents relating to or created during settlement negotiations involving Pfizer and other parties."). *Vardon Golf Co., Inc. v. BBMG Golf Ltd.,* 156 F.R.D. 641, 652 (N.D.Ill. 1994)

WHEREFORE, Plaintiff Alena Hammer prays that this Court:

a.  Bar RCS from presenting any arguments or evidence at trial with respect to the settlement letters and settlement discussions between Hammer and either RCS or Ocwen;

b.  Instruct RCS to apprise each of its witnesses of any Court order arising out of this motion and instruct each witness not to violate said order; and

c.  Enter any other relief this Honorable Court deems just and proper.

## PLAINTIFF ALENA HAMMER'S MOTION IN LIMINE #4

Hammer moves the Court to bar RCS and its attorneys from mentioning upon statement of the case, by the interrogation of the witnesses, in argument, by objections in the presence of the jury, or otherwise, any of the following matters at trial:

**I. This Court Should Preclude Discussion of the Following Matters at Trial**

    **a. That Hammer is or was the Plaintiff in any other lawsuit, specifically *Hammer v. Ocwen Loan Servicing, LLC* (14-cv-7947).**

The fact that Hammer is a plaintiff in another lawsuit is not probative to the controversy that will be tried before the jury, and any presentation of evidence on the issue would not have the tendency to make the existence of any fact more or less probable as required by Rule 401. Additionally, any reference to a lawsuit with Ocwen would likely confuse the issues and mislead the jury. Fed. R. Evid.. 403. *CDX Liquidating Trust ex rel.* 411 B.R. at 598-99 (granting motion in limine to exclude evidence of other lawsuits or settlement of other lawsuits).

    **b. That Hammer's relationship with her previous attorneys ended or that the representation was terminated by Hammer.**

The end or termination of Hammer's engagement with previous counsel is entirely irrelevant to the issues to be tried in this case. Alluding to the how or why the engagement ended does not make the existence of any fact consequential to this action any more or less probable. Additionally, there would be no probative value to this evidence. The danger of introducing this evidence substantially outweighs any proclaimed probative value, and runs the risk of misleading the jury and confusing the issues. Fed. R. Evid.. 401, 403.

    **c. Any improper and inflammatory statements similar to suggesting that Hammer wants a "free house."**

There are a number of common terms and phrases used by corporate defendants in trials in loan servicing disputes. Specifically, Hammer seeks to bar RCS from making any statement

16

related to Hammer "seeking a free house" or that "the case is all about money" or any similar term or phrase which impugns the validity of Hammer's claims. These types of arguments are highly inflammatory and prejudicial to the fair pursuit of justice through a trial by jury. Rule 403 allows for exclusion of these phrases, as such phrases present a grave danger of unfair prejudice, they mislead the jury, and waste the Court's time at trial. *See Lupescu v. Napolitano,* 2011 WL 1342996, at *5 (N.D.Ill. 2011) (granting motion in limine barring reference to McDonald's spilled-coffee case); *Crawford v. Muscletech Research & Dev., Inc.*, 2002 WL 31852848, at *1 (W.D.Okla. 2002) (barring references to America being a litigious society or frivolous lawsuits).

CONCLUSION

Hammer contends that it is proper for the Court to grant all of her motions in limine with respect to the items set forth above. Granting Hammer's motions will streamline the presentation of evidence and will reduce the opportunity for the jury to be confused, misled, or for Hammer to suffer an undue prejudiced during the trial.

WHEREFORE, Plaintiff Alena Hammer prays that this Court:

a. Bar RCS from presenting any arguments or evidence at trial with respect to the items set forth above;

b. Instruct RCS to apprise each of its witnesses of any Court order arising out of this motion and instruct each witness not to violate said order; and

c. Enter any other relief this Honorable Court deems just and proper.

Done and filed this 26th day of March 2015.

Respectfully Submitted,

By: ___/s/Ross M. Zambon____
**Ross M. Zambon**
Attorney for Plaintiffs

Sulaiman Law Group, Ltd.
Ross M. Zambon - ARDC # 6294149
Mara A. Baltabols - ARDC # 6299033
900 Jorie Blvd., Suite 150
Oak Brook, IL 60523

17

## <u>CERTIFICATE OF SERVICE</u>

I, Ross M. Zambon, an attorney, certify that on March 26, 2015, I caused the foregoing **Motions in Limine** to be served upon counsel of record through operation of the Court's Case Management/Electronic Case File (CM/ECF) system.

/s/ Ross M. Zambon
---------------------------------------------
ROSS M. ZAMBON, No. 6294149
SULAIMAN LAW GROUP, LTD.
Attorney for Plaintiff
900 JORIE BOULEVARD, SUITE 150
OAK BROOK, ILLINOIS 60523
(630) 575-8181