IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALENA W. HAMMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-cv-6397 |
| ) | |
| RESIDENTIAL CREDIT SOLUTIONS, INC., ) | Judge Thomas M. Durkin |
| ) | |
| Defendant. ) | |

**MOTION IN LIMINE NO. 14**
**TO BAR WITNESSES AT TRIAL**

Defendant, RESIDENTIAL CREDIT SOLUTIONS, INC. ("RCS"), by its attorneys, Hinshaw & Culbertson LLP, moves in limine for an Order barring Plaintiff's treating physicians from trial testimony pursuant to Rule 26 and 37, and in support of its motion, RCS states as follows:

**FACTUAL BACKGROUND[1]**

RCS received Plaintiff's initial discovery disclosures on September 26, 2014 wherein Plaintiff disclosed three treating physicians: Dr. Phillips, Dr. Hasanain and Dr. Muneer. Plaintiff identified each treating physician as fact witnesses under Rule 26(a)(1) and merely stated that each "has information related to Ms. Hammer's medical condition." (Exh. A). Plaintiff did not produce any medical records with her initial disclosures. Although Plaintiff had the unrestricted ability to obtain her own medical records before she filed her lawsuit in 2013 (without the necessity of a subpoena), Plaintiff's counsel admitted that they had no records after specific inquiry by the Court at the October 20, 2014 status hearing. (Exh. B, p. 4). Plaintiff's counsel

---

[1] The parties just completed the depositions of plaintiff's treating physicians on Friday, March 27, 2015. Thus, although motions in limine were due on March 26, 2015, this motion could not be filed until after Dr. Hasanain's deposition was complete and a transcript of the deposition could be reviewed. On March 31, 2015, Defendant received the transcript for the second half of Dr. Hasanain's deposition. This motion was filed the next day.

further claimed that he would attempt to obtain records that week. (Id.). Despite Plaintiff's deficient disclosures which fail to describe how Plaintiff's medical condition is related to this case, and Plaintiff's failure to provide any records or information as to the subject matter of Plaintiff's treating physician testimony, RCS issued subpoenas for Plaintiff's medical records on November 12, 2014. (Exh. C).

When finally issuing their own letter requests for medical records on November 19, 2014, Plaintiff's counsel, sent correspondence to Plaintiff's medical providers, detailing Plaintiff counsel's idea of expected physician testimony, including that "(a)s a result of 'never ending' stress and anxiety caused by wrongful foreclosures -- that have spanned several years-- Ms. Hammer suffered medical injuries between August 1, 2010 and the present." (Exh. D). Defense counsel did not receive copies of Plaintiff's counsel's letters until later when some of Plaintiff's medical providers included the letters in their documents responsive to RCS's subpoenas.

At the December 18, 2014 status hearing, RCS counsel advised the Court that medical records had not yet all been produced, which was preventing any treating physician depositions from proceeding. (Exh. E, p. 13, 17). RCS counsel also expressed concern regarding the lack of clarity on the specifics of the physician testimony and the resulting time constraints involved with the discovery schedule and trial date. (Exh. E, p. 11-12, 14-15). Plaintiff's counsel asserted that the treating physicians would not be testifying as experts but as fact witnesses. (Exh. E, p. 12). Despite this assertion and the obligations of Rule 26, Plaintiff further related to the Court that he expected the doctors to "differentiate what they blame on her stress-related problems and what are other conditions" in deposition testimony. (Id.). Plaintiff's counsel further acknowledged that he had spoken to one of Plaintiff's treating physicians the day before. (Exh. E, p. 13).

Nine days later, Plaintiff amended her Rule 26 disclosures on December 27, 2014. (Exh. F). Plaintiff, once again, only identified Dr. Phillips, Dr. Hasanain and Dr. Muneer as fact witnesses under Rule 26(a)(1). Also, despite the fact that Plaintiff and her counsel had the unrestricted ability (and obligation) to fully discuss the specifics of Plaintiff's medical conditions and opinions with Plaintiff's treating physician at any time, including before her lawsuit was filed, Plaintiff's Rule 26(a)(1) disclosures merely stated that each doctor "has information related to Ms. Hammer's medical condition."

Thereafter, RCS struggled to obtain a complete set of Plaintiff's medical records from the providers. For example, RCS counsel also did not receive any medical records from Gottlieb Memorial Hospital until February 13, 2015. (Exh. G). At the January 6, 2014 status hearing, RCS counsel brought the issue of not having all of Plaintiff's medical records to the Court's attention and the Court acknowledged that any treating physician depositions could not go forward until the complete set of medical records were produced. (Exh. H, p. 3-5). RCS learned that Plaintiff counsel's November 2014 letters to Plaintiff's medical providers limited the requested production to only records after August 1, 2010 (the date Plaintiff's loan was transferred to RCS). (Exh. D). This limitation placed by Plaintiff, delayed RCS counsel's receipt of complete sets of medical records. For example, RCS counsel did not receive pre-2010 records from Plaintiff's primary care physician, Dr. Phillips, until early February, 2015. In total, RCS eventually received 3051 pages of medical records.

On January 29, 2015, RCS filed a motion to bar Plaintiff from calling her treating physicians as witnesses because Plaintiff failed to properly disclose them under Rule 26 within 90 days of the trial date. (Dkt# 101). Specifically, the motion set forth that plaintiff failed to provide expert reports required under Rule 26(a)(2)(B), and/or failed to make proper disclosures

3

under Rule 26(a)(2)(C), which requires a statement the subject matter of evidence under FRE 702, 703 or 705, along with a summary of the facts and opinions.

In her response, as a purported substitute for Rule 26(a)(2) expert disclosures, plaintiff noted that in her Amended Rule 26(a)(1)(iii) "computation of each category of damages," she included that "(t)he plaintiff believes that her treating physicians will relate her repeated issues with congestive heart failure to the aggravation of her chronic fibrillation brought on by stress, worry, and fear experienced by the plaintiff while she was and is concerned that the defendant's conduct will result in the loss of her home." (Dkt# 104, p. 3). However, Plaintiff again reiterated that that she did not intend to introduce expert testimony, but rather that the doctors would testify as fact witnesses. (Dkt# 104, p. 5).

RCS's Motion was heard on February 5, 2015, and while acknowledging Plaintiff's untimeliness and notice of any expert causation opinions, the Court allowed Plaintiff to provide expert disclosures regarding Dr. Phillips and Dr. Hasanain that day. (Exh. I, p. 6-10). The Court contemplated that Plaintiff's summary would provide some detail of expected physician testimony. (Exh. I, p. 12). However, given that Plaintiff's counsel claimed a lack of knowledge of what the physicians might say, the Court allowed the depositions to also serve as notice of expected physician trial testimony (with the doctors then testifying live at trial). (Exh. I, p. 15-20).

On February 5, 2015, Plaintiff submitted a Rule 26(a)(2)(C) expert disclosure for her primary care physician, Dr. Phillips, and her cardiologist, Dr. Hasanain. (Exh. J). Plaintiff's expert disclosure did not provide that either doctor was expected to testify what any stress or

4

anxiety Plaintiff may have experienced was caused by, or that stress or anxiety caused or aggravated her preexisting medical conditions, including congestive heart failure.

In their depositions, on February 25 and 26, 2015, both doctors opined that stress has exacerbated Plaintiff's preexisting cardiac conditions by elevating her blood pressure and heart rate over the past few years.[2] (Exh. K, p. 25-28, 42-43, 73-74; Exh. L, p. 83-84, 103, 105). Both doctors also testified that Plaintiff's mortgage foreclosures issues were a source of her stress. (Exh. L, p. 84, 94-97, 101-102, 109, 116; Exh. K, p. 50). In particular, Dr. Phillips testified to very detailed conversations with plaintiff about her loan modification issues with RCS (in one-sided fashion), and further opined that "the threat of losing (a) home, this is one of the most difficult situations that a human being can experience." (Exh. L, p. 95-97, 99). Both doctors further testified on the bases for their causation opinions and their purported consideration of other risk factors and co-morbidities that may or may not have exacerbated her longstanding cardiac conditions. (Exh. K, p. 51-73; Exh. L, p. 37-40, 45-51, 60-65, 101-105, 112-114).

However, both doctors conceded that the cardiac exacerbation causation opinions expressed in their depositions are not contained in their medical records for Plaintiff and/or could not identify such records. (Exh. K, p. 50, 54, 74, 76, 78-79, 85-87, 89; Exh. L, p. 86-88, 91, 97, 106, 107, 176-177). Dr. Hasanain testified that he never even documented any psychological stress during the period of time that Plaintiff experienced aggravation of her cardiac conditions. (Exh. K, p. 160). In fact, Dr. Hasanain did not even learn about plaintiff's mortgage foreclosure issues until after he learned he was to be deposed in this case, in November 2014, and had a

---

[2] Contrary to plaintiff's statement in her Amended Rule 26(a)(1)(iii) "computation of each category of damages," neither doctor testified that her repeated issues with congestive heart failure were related to the aggravation of her chronic fibrillation brought on by stress, worry, and fear.

5

conversation with plaintiff where she discussed her "foreclosure issues and problems" and claimed that she was "very stressed." (Exh. K, p. 168-69).

Likewise, Dr. Phillips admitted that she never documented any psychological stress in any of her office records until after she spoke to Plaintiff about why she received a subpoena to testify in this case in December of 2014. (Exh. L, p. 118-120, 135). These recent office records of Dr. Phillips (December 2014 and February 2015) were not even provided to RCS counsel before her deposition.

## ARGUMENT

### I. Plaintiff's Treating Physicians Should Be Barred From Offering Causation Opinions

Both Dr. Phillips and Dr. Hasanain should be barred from testifying as expert witnesses, including any causation testimony. Neither doctor provided an expert report detailing their opinions and bases as to what caused an aggravation to Plaintiff's preexisting cardiac conditions or what caused any stress or anxiety. Further, neither doctor stated in any of their medical records that any psychological stress aggravated Plaintiff's preexisting cardiac conditions or that any stress or anxiety was caused by RCS's conduct. Therefore, to the extent that Plaintiff intended to offer such causation opinions, Rule 26 required Plaintiff to produce an expert report for both Dr. Phillips and Dr. Hasanain.

A treating physician qualifies as an expert if the physician will be asked to testify about her specialized knowledge. *Vandivier v. U.S.*, 2013 WL 6058902, *3 (S.D.Ind.). "We do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation." *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105, fn. 14 (7th Cir. 1994).

131021269v1 0951421

Treating physician testifying under FRE 702 "must be identified in disclosures pursuant to Rule 26(a)(2), even if the treating physician was previously disclosed as a fact witness." *Coleman v. Cook County*, 2010 WL 4284920 *5. (N.D.Ill.). For expert testimony to be allowed, "the requirements of both Rule 26(a)(2)(B) and (C) are mandatory." *Carlson v. Tactical Energetic Entry Systems, Inc.*, 2014 WL 6066039, *2 (W.D.Wis.). Moreover, a party does not get to pick and choose between the disclosure requirements under Rule 26(a)(2)(B) and (C) based on what is more advantageous to the party's position. *Id.*

"A treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment" should be deemed a retained or specially employed expert, so that an expert report in accordance with Rule 26(a)(2) is required. *Meyers v. National Railroad Passenger Corp.*, 619 F.3d 729, 734-735 (7th Cir. 2010); *See also Krischel v. Hennessy*, 533 F.Supp.2d 790, 795-96 (N.D.Ill. 2008) (an expert report is required when a treating physician provides expert testimony on causation); *Dedmon v. Continental Airlines, Inc.*, 2015 WL 1040521 *5 (D.Colo.) (A treating physician that opines as to causation or the plaintiff's prognosis is required to filed a written report pursuant to Rule 26(a)(2)(B)); *In re: World Trade Center Lower Manhattan Disaster Site Litigation*, 2014 WL 5757713 *5 (S.D.N.Y.) ("several courts have required expert reports under FRCP 26(a)(2)(B) where the treating physician intends to offer opinions based upon information the opposing side cannot easily glean from medical records."); *Ballinger v. Casey's General Store, Inc.*, 2012 WL 1099823 *5 (S.D.Ind.) (plaintiff's treating physician barred from testifying on the issue of what caused the plaintiff's injury because there was nothing in plaintiff's medical records to show that the doctor reached the conclusion of causation during the course of treatment).

The recent depositions of Dr. Phillips and Dr. Hasanain reveal that they hold uncharted causation opinions that Plaintiff's stress or anxiety caused an aggravation of her cardiac conditions and that stress was caused by mortgage foreclosure issues with RCS. However, Plaintiff's counsel specifically disavowed offering such testimony and maintained that the doctors would testify only as fact witnesses. (Exh. E, p. 12; Dkt# 104, p. 5). Since neither doctor documented these causation opinions in their records for Plaintiff, Rule 26 required Plaintiff to produce an expert report if she intended to offer such opinions.

The penalty for failing to properly disclose an expert is automatic exclusion, unless the party can show that the failure to disclose was justified or harmless. *Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012). A misunderstanding of the law is not a sufficient justification for failing to properly disclose an expert witness. *Johnson v. Target Corp.*, 487 Fed.Appx. 298, 2012 WL 2435584, *2 (7th Cir. 2012).

Plaintiff never provided RCS with an export report regarding her treating physicians' opinions on causation. Plaintiff counsel's excuse that they did not have their client's medical records and had not spoken with the physicians until recently is not a justification. It was Plaintiff who requested an expedited discovery schedule and trial date. In light of this request, Plaintiff had an obligation to appropriately investigate her case, including obtaining her records and speaking with her doctors, long before the time for expert disclosures and in the months leading up trial. She had an obligation to make sure that her discovery obligations were met in a timely manner. It is simply no excuse to wait to the last second with a claim that counsel does not know what her doctors may say. In any event, Plaintiff's detailed conversations with her doctors, in late 2014, about this case and her mortgage foreclosure issues with RCS, belies that claim. Even if lack of knowledge was the case, given that her alleged medical damages are a

8

significant component of her case, she had an obligation to address any issues about obtaining information from her doctors with the Court a long time ago.

Given that plaintiff failed to provide the detailed information required in an expert report (or any substantive information at all in her Rule 26(a)(2)(C) disclosure), and that Plaintiff's treating physician records do not contain their causation opinions, RCS suffered significant unfair prejudice in having to prepare for the depositions essentially blind, with inadequate knowledge of the doctors' opinions and the factual and medical bases for same. Indeed, Plaintiff's statement of belief (contained in Amended Rule 26(a)(1)(iii) "computation of each category of damages") that her physicians may testify that stress aggravated her atrial fibrillation which in turn aggravated her congestive heart failure was <u>wrong</u>. Plaintiff counsel's professed plan to have the doctors disclose their uncharted opinions and bases in deposition testimony (Exh. E, p. 12) is not an appropriate substitute for Rule 26(a)(2) disclosures. It is not the job of the opposing party to make a record of the factual basis of the expert's testimony by way of a deposition. *Krischel*, 533 F.Supp.2d at 797.

Given the time constraints of the trial date (notwithstanding the three week continuance), RCS has also suffered substantial unfair prejudice in having to prepare for trial while also conducting expert discovery on a significant component of Plaintiff's case (and having only recently received a complete set of medical records which total <u>3051</u> pages). For example, there has been insufficient time for a rebuttal expert to digest the treating physician deposition transcripts from late February and late March,[3] examine the treating physicians' uncharted opinions, perform a comprehensive analysis of voluminous records in light of same, draft an

---

[3] On February 26, 2015, Dr. Hasanain terminated his deposition before it was concluded. The deposition was reconvened on March 27, 2015 per Dr. Hasanain's available schedule.

expert report, and prepare for testimony. RCS has also been deprived of sufficient time for counsel to mount an appropriate *Daubert* challenge to the treating physician opinions (all the while preparing for trial).

Plaintiff's failures in discovery process are an indication of either "hiding the ball," or neglect in prosecuting her case and meeting discovery requirements. Whether with purpose or neglect, Plaintiff's failures are not substantially justified and RCS has been placed at a tremendous disadvantage as result of Plaintiff's violation of Rule 26 and other discovery requirements. Plaintiff's failures should not be allowed to work to her benefit and to RCS's detriment.

## II. Plaintiff Did Not Even Comply with Rule 26(a)(2)(C) on Expert Testimony

Even assuming that an expert report was not required, Plaintiff should have made a proper disclosure under Rule 26(a)(2)(C), which requires the subject matter on the which the treating physician is expected to present evidence under FRE 702, 703, or 705; and a summary of the facts and opinions to which the witness is expected to testify. A treating physician "is providing expert testimony if the testimony consists of opinions based on, 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation." *Musser v. Gentiva Health Services*, 356 F.3d 751 (7th Cir. 2004).

As mentioned above, Plaintiff's counsel expressly disclaimed offering expert testimony through the treating physicians, and Plaintiff's late Rule 26(a)(2)(C) disclosures contain no opinions or supporting facts that stress or anxiety caused an aggravation of Plaintiff's cardiac conditions, or that any stress was caused by RCS's conduct (and neither do the medical records).

Indeed, her disclosures fail to even mention elevated blood pressures or hypertension. In November of 2014, Plaintiff had detailed conversations with her doctors about the issues in this case and the doctors' testimony and Plaintiff chose not disclose. To the extent that Plaintiff now wants to offer such causation testimony and the bases for same, for the reasons stated above, she is not substantially justified and her failure to abide with Rule 26 is not harmless. As such, any expert causation testimony on Plaintiff's cardiac conditions and psychological stress must be barred.

### III. Any Testimony Considered to be Outside of Causation Opinions Should Be Barred or Limited

Without causation testimony relating Plaintiff's medical health to RCS's conduct, any testimony regarding Plaintiff's severe cardiac conditions would be irrelevant, unfairly prejudicial, and would only serve an improper purpose to induce sympathy from the jury. Likewise, testimony regarding stress and anxiety without expert causation testimony would be irrelevant and unfairly prejudicial. Furthermore, any physician discussions with plaintiff regarding her specific mortgage foreclosure issues with RCS would be hearsay and not made for purposes of treatment (as the Court has already recognized, see Exh. I, p. 11).

To the extent that any treating physician testimony on psychological stress is allowed, testimony should be specifically limited to Plaintiff's Rule 26(a)(2)(C) disclosure and the "subject matter contained in the medical records and formed during the course of treatment." *Ballinger*, 2012 WL 1099823 *5. In that regard, Plaintiff's Rule 26(a)(2)(C) disclosure for Dr. Hasanian contains nothing about psychological stress, nor is there any documentation of such in his records. Dr. Hasanain's apparent only conversation with plaintiff about stress was when he was discussing this litigation with Plaintiff and not in the course of her medical treatment.

With regard to Dr. Phillips, her testimony details self-serving and unfairly prejudicial conversations Plaintiff had with Dr. Phillips regarding here loan modification issues with RCS. None of this is in Dr. Phillips' medical records for plaintiff. Given that fact, and the evidence of the November 2014 conversation between Plaintiff and Dr. Phillips about this case and Dr Phillips' testimony, Dr. Phillips should be limited to what is contained in her records and barred from testifying about Plaintiff's self-serving and inflammatory complaints of RCS's conduct (alleged conversations that Plaintiff has been aware of for a long time) pursuant to Rule 37.

WHEREFORE, Residential Credit Solutions, Inc., respectfully requests that this Court bar the testimony of Plaintiff's treating physicians and/or grant any other relief to the Defendant that is equitable and just.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ *James M. Lydon*
James M. Lydon

James M. Lydon
John P. Ryan
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601-1081
312/704-3000
312/704-3001 - facsimile
jlydon@hinshawlaw.com
jryan@hinshawlaw.com

131021269v1 0951421

## CERTIFICATE OF SERVICE

    I hereby certify that on **April 1, 2015,** I cause to be electronically filed Defendant's Motion to Compel in the above captioned matter with the Clerk of the Court using the CM/ECF system, which it is believed will send notification of such filing to all counsels of record.

                                     HINSHAW & CULBERTSON LLP

                                     s/ *James M. Lydon*
                                     James M. Lydon

131021269v1 0951421