# EXHIBIT E

```
1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
2                                 EASTERN DIVISION

3    ALENA W. HAMMER,                  )   Docket No. 13 C 6397
                                       )
4                    Plaintiff,        )   Chicago, Illinois
                                       )   December 18, 2014
5              v.                      )   9:33 a.m.
                                       )
6    RESIDENTIAL CREDIT SOLUTIONS,     )
     INC.,                             )
7                                      )
                     Defendant.        )
8

9              TRANSCRIPT OF PROCEEDINGS - Motion Hearing
                BEFORE THE HONORABLE THOMAS M. DURKIN
10

11   APPEARANCES:

12

13   For the Plaintiff:     SULAIMAN LAW GROUP LTD. by
                            MR. ROSS M. ZAMBON
                            900 Jorie Boulevard, Suite 150
14                          Oak Brook, IL 60523

15                          NICK WOOTEN LLC by
                            MR. NICHOLAS H. WOOTEN
16                          P.O. Box 3389
                            Auburn, AL 36831
17

18   For the Defendant:     HINSHAW & CULBERTSON LLP by
                            MR. JOHN P. RYAN
19                          222 N. LaSalle Street, Suite 300
                            Chicago, IL 60601-1081
20

21   Also Present:          MR. JACK KOZAR

22

23   Court Reporter:        LAURA R. RENKE, CSR, RDR, CRR
                            Official Court Reporter
                            219 S. Dearborn Street, Room 1432
24                          Chicago, IL 60604
                            312.435.6053
25                          laura_renke@ilnd.uscourts.gov
```

1     (In open court.)

2          THE CLERK:  Okay.  I guess Hammer?

3          THE COURT:  Yeah.

4          THE CLERK:  13 C 6397, Hammer v. Residential Credit.

5          MR. RYAN:  Good morning, your Honor.  John Ryan on

6     behalf of the defendant.

7          THE COURT:  Good morning.

8          MR. KOZAR:  Good morning, your Honor.  This is Jack

9     Kozar.  I'm the witness that they want to depose.

10          THE COURT:  Right.

11          MR. ZAMBON:  Good morning, your Honor.  Ross Zambon on

12     behalf of the plaintiff, Ms. Hammer.

13          MR. WOOTEN:  Nick Wooten, your Honor.  You just

14     admitted me PHV the other day.

15          THE COURT:  Pardon me?

16          MR. WOOTEN:  You just entered my PHV order earlier in

17     the week --

18          THE COURT:  Okay.

19          MR. WOOTEN:  -- as additional counsel.

20          THE COURT:  All right.  You can only guess why I put

21     you last.  You have quite a number of things in your motion in

22     the -- it's only a ten-page motion; there's a lot in there.

23     And you've got a deposition that's scheduled --

24          When are you supposed to be deposed, sir?

25          MR. KOZAR:  Tomorrow, your Honor, at 2:00.

1      THE COURT:  Okay.  How do you want to do this?  I have

2  a couple thoughts.  One is I can't, and nor am I -- I'm not

3  prepared to, nor do I think I should have to, decide privilege

4  issues on the spot today.  One, it's -- I'm not prepared to do

5  it.  I don't think I have the background in the case to do it.

6  And, two, you may want to file a written response.

7      The more -- the better approach may be to proceed with

8  the deposition.  I'll order you to be deposed.  There's clearly

9  plenty of things where you had discussions with third parties

10  that aren't privileged, and that may be the gist and big part

11  of what they're trying to get on the defense side.

12      Your conversations with Ms. Hammer, on the other hand,

13  likely are privileged.  The question of whether they've been

14  waived is a matter that may be part of some litigation, and it

15  may be I need to see the transcript of the deposition to decide

16  if it's been waived.

17      But if you need an order -- it sounded like you

18  wouldn't sit for the dep unless you got an order.  I am

19  ordering you to sit for the dep because I think you had plenty

20  of contact with third parties, you know, with the banks and

21  people involved with the banks where no privilege would lie,

22  and that's fair game.  To the extent you remember it, it's

23  certainly fair game.

24      I think if you're going to be asserting privilege on

25  behalf of Ms. Hammer in this deposition, though, if you're

1    going to -- you may be boxing yourself out and raising certain

2    areas later.  So I think you may have to be a little selective

3    in how you assert privilege, understanding that an assertion of

4    privilege during this deposition is going to preclude you from

5    raising certain issues at trial.

6          I won't let you -- obviously, this is no shock to any

7    of you; you're all lawyers.  But you can't use the privilege

8    one way and then selectively -- selectively assert it and then

9    selectively waive it during trial.  If you assert it tomorrow,

10   you're stuck with that at trial.  Ms. Hammer is not going to be

11   able to talk about things she talked about with that attorney

12   if you decide to assert it tomorrow for him.

13         I don't know any other way to approach this absent

14   lengthy briefing that isn't going to get anybody anywhere.

15   We've got a trial date in this case; I want to keep it.  And I

16   don't think having the minutiae of every question and answer

17   subject to peremptory rulings by me is going to get us

18   anywhere.

19         I've done all the talking.  First, it's your motion,

20   Mr. Ryan.  You tell me what you think, and then I'll let

21   plaintiff's counsel talk.

22         MR. RYAN:  Good morning, your Honor.  I actually agree

23   with your suggestion.  The only caveat that I'd add for

24   possibly the protection of the witnesses is if Ms. Hammer's

25   attorney does not assert an attorney-client privilege

1    objection, then such an objection would be waived as to that

2    question.

3              THE COURT:  Well, yeah.  I mean, you're Ms. Hammer's

4    representative.  The -- if there's a question asked that

5    Ms. Hammer -- that you as her representative think should

6    remain privileged, you can assert it.  That's the way it works.

7    And if you don't, then it's assumed to be waived.

8              She -- by raising the issues she's raised in this

9    case, this is clearly in the wheelhouse of some discussions

10   with her attorneys.  And whether or not that's going to be

11   subject of something a jury hears about is really a decision

12   you have to make when you decide to assert it or not.

13             I'm not saying this is necessarily the last time I'm

14   going to hear about this.  It may very well be I read a

15   transcript later and there's some fight about whether there's

16   been a broader waiver or not, but I can't decide that at this

17   point.

18             All right.  Mr. Ryan, anything else on your end?

19             MR. RYAN:  That's it, your Honor.  Thank you.

20             THE COURT:  How about for the plaintiff?

21             MR. ZAMBON:  Judge, I think the Court's suggestion

22   makes sense.  As long as we have the opportunity to raise the

23   objection tomorrow, we'll do so.

24             THE COURT:  Yeah.

25             MR. ZAMBON:  And we'll just take it on a

```
 1    question-by-question basis.
 2              THE COURT:  I think that's the way to go.
 3              Now, and I appreciate your coming down to court here
 4    today.  But --
 5              MR. KOZAR:  If I may add, your Honor.
 6              THE COURT:  Yes, go ahead.
 7              MR. KOZAR:  By not wanting to be deposed tomorrow, it
 8    was not my intention to delay anything.  I wanted some
 9    clarification from you as to what I could or couldn't speak of.
10    If the kind of policy moving forward is that if there's a
11    question that they object to that they're calling privilege on,
12    then I don't answer the question.
13              THE COURT:  That's right.
14              MR. KOZAR:  I didn't want to put myself in a position
15    where -- I'm trying to, you know, do what is asked of me.  I
16    have no problem with a deposition.  But I don't want to put
17    myself in a position where I'm subject to some sort of
18    violation, you know, ARDC --
19              THE COURT:  Oh, no.
20              MR. KOZAR:  -- situation or something like that.  So
21    my thinking was if I came before you and you gave us some
22    direction, I can go by what you say and then -- you know, I'm
23    very cooperative on this.
24              THE COURT:  Yeah.
25              MR. KOZAR:  I just need direction, that's all, your
```

1    Honor.

2         THE COURT:  No.  Mr. Kozar, you've acted completely

3    cooperatively and professionally on this by coming in and

4    asking for some guidance.  The guidance is as I said, answer

5    every -- you can certainly answer non-privileged -- obviously,

6    non-privileged questions where you have discussions with third

7    parties.

8         If the presence of -- was it the plaintiff's sister or

9    relative of some kind in some of these?

10        MR. KOZAR:  Her son.

11        THE COURT:  Her son?

12        MR. KOZAR:  Her son, yeah.

13        THE COURT:  Yeah.  If that's viewed -- and I think you

14   ought to just both consider that.  But if that's viewed as a

15   waiver because of a third party, so be it.  I'm not going to

16   rule in advance on that.

17        But I think plaintiff's counsel is well advised to be

18   careful about being too selective on this if there's something

19   you want Ms. Hammer to testify about because I will not let her

20   testify to a conversation that you've asserted privilege on on

21   the -- where the other witnesses to that conversation have not

22   been allowed to testify as a matter of going forward.  But you

23   know that.

24        MR. ZAMBON:  Understood.

25        THE COURT:  That's the way the rules work.

1      No, you're acting entirely appropriately.  If you get

2   a question, you should presume to answer it until he says you

3   shouldn't, "he" being plaintiff's counsel.

4      MR. KOZAR:  And then just for further clarification,

5   at that point that question would be certified.  They would

6   then bring it back to you, and you would determine whether or

7   not I should answer it.  Is that accurate?

8      THE COURT:  I'm hoping it doesn't come to that.  I'm

9   hoping their assertion of a privilege is one that is just --

10   that's the end of it.  That's the end of it at the deposition,

11   and that will be the end of it at trial too.  We won't hear

12   more about it.

13      If there's a difference of opinion on whether or not

14   there's been a broader waiver or not, then maybe some of those

15   questions may have to be answered later if there's a waiver or

16   they won't if they don't.

17      Don't take trivial positions on this because I'll

18   understand that -- understand that forcing someone to come in

19   on some of these where it really doesn't make any difference is

20   not a good use of your time and money.

21      While we're here, the case is set for trial --

22      THE CLERK:  February 23rd, I believe.

23      THE COURT:  Yes.  And I have a criminal trial starting

24   the 17th, U.S. v. House.  It's a mortgage fraud case,

25   ironically, but that's really the name of the defendant.  And

1    we don't -- we can't start picking a jury in that case until

2    the 17th.  16th is Presidents' Day.  It's a federal holiday.

3          I'm hopeful that case will be done in four days.

4    Counsel on it's been on trial in Springfield for the last two

5    months, so I haven't been able to talk to him about it.  You'll

6    start on the 23rd or the first day we can start after that

7    criminal case is over.  So understand that you might start the

8    24th, but we'll give you -- well, my question is, how long is

9    this case going to last?

10         MR. WOOTEN:  Judge, I think from the plaintiff's

11   perspective, a portion of that depends on your ruling related

12   to the punitive damages issues.

13         THE COURT:  Yeah.

14         MR. WOOTEN:  We have not taken any fact depositions or

15   30(b)(6) depositions of the defendants in the case.

16         Obviously, with punitive damage questions there, a

17   fraud count, you know, generally discovery on things like

18   pattern and practice needs to be a little bit broader because

19   we have a little bit bigger hurdle in fraud than we do in a

20   statutory violation or a RESPA violation.

21         So we suspect that we would probably need -- at a

22   trial, I suspect that the plaintiff's case would last at the

23   most three straight days.  That would be my expectation.

24         THE COURT:  And the defendant's case?

25         MR. RYAN:  Your Honor, unfortunately, we have not

gotten clarity on plaintiff's medical issues yet. I subpoenaed the medical records. And if we don't get the medical records by next week, we'll file a motion to try and push this forward.

But if we have to depose doctors to try and dispute damages on that issue, could be two days.

THE COURT: All right. I have a problem. I had understood this was a three-day trial. I think that was represented to me. I won't go back to the transcripts, but I had understood it when I set it it was a three-day trial. I'm going to have a problem conducting this trial later in that week.

An alternative I'll suggest to you, and you can talk about it with your clients or tell me today -- Sandy, the 16th? I had a criminal trial cancel on March 9th. I can't do it that week, but either March 16th or March 23rd. Are those two still both open?

THE CLERK: Mm-hmm.

THE COURT: March 16th and March 23rd are open, and I would not feel the pressure of trying to get you in on what I thought was a three-day trial.

How does either of those two dates work?

MR. ZAMBON: Off the top of my head, that would be fine on my end.

THE COURT: Mr. Ryan?

MR. RYAN: I -- Judge, just to make light of the

1    situation, other than being over St. Patrick's Day, I think it

2    would be okay.

3              THE COURT:  Okay.

4              MR. RYAN:  But I'll have to check with my client too

5    because they're from Texas, if you wouldn't mind --

6              THE COURT:  All right.

7              MR. RYAN:  -- if I check with them.

8              THE COURT:  And, sir, how about you?

9              MR. WOOTEN:  Judge, I'm just double-checking my

10   calendar and making sure I don't have an actual trial setting

11   conflict.  But in looking at my documents and what I have

12   available, it certainly -- it certainly looks like I'm okay for

13   that week.

14             THE COURT:  All right.

15             MR. WOOTEN:  And I'll resolve -- if I do have a

16   conflict, unless it's just insurmountable, I'll make sure I'm

17   available.

18             THE COURT:  All right.  What's your preference, 16th

19   or the 23rd?

20             And then, Mr. Ryan, I'll still give you right of first

21   refusal on that.

22             MR. RYAN:  Your Honor, can I add one last caveat?

23   It's been asserted in their answers to written discovery now

24   that they're actually going to have an expert witness.  And we

25   don't have an expert discovery schedule.  We just have a fact

1    closure date of January 15th.  So I think if we take

2    March 22nd, we might have time in there to do the expert

3    discovery.

4              MR. WOOTEN:  I maybe can clarify that, Judge.

5              THE COURT:  Yeah.

6              MR. WOOTEN:  I think when Ross had that interest, he

7    was thinking about the doctors, and they're -- although they

8    are medical experts, they're going to be testifying as fact

9    witnesses --

10             THE COURT:  They're all treaters, right?

11             MR. WOOTEN:  -- surgeons and physicians.

12             THE COURT:  Yeah.

13             MR. WOOTEN:  My suspicion is -- and I know Mr. Ryan's

14   concern -- the lady is older.  She obviously has some health

15   issues that are not purely related to this.  That would be

16   normal.  So we're going to have to have the doctors

17   differentiate what they blame on her stress-related problems

18   and what are other conditions, and we intend to do that in a

19   deposition.  I was --

20             THE COURT:  But you're not calling experts; you're

21   just calling treaters on that?

22             MR. WOOTEN:  I would expect to present that testimony

23   by video.  And in my experience, that's normally an hour to an

24   hour and a half of video testimony for each doctor, so not a

25   great deal of time.

1      THE COURT:  Well, Mr. Ryan may want to -- since he

2  doesn't have the benefit of treaters on his side, he may need

3  an expert to respond to them.

4      When are you taking the treaters' depositions?

5      MR. RYAN:  Your Honor, we have issued subpoenas, and

6  we're trying to work out schedules right now.  One of the

7  doctors actually called us, and I obviously said I couldn't

8  talk to her and referred her to plaintiff's counsel, and that

9  was last week.  I think we're looking at January 13th, but we

10  did not confirm a date with her.

11      MR. ZAMBON:  I haven't confirmed a date either.  I

12  know the initial dates were January 7th and 8th.

13      THE COURT:  Okay.

14      MR. WOOTEN:  And we expect those to go forward, your

15  Honor.  We actually spoke with one of the doctors yesterday.

16      THE COURT:  Good.

17      MR. WOOTEN:  They're prepared to go forward.  I think

18  we can confirm that probably in the next couple of days.

19      MR. RYAN:  With the caveat that I get the medical

20  records.  I can't take a doctor's dep --

21      THE COURT:  Where are the medical records at?

22      MR. RYAN:  I can't take a doctor's dep without the

23  medical records.

24      THE COURT:  I understand.  Where are they at?

25      MR. ZAMBON:  We received in the last five days some

14

1    documents from some of the doctors.  We're still waiting.  What

2    I have I'll get over by today or tomorrow.  And then I know

3    there were subpoenas issued by Mr. Ryan as well.  I have -- I

4    don't know about those.  I don't know the status of those.

5         MR. WOOTEN:  And we will make clear to the treating

6    physicians, your Honor, they need to comply with the subpoenas.

7    If they're waiting on us to tell them to, that's the wrong

8    thing to do.

9         THE COURT:  All right.  If he comes up with the

10   expert, "he" being the defendant, are you going to then have

11   your own expert, or are you going to rely on the treaters?

12        MR. WOOTEN:  If we're talking about an IME-type

13   situation or just the medical --

14        THE COURT:  A what kind?

15        MR. WOOTEN:  Independent medical exam --

16        THE COURT:  Yeah.

17        MR. WOOTEN:  -- or medical review, as a rebuttal

18   doctor, then I think we would just depose their doctor and put

19   him on the stand and cross-examine him because, I mean, they

20   wouldn't hire him if they weren't hiring him for contradiction.

21   So --

22        THE COURT:  Well, I hope you're not contemplating

23   having someone do an exam on Ms. Hammer.  I assume this is just

24   going to be off the records you have.

25        MR. RYAN:  Your Honor, this is the first I've heard

15

1   what their expert is.  I didn't know that the expert was a

2   doctor until just now.  So --

3          THE COURT:  Well, it's a treater.

4          MR. RYAN:  Correct, yeah.

5          THE COURT:  Okay.

6          MR. RYAN:  I did not realize that until just now.

7          THE COURT:  Okay.  Well, here's what we'll do.

8   There's a lot of uncertainty flowing around on this.

9          I'd like you back in early January to tell me that

10  you've got dates certain for the treating doctors and what your

11  plan is, if any, to respond to them.  I know you need to take

12  their deps, but you're going to at least have medical records

13  so you know what they're going to say basically.  I mean, the

14  medical records aren't that hard to read sometimes.

15         And you should have some idea what your plan is on

16  whether or not you're going to hire an independent expert, and

17  then I can give you a schedule on that so we can make sure

18  that's all nailed down before we try this case.

19         Let's set it for March 23rd.  And that's a good date

20  for plaintiffs, correct?

21         MR. ZAMBON:  I believe so, yes.

22         MR. WOOTEN:  Yes.

23         THE COURT:  All right.  And then, Mr. Ryan, I need you

24  to get back by the -- by 5:00 tomorrow to my courtroom deputy

25  that that's a good date for your client.

1      MR. RYAN:  Yes.

2      THE COURT:  And if it's not, once we get into April,

3  we're not going to try it.  I've got other cases set through

4  April, through May.  I think the next date we may have

5  available for trial would be late May.  So I think given

6  Ms. Hammer's age, we've got to get this over with and just --

7  it's ripe for trial.

8      So I'll -- if the 16th is a date that works for your

9  client, then we'll do the 16th instead of the 23rd.  But at

10  least presumptively right now, we'll do the 23rd of March and

11  give you one week.

12      Okay.  And then we'll give you a date in early January

13  where we can both -- if we can get a little more certainty on

14  what the rest of discovery is like in the case.

15      THE CLERK:  Can you all come back on the 6th,

16  January 6th at 9:00?

17      THE COURT:  Or will that not be enough time to get you

18  the information you need?

19      MR. RYAN:  That will be fine, your Honor.  I could

20  provide the Court a status of whether I have the medical

21  records at that time.

22      I'm out of the country from the 23rd of December till

23  the 4th of January or 5th of January.  4th of January.

24      THE COURT:  Well, here's what we'll do.  How about

25  coming -- let's come back on January 20th.  That will -- by

1    that date these doctors should have been deposed.  Medical

2    records should have -- I assume -- why?  You're looking at me

3    like I'm wrong.

4           MR. RYAN:  No.  No, Judge.  I'm -- I'm trying to get

5    these medical records.

6           THE COURT:  Yeah.

7           MR. RYAN:  And if I don't get the medical records,

8    I'll bring a motion in before then.  But I feel that I'm now

9    coming under this time crunch because we don't have medical

10   records and --

11          THE COURT:  Well, it's clear you can't take the deps

12   of the doctors until the medical records are provided.

13          And that's -- if you don't provide the medical

14   records -- and it may not be in your control.  But if the

15   medical records aren't there, he can't take the deps of the

16   doctors.  If he can't take the deps of the doctors, he can't

17   decide if he's going to have an expert respond to your doctors.

18   And if he can't do that and we bump into a trial date, your

19   March trial is going to be a May trial, and that, I'm sure, is

20   the last thing plaintiffs want to do.

21          MR. ZAMBON:  That's right.

22          THE COURT:  So it's absolutely in your best interests

23   to do all you can to help him get these records.  And I'm sure

24   you are.  These are not in your files; they're off in the files

25   of a hospital.  So I'm not pointing a finger at the plaintiffs,

1   but you -- your client presumably has executed every waiver

2   necessary to get this done.

3        MR. ZAMBON:  She has.

4        THE COURT:  And you may use any moral suasion you have

5   to try and get the doctor, who may be a treater for your

6   client -- you know, play upon that sympathy and tell them, "We

7   need these."

8        MR. ZAMBON:  Sure.

9        MR. WOOTEN:  We'll make calls this afternoon, Judge --

10       THE COURT:  Good.  Okay.

11       MR. WOOTEN:  -- when we get back to the office.

12       THE COURT:  I'd have you back the week of the 12th.

13  I'm out of town, that's all.  And if you want to come back the

14  6th, we can do that just for a report.

15       MR. RYAN:  I think the 6th would be great because then

16  we can tell the Court whether or not we have the medical

17  records.  If I have the medical records, we can have a firm

18  date for -- hopefully for these doctors' deps.  And we have a

19  January 15th discovery cutoff.  If we have to extend that --

20       THE COURT:  Fine.

21       MR. RYAN:  -- to take the deps --

22       THE COURT:  All right.  We'll have you come in on the

23  6th.  You can participate by phone, sir.

24       MR. WOOTEN:  No, I'll be here.  We were planning on

25  deposing doctors on the 7th and 8th --

1          THE COURT:  All right.

2          MR. WOOTEN:  -- so I'm already making plans to be back

3    on the 6th through the 9th.

4          THE COURT:  But I always allow out-of-town counsel --

5          MR. WOOTEN:  Yes.  Thank you.

6          THE COURT:  Where are you from?

7          MR. WOOTEN:  I'm from Alabama.

8          THE COURT:  I wouldn't have guessed it.  But that's

9    fine.  But on other dates, though, if you want to just call in,

10   I absolutely allow out-of-town counsel to call in.

11         MR. WOOTEN:  Sure.

12         THE COURT:  Just let my courtroom deputy know the day

13   before a phone number where we can reach you.

14         MR. WOOTEN:  Sure.

15         THE COURT:  All right.  We'll do it the 6th at 9:00.

16   And do your dep tomorrow, and you can report on what the status

17   is with the medical records.

18         And, Mr. Ryan, unless we hear -- well, this trial will

19   take place on the 23rd of March unless we get a call from you

20   that you can do it the 16th.  But I want to do it one of those

21   two weeks.  And if it's not going to be the 23rd, let

22   plaintiff's counsel know immediately.

23         MR. RYAN:  I will call either way, your Honor.

24         THE COURT:  Great.

25         MR. WOOTEN:  Your Honor, and there are a few other

1   issues that are out.

2           THE COURT:  Go ahead.

3           MR. WOOTEN:  We do have a motion related to discovery,

4   related to punitive damages issues, financial information, net

5   worth, et cetera.  Ross has already filed that motion; it's

6   pending.

7           But we also had their motion to dismiss in response to

8   the amended complaint that was restated related to separating

9   out the deception and the unfair practices.  And, of course,

10  part of their motion repeats their opposition to the RESPA

11  count that you had already denied.

12          But with respect to the repleading of the Consumer

13  Fraud Act claims, I would have to say, your Honor, they're

14  fairly detailed.  They break out each count into about ten to

15  twelve separate allegations related to deception and unfair

16  practices.

17          THE COURT:  I don't see -- although you've got a

18  motion for, I assume, discovery on punitive damages?

19          MR. ZAMBON:  Yeah.  I'll add a layer to that, your

20  Honor.  What had happened was we filed the motion for leave to

21  seek information on the financial condition of RCS.  At the

22  same time or around the same time, defendant filed their second

23  12(b)(6).  The Court did deny that financial motion without

24  prejudice pending the ruling on the Consumer Fraud count.

25          Court set a briefing schedule on the second 12(b)(6).

1    Then the settlement conference was ordered, and you stayed that

2    briefing schedule.  So now there is that pending 12(b)(6) in

3    the mix.

4            And as Mr. Wooten said, the RESPA count has already

5    been ruled on.  Defendant just came back and moved to dismiss

6    it again.  It was ruled on in the Court's September 11th

7    memorandum and opinion.  With respect to the Consumer Fraud

8    count, Court had directed us to chop it up into two, one for

9    unfairness and deception, which we did.  I'd ask that defendant

10   be ordered to answer those counts, especially in light of the

11   trial date now in March.

12           MR. RYAN:  Your Honor, if I may.

13           THE COURT:  Go ahead.

14           MR. RYAN:  I completely disagree with their

15   interpretation of my motion to dismiss.  And that is the reason

16   why I filed the motion to dismiss.

17           You initially denied their motion for discovery on

18   punitive damages without prejudice.  And we have a motion to

19   dismiss the Consumer Fraud count.  And you dismissed it

20   based -- just purely on the basis that they didn't divide their

21   unfair practices and misrepresentations part.  That doesn't

22   mean that just because they divide it up that all of a sudden

23   they're stating a claim.  They still don't state a claim.

24           Additionally, the RESPA count, they amended their --

25   they amended their claims, and now they're asserting sections

1    in RESPA that don't even have a private cause of action under

2    it.

3         So, your Honor, the idea on RESPA, you denied our

4    motion to dismiss the RESPA count because you had said that

5    there are allegations during which my client was servicing this

6    loan and, therefore, RESPA would apply.

7         We did not file a motion to -- for -- to dismiss based

8    upon that argument because of the Court's previous ruling.

9         THE COURT:  All right.  Well --

10        MR. RYAN:  So to say that I reargued things that were

11   already addressed is flat-out wrong.

12        THE COURT:  All right.  It will read what it reads.  I

13   did stay the -- you filed your motion to dismiss Counts II,

14   III, and IV of the first amended complaint.  I stayed the

15   briefing because of your settlement conference with Judge

16   Martin.  I had set a briefing schedule on it, so we ought to

17   continue briefing.

18        You're not changing your motion at this point,

19   correct?

20        MR. RYAN:  No, your Honor.

21        THE COURT:  Okay.  So you've got a motion that's been

22   on file since October 24th.  How much time do you want to

23   respond to it?

24        MR. ZAMBON:  I think I can get it done in 14 days.  I

25   know this is the holidays.  I think I can do that.  How would

1    that -- how would that January 6th date work for me to respond?

2    I'll have it responded --

3              THE COURT:  That's fine.

4              MR. ZAMBON:  -- before we come back to court.

5              THE COURT:  I'm not going to make you work on it over

6    Christmas.  So January 6th is fine.  It's not going to change

7    the fact we have a trial.  It's not going to change the fact

8    there's counts going to trial.  It's just a matter of which

9    ones.  And the facts are going to be the same.  It's a matter

10   of what the instructions look like.  But the facts of what

11   plaintiff is going to say and what defendants say isn't going

12   to change one whit depending on what we -- what kind of claims

13   go forward; it's just a matter of what instructions the jury

14   gets.  So you can have till January 6 to respond.

15             And, Mr. Ryan, how much time do you want to reply?

16             MR. RYAN:  Your Honor, I have a huge brief on a motion

17   for class certification due before Judge St. Eve on the 24th.

18   So if I can get another week after that, till the 31st.

19             THE COURT:  That's fine.  I won't be able to rule on

20   this right away anyway, so January 31st for a reply.

21             And then the issue on discovery on punitive damage, is

22   that -- go ahead.

23             MR. RYAN:  I just realized the 31st is actually a

24   Saturday.  It's the 23rd that my brief is due.  So if I can get

25   to January 30th, which is a Friday.

24

1         THE COURT:  That's fine.  Okay.

2         What's the story on punitive damages then?

3         MR. ZAMBON:  The -- I mean, my thought is if the

4  briefing is not going to be done till the end of January and

5  the March trial, I think we should move forward with the

6  punitive damages discovery now.  In the instance it's not going

7  to be used for whatever reason, we won't use it.  But based on

8  timing, I think we need to move forward with it now.

9         MR. RYAN:  Your Honor, that's not exactly how this

10  whole thing works.  I even deposed her on her -- on her

11  Consumer Fraud count.  And she's admitted that all -- her whole

12  list of subparagraphs, that she didn't suffer any actual

13  damages on any of these counts.

14         So, I mean, this is a significant issue.  And if he

15  wants to bring a motion, I think it should be briefed again

16  because he's looking for my client's financial net worth

17  information.

18         THE COURT:  Right.  No, if you want punitives

19  discovery, file your motion setting forth why you think you're

20  entitled to it.  And we'll -- I'll see what you write.  We'll

21  do it that way.

22         MR. ZAMBON:  Thank you.

23         THE COURT:  There's no point in orally arguing it

24  today.  I can't rule on it for you, and so file a motion if you

25  want to take punitive damage discovery that -- beyond the

1   discovery we have that's out there right now.  Set forth why

2   you think you're entitled to it, and you can respond, and then

3   I'll rule.

4            MR. ZAMBON:  Understood.

5            THE COURT:  All right.

6            MR. WOOTEN:  Your Honor, with respect to the

7   January 15th cutoff.

8            THE COURT:  Yeah.

9            MR. WOOTEN:  And I would hate to be a bother about

10  that, but I think currently my understanding is, and just

11  getting in the case, Ross has relayed to me that there's --

12  presently Mr. Ryan's agreed to put up a 30(b)(6) representative

13  the week of the 12th.  Is that right?

14           MR. RYAN:  That's correct.

15           MR. WOOTEN:  But we'll also have some 30(b)(1)

16  depositions of some employees of RCS that probably will have to

17  be taken in Fort Worth.  For me, you know, it's no different to

18  get from Atlanta to Fort Worth and to get from Atlanta to

19  Chicago.  It's not a big deal.  But my guess is that they don't

20  want to make those folks come up here.

21           We might need till the end of the month to get those

22  depositions done.

23           THE COURT:  Well, we'll talk about that at the -- I'm

24  certainly flexible on extending the discovery cutoff.  It

25  doesn't matter to me.  What I don't want to do is extend the

1    trial date beyond what we've already done today.

2             MR. WOOTEN:  Right.

3             THE COURT:  So discovery schedules are easily moved as

4    long as we don't impact the trial date.  So when we come in on

5    the -- was it the 6th? -- we can talk about whether or not you

6    need to extend the cutoff date.

7             MR. RYAN:  After hearing all this again, your Honor,

8    I'm just wondering if March 23rd -- and I'm not trying to kick

9    it longer than it needs to be.  But is March 23rd going to be

10   viable because if we do finish discovery at the end of January

11   and if we're going to do dispositive motions --

12            THE COURT:  You're going to file a dispositive motion?

13            MR. RYAN:  I may file a dispositive motion.

14            THE COURT:  All right.  Well, my practice on

15   dispositive motions, as you know, is you're going to come back

16   to chambers and we're going to talk about it.

17            But we'll just shorten the briefing schedule.  We've

18   got a trial date.  It's been set for a while.  Plaintiff's

19   elderly.  Let's move it along.  If you want to file a

20   dispositive motion on this after discovery is over, then you

21   may all be doing it with one-week briefing schedules.  And you

22   may get an oral ruling from me, not a written one, but you'll

23   get a ruling.

24            So okay.  Anything else we need to discuss?

25            MR. ZAMBON:  I think that's it, your Honor.

1        THE COURT:  Great.  Okay.  See you next year.

2        MR. WOOTEN:  Thank you, your Honor.

3        MR. RYAN:  Thank you, your Honor.

4        MR. ZAMBON:  Thank you.

5        THE COURT:  Thank you.

6        MR. KOZAR:  Thank you.

7        MR. RYAN:  Have a happy holiday.

8        THE COURT:  I'm going to rule -- on the motion to

9  compel, I'm going to show it ruled as granted for reasons

10  stated in court.  I have ordered the witness to testify.  But

11  for reasons stated in court, it's not an overall grant of the

12  entire motion, obviously, because I didn't rule on it

13  substantively.  So it's granted in part for reasons stated in

14  court.  That's how it will read.

15        MR. RYAN:  Okay.  Thank you, your Honor.

16        THE COURT:  Okay.  Thank you.

17        MR. KOZAR:  Thank you.

18     (Concluded at 10:01 a.m.)

19                C E R T I F I C A T E

20   I certify that the foregoing is a correct transcript of the

21  record of proceedings in the above-entitled matter.

22

23  */s/ LAURA R. RENKE*              *February 2, 2015*
     LAURA R. RENKE, CSR, RDR, CRR

24  Official Court Reporter

25