# EXHIBIT I

1              IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
2                     EASTERN DIVISION

3    ALENA W. HAMMER,                )  Docket No. 13 C 6397
                                     )
4                   Plaintiff,       )  Chicago, Illinois
                                     )  February 5, 2015
5              v.                    )  9:04 a.m.
                                     )
6    RESIDENTIAL CREDIT SOLUTIONS,   )
     INC.,                           )
7                                    )
                    Defendant.       )
8

9              TRANSCRIPT OF PROCEEDINGS - Status
          BEFORE THE HONORABLE THOMAS M. DURKIN
10

11   APPEARANCES:

12

     For the Plaintiff:    SULAIMAN LAW GROUP LTD. by
13                         MR. ROSS M. ZAMBON
                           900 Jorie Boulevard
14                         Suite 150
                           Oak Brook, IL 60523
15
                           NICK WOOTEN LLC by
16                         MR. NICHOLAS H. WOOTEN
                           P.O. Box 3389
17                         Auburn, AL 36831

18
     For the Defendant:    HINSHAW & CULBERTSON LLP by
19                         MR. JOHN P. RYAN
                           222 N. LaSalle Street
20                         Suite 300
                           Chicago, IL 60601-1081
21

22
     Court Reporter:       LAURA R. RENKE, CSR, RDR, CRR
23                         Official Court Reporter
                           219 S. Dearborn Street, Room 1432
24                         Chicago, IL 60604
                           312.435.6053
25                         laura_renke@ilnd.uscourts.gov

```
 1          (In open court.)
 2               THE CLERK:  How about Hammer?
 3               MR. ZAMBON:  Yes.
 4               THE CLERK:  Everybody's here on Hammer?
 5               MR. ZAMBON:  Yes.
 6               THE CLERK:  Okay.  13 C 6397, Hammer v. Residential
 7     Credit.
 8               THE COURT:  All right.  Good morning.
 9               MR. WOOTEN:  Good morning, your Honor.
10               THE COURT:  Who do we have here?  Let's have everyone
11     identify themselves for the record.
12               MR. ZAMBON:  Ross Zambon on behalf of the plaintiff,
13     Ms. Hammer.
14               MR. WOOTEN:  And Nick Wooten for Ms. Hammer as well.
15               MR. RYAN:  Good morning, your Honor.  John Ryan on
16     behalf of the defendant.
17               THE COURT:  Okay.  I entered the order that was
18     submitted to me yesterday, which I understood was an agreed
19     order.  Is that correct?
20               MR. RYAN:  That's correct, your Honor.  There was just
21     one quick clarification on that.  Obviously, there's three
22     e-mails between -- or four e-mails between Spencer Cull and
23     Cynthia Fortune who nobody else is on.  We don't -- I didn't
24     object based upon attorney-client privilege.
25               THE COURT:  Nor could you.
```

1       MR. RYAN:  I'm not objecting --

2       THE COURT:  They're not privileged.

3       MR. RYAN:  Yes.  So just the order we submitted said

4  it only -- I'm only asserting a privilege -- or could be

5  construed that I'm only asserting a privilege with attorneys.

6       THE COURT:  Hang on one second.

7       MR. RYAN:  Sure.

8       THE COURT:  Let's go off the record.

9     (Off-the-record discussion.)

10      THE COURT:  So okay.  Let's go back on the record.

11      Sorry.  Go ahead.

12      MR. RYAN:  Sorry, Judge.

13      So, quickly, my objection, obviously, goes to not only

14  attorneys, but employees at Codilis's law firm.

15      THE COURT:  All right.  Well, here's -- I looked over

16  the documents that were submitted to me *in camera*.  It's pretty

17  clear to me that the redacted portions of the e-mails are

18  privileged.  There's no question in my mind having read them.

19  There was no selective -- there was nothing where they kept the

20  good stuff away from you and gave you bad stuff.  There's no

21  question in my mind, in fact, that those were privileged.  I

22  read each one of them.  I put them in context.

23      And they are communications that are between an

24  attorney and a client or a paralegal and a client.  The law is

25  clear in Illinois that -- the law is very clear in Illinois

1    that communications -- attorney-client privilege extends to

2    both communications from clients to attorneys, as well as

3    attorneys to clients.

4          And I'll cite the *Equity Residential v. Kendall Risk*

5    *Management* case, 264 F.R.D. 557 at 563, which collects a series

6    of Illinois cases.

7          It also notes in that case -- and I won't give the

8    Illinois cites because they're all in the Federal Rule case,

9    which was a Northern District 2007 case -- that confidential

10    communications made by a client to representatives of the

11    attorney, such as paralegals or secretaries, are also

12    privileged.

13          And so bottom line is the redacted portions are

14    privileged.  So I'm clear, though, is there an objection by RCS

15    to the nonredacted portions of the e-mails?

16          MR. RYAN:  Yes, your Honor.

17          THE COURT:  All right.  And I looked at those too.

18    And, candidly, when I looked at them, I was surprised they were

19    turned over.  They're privileged too.  There's no question in

20    my mind they're privileged.

21          And it's my understanding based on what was told to me

22    in chambers on Friday that was the disclosure by Codilis that

23    was done without the approval of RCS.

24          I looked at the clawback statute, the rule for

25    clawbacks, which is Federal Rule of Civil Procedure

1    26(b)(5)(B), which is implicated in such an inadvertent

2    disclosure.  I also looked at Federal Rule of Evidence 502,

3    which deals with whether or not information is privileged and

4    whether there's been an inadvertent disclosure or an

5    intentional waiver.

6            There's no question in my mind based on the

7    representations of Mr. Ryan that this disclosure by Codilis was

8    done without the review by RCS.

9            Is that still your position?

10           MR. RYAN:  Yes, your Honor.

11           THE COURT:  And that's your representation to the

12   Court.

13           MR. RYAN:  That's correct, your Honor.

14           THE COURT:  All right.  These are privileged

15   communications.  There's no question in my mind they are.

16   There are -- there was no affirmative use of them used by RCS

17   once they were disclosed.  They informed the -- my

18   understanding is they informed the plaintiffs of the fact that

19   this was an inadvertent disclosure.  Mr. Ryan explained how it

20   happened.  He wasn't in town when Codilis sent it over.

21           And there's not a lot different between what was

22   nonredacted and what was redacted.  Different content, but in

23   my mind, they're all attorney-client communications.

24           So I am finding that the inadvertent disclosure of the

25   Codilis communications between Codilis and their employ -- and

1   nonlawyer personnel and RCS -- whether it's Spencer Cull,

2   whether it's Ms. Fortune -- and other people there are all, in

3   the midst of foreclosure litigation with Ms. Hammer, privileged

4   communications and shall not be used.

5          So those are successfully clawed back.  If RCS makes

6   any use of -- certainly it doesn't apply to internal

7   communications that are of RCS employees.  Those aren't

8   privileged, of course, and they're not asserting they are.

9          And understandably, Ms. Hammer is concerned if she

10  found those through the Codilis e-mails and didn't get them

11  from you directly.  But that, I think, is going to be remedied

12  by your doing the search of the records using the search terms

13  I told you should be done.

14         Ms. Judge, I think the defendants are all in the

15  lockup.

16         MS. JUDGE:  Oh, okay.

17         THE COURT:  As are their lawyers.

18         MS. JUDGE:  Great.

19         THE COURT:  So that's going to be the order of the

20  Court.

21         Now, there is a motion that was made by Hammer to

22  exclude the two physicians because they hadn't received a

23  summary of their expected testimony.

24         It's been represented in the response filing by Hammer

25  that they will have such a -- or can have such a summary by I

1    believe tomorrow?

2         MR. ZAMBON:  I can tender one here in open court here

3    today, your Honor.

4         THE COURT:  All right.  I don't need to see it.  You

5    need to give it to defense counsel.  That will suffice.

6         Mr. Ryan, I am -- this does not preclude a motion

7    *in limine* to prevent certain testimony of these doctors.  I

8    have expressed grave concern about causation between whatever

9    her medical condition is and the causation between her medical

10   condition and the actions of the defendant.  And that's going

11   to have to be the subject of a motion *in limine* once I've read

12   their depositions.

13        But I believe you have sufficient time if you get a

14   disclosure today to find a consulting expert who can give you

15   the necessary ammo if you need it to conduct a meaningful

16   deposition of these physicians.  And I'll also give you the

17   time, all within the trial date we're going to keep, to find a

18   testifying expert if you choose to do so.

19        The plaintiffs have offered in their responsive

20   document to your motion to allow you to do that without having

21   a deposition taken of any expert you retain.  And I believe

22   there was another concession they made, which I'll need to find

23   their filing.

24        MR. WOOTEN:  Your Honor, I can represent to you we

25   don't care.  I mean, he can bring whoever and put them on the

1    stand.  We know what they're going to say.  If they're a

2    rebuttal expert, they're going to disagree with our treating

3    physicians.

4              THE COURT:  Well, if they're going to be an expert,

5    they need to do a report.

6              MR. WOOTEN:  Sure.

7              THE COURT:  And you'll have that.

8              But you've offered to allow that witness to testify

9    without taking a deposition?

10             MR. WOOTEN:  Yes, sir.

11             THE COURT:  So be it.  That will be -- that will be

12   the price you pay --

13             MR. WOOTEN:  Sure.

14             THE COURT:  -- candidly, for being so late on giving a

15   disclosure.

16             Mr. Ryan, I know you want to talk in a minute, but

17   I'll give you a minute as soon as I'm done with this.

18             So that, and I think there was one other --

19             MR. WOOTEN:  We were tendered a summary of images from

20   the servicing software.

21             THE COURT:  Hang on one second.  We're still on

22   experts.

23             MR. WOOTEN:  I'm sorry.

24             THE COURT:  All right.  Yeah, I think that was it,

25   simply that you're going to have to provide a report if you

1    call a testifying expert.  I'm not going to -- they've said

2    they don't want to depose that expert; that's fine.  They will

3    have the notice they have -- they need of what that expert is

4    going to say if you choose to call one with that report.

5           And, Mr. Ryan, you were anxious to say something.

6           MR. RYAN:  Yes, your Honor.  I believe that their

7    response brief to my motion only addressed one part of my

8    motion.  There was two parts of my motion.  The first part was

9    if they're going to bring one of these doctors in for

10   causation, then they need to give me an expert report because

11   there's nothing in the medical records which shows causation.

12          THE COURT:  I thought you didn't have the medical

13   records yet.

14          MR. RYAN:  We were getting medical records.  We don't

15   have all of them from Dr. Phillips.  But one of the records

16   that they gave -- that they cited in their response brief

17   saying there was causation is a letter from Ms. Hammer's

18   orthopedic doctor to Dr. Phillips.

19          THE COURT:  Phillips is the general practitioner?

20          MR. RYAN:  Yes.

21          THE COURT:  All right.

22          MR. RYAN:  And, Judge, I -- like, I didn't get a

23   chance to reply, but I can hand it to the Court to see the

24   context of there is no causation opinion in the records.  So if

25   there's no causation opinion in the records, I've got to get an

10

1    expert report separate and apart from their 26(a)(2)(C)

2    disclosure.

3           THE COURT:  Look.  I think the way it's going to work

4    is as I've just said.  They're going to give you their

5    disclosure today, which is all that's required under Rule 26

6    for a non -- for someone who is not providing an expert --

7    providing opinion testimony as a retained expert.

8           Doctors -- and you pointed out the advisory notes to

9    the 2006 amendment.  Doctors -- I think it's 2006.  Doctors are

10   the type of people that need to provide a written report.

11   You're going to get that report today.

12          I am very skeptical of a causation with the injuries

13   that Ms. Hammer is alleging being caused by mortgage

14   foreclosure actions.  I expressed that off the record before in

15   the presence of all parties.  I'm doing it now in court on the

16   record.

17          But I -- I'm like anyone.  I'll wait and see what

18   happens.

19          MR. RYAN:  Well, my understanding, your Honor, is

20   they're not giving me an expert report, but rather I'm getting

21   a disclosure in our 26(a)(2)(C) --

22          THE COURT:  You are.  You are.

23          MR. RYAN:  -- without an expert.

24          THE COURT:  They are allowed as treating physicians to

25   give you that summary.  If the treating physician -- if there

11

1    is something in their records where as treating physicians they

2    believe there was a cause -- some type of causation, that is

3    something in their records where they made a contemporaneous

4    diagnosis.

5           Now, if -- that's in the midst of litigation, and I --

6    I saw enough of the backup to know.  If Ms. Hammer is trying to

7    get in -- well, if there are statements of her that are trying

8    to come in for -- through medical records that are not truly

9    made for diagnosis purposes, that's hearsay.  There's an

10   exception if you make statements to physicians for purposes of

11   receiving treatment.

12          But if this is "I'd like to talk to you about my

13   foreclosure case, and let me tell you all the terrible things

14   they're doing," that to me runs possibly afoul of that hearsay

15   exception and is hearsay, inadmissible hearsay.

16          MR. RYAN:  One last point, your Honor.  I know you

17   have to get through your call today.  But the medical records

18   don't come in whatsoever if there is no causation opinion.

19          THE COURT:  Well, the medical records may come in to

20   talk about -- if there is a condition that is exacerbated

21   through -- that the doctor in their professional view was -- a

22   condition was exacerbated by the foreclosure litigation, I may

23   very well let it in.  If it's very tenuous and is suspect, as I

24   said back in chambers, that ought to be the subject of a motion

25   *in limine*.

1    I'll look at it.  You're going to have your expert;

2  they're going to have their nonexpert -- their nonexperts but,

3  nonetheless, treating physicians.  That's what motions

4  *in limine* are.  It may be a *Daubert* challenge to a portion of

5  their testimony if they try and put in an opinion about

6  causation that they're not qualified to make.

7    But I can't do this in the blind.  I'm going to have

8  to see what they say, and I'm going to have to see what your

9  expert provides.  But you have enough time.  You have a month

10  and a half to go find somebody.  I'd be shocked if you hadn't

11  thought of someone already.

12    MR. RYAN:  My -- just for the record, your Honor, I

13  also believe that we -- that my client's going to be prejudiced

14  because we should be able to have a disclosure of who their

15  treating physicians and what they're going to say so I can have

16  an expert to prepare for the deposition.

17    THE COURT:  That's what he's going to give you.  He's

18  giving you that today.

19    MR. RYAN:  But now I'm going to have to get an expert

20  to review these, a consultant, so I can take their dep within

21  20 days.

22    THE COURT:  Yeah.  Well --

23    MR. RYAN:  I think my client is being prejudiced by

24  the fact that they want to keep their trial date, but in the

25  same sense, they're the ones that didn't disclose --

13

1           THE COURT:  I've been telling you for six months now

2   or whatever date I set that date we're not moving it.

3           So, Mr. Ryan, I'm confident this is not the first time

4   you've thought about this issue.  And maybe you haven't

5   retained anybody yet, but I -- candidly, I think you're

6   experienced enough you probably -- if you haven't retained

7   anybody, you've given some thought to it.

8           And I don't -- everybody is prejudiced because -- in

9   the sense that nobody wants to go to trial when it's set.  If

10  they had more time, they'd be less prejudiced.  You've got

11  plenty of time.  And I've bent every rule in the book to allow

12  both of you to get discovery late enough to get this case to

13  trial.

14          It's going to trial.  They're giving you that

15  disclosure today.  If there's any foot dragging by these

16  doctors, it's on plaintiff's head.  So if these doctors drag

17  their feet on being deposed, they will get barred.  If they

18  drag their feet on providing medical records, they will get

19  barred.  That's Ms. Hammer's -- or I'll kick the trial date.

20          And I can tell you right now if you don't go to trial

21  on the date we have, it's going to be three or four months

22  later.  I've got trials backed up after that.  And so I've

23  carved this out intentionally to give you those dates.

24          So if I don't bar those doctors, I'm certainly going

25  to push the trial date back if these doctors are not available

14

1    through the offices of your client calling them and saying it's

2    got to happen, along with records.

3         Take the deps.  And you've got the golden

4    opportunity -- it will be just like a criminal trial.  You're

5    going to get to call a witness, and they haven't deposed him.

6    Just like -- it's not trial by avalanche.  I think the one

7    phrase is it's either trial by avalanche or trial by -- well,

8    I'll leave it at that.

9         You are in an ideal situation to be able to call your

10   expert without having that person deposed because the

11   plaintiffs have conceded that because they want to keep this

12   trial date, as do I.  So I think neither side is prejudiced to

13   the point where it's going to be an unfair trial.

14        Anything else we need to discuss today?

15        MR. WOOTEN:  Your Honor, on that point, I want to

16   clarify just because we talked about this last week.

17        THE COURT:  Well, here's what we'll do.  I'm going

18   to -- unless you have to be somewhere else --

19        MR. WOOTEN:  No, sir.

20        THE COURT:  -- I'm going to call a criminal case.

21   I've got some people in the lockup.  I want to get them in and

22   out.  I'll recall you.  But we will -- I'll get everybody --

23   you can all say what you need to say.

24        MR. WOOTEN:  Thank you, your Honor.

25        MR. RYAN:  Thank you.

1          MR. ZAMBON:  Thank you.

2      (The Court attends to other matters.)

3          THE COURT:  All right.

4          THE CLERK:  13 C 6397, Hammer v. Residential Credit.

5          THE COURT:  Okay.  Sorry to have cut you off earlier,

6  but you saw what I had to do, and I wanted to get them in and

7  out so that we could take the time we need to make sure you all

8  had a chance to say what you wanted to say.

9          MR. WOOTEN:  It's no problem, your Honor.  I was -- I

10  was just trying to clarify.  If I understood you correctly last

11  Friday when we had our call, one of the things that you asked

12  was that you wanted us to go ahead and take our doctors, our

13  treating physicians, in their deposition and ask them the

14  questions we expect to ask them at trial --

15          THE COURT:  Well --

16          MR. WOOTEN:  -- and allow Mr. Ryan to --

17          THE COURT:  Yeah.

18          MR. WOOTEN:  -- to have not only what he wishes to

19  ask, but also what we expect to ask.

20          THE COURT:  Yeah, I think that's a fair way to go

21  about -- and that's why I suggested it -- a fair way to go

22  about and cure any prejudice that would inure to the defendants

23  by not knowing what the folks were going to say.

24          Now, you know, the -- Mr. Ryan can ask them, "What do

25  you expect to say in court?" and they're going to say, "I don't

16

1    know."  And that does him no good and does me no good when

2    there's a motion *in limine* that's going to have to be filed.

3         So I think you need to ask these physicians a

4    question -- questions.  And, frankly, if there's objections,

5    leading, you know, you've still got to answer it in a dep.  And

6    they're going to be coming in live.  Presumably their

7    transcript's not going to come in; they're going to have to

8    testify.  So let him lead a little so at least you can get -- a

9    little, not much.

10        MR. WOOTEN:  Yes, sir.

11        THE COURT:  But enough where you can focus them on a

12   question you're going to ask.

13        But, you know, you're going to get objections.  And if

14   you lead too much and one of these doctors becomes unavailable,

15   the transcript -- those objections will be sustained in court.

16   So I'm not giving you license to lead, but I am giving you

17   direction to at least ask enough questions of them where there

18   will be no surprise to the defendants as to what they intend to

19   say in court.

20        If -- that's all the rule -- really, the rule doesn't

21   even require that.  The rule requires a written notice.  But

22   because of what I think is a late technical written notice --

23   and there are numerous cases cited by the plaintiff as to

24   courts allowing witnesses to testify even when that notice has

25   been untimely -- I think, in fairness, you make -- you need to

 1   make sure those doctors put on the record what you intend to
 2   ask them at trial.
 3       Defendants can ask them questions, cross-examine or
 4   ask them questions.  They're really not your witnesses.
 5       MR. WOOTEN:  Okay.
 6       THE COURT:  They're not a party.  But you should both
 7   ask enough questions where the issues of what they're going to
 8   talk about at trial are teed up so if an appropriate motion
 9   *in limine* is filed, I have testimony to look at.  Rather than
10   speculation about what they might say, I know what they did
11   say.
12       And then I can make a decision whether the causation
13   issue has been established appropriately or it hasn't or
14   whether I need to hear these doctors outside the presence of
15   the jury to see what they're going to say.  And I think that's
16   the way we're going to go.
17       MR. WOOTEN:  And that was my point in offering, your
18   Honor.  I wanted to make that clarification.  And I told
19   Mr. Ryan.  It's -- normally I would just -- if we had plenty of
20   time, I'd just let him ask whatever questions he wanted to ask.
21       THE COURT:  Right.
22       MR. WOOTEN:  But I felt like, in fairness, he needed
23   to know what my questions would be to them so that we have --
24   everybody has a complete picture coming into this courtroom.
25       THE COURT:  They're treating physicians, but, frankly,

18

1    they're probably inching toward experts in the sense that, at

2    least as represented by Mr. Ryan and I think by plaintiffs,

3    they're going to be talking about causation issues that at

4    least in my uneducated state, I don't understand how they can

5    reach those conclusions.

6              I'm willing to be educated.  And I'm not the

7    fact-finder; jury can decide whether these are good opinions or

8    not if I think there is enough there to make -- to allow it to

9    go to a jury.  And that's what motions *in limine* are for.

10             I'm not going to be substituted as a fact-finder.  I

11   may disagree with the doctor.  But if there's a plausible basis

12   for what they say and -- then a jury can decide having heard

13   your doctors and presumably hearing possibly from an expert by

14   the defendants.  But that's what trials are about.

15             MR. RYAN:  Your Honor, I respect your opinion, and I'm

16   not going back into that.  But I just wanted to let the Court

17   know one more thing.  Dr. Hasanain, the cardiologist.

18             THE COURT:  Yeah.

19             MR. RYAN:  They still haven't talked to him, so they

20   don't know what he's going to say.  So how are they --

21             THE COURT:  How are you going to give a --

22             MR. RYAN:  -- going to make a disclosure?

23             THE COURT:  -- summary of what he's going to say

24   having not talked to him?

25             MR. WOOTEN:  Well, we wrote the summary based on the

1    contents of what we understood were in the records, you Honor.

2            My understanding of what these doctors can testify to

3    at this point is their treatment, diagnosis, and personal

4    observations of Ms. Hammer in the course of making their

5    treatment and diagnosis.

6            THE COURT:  You have their medical records, right,

7    Mr. Ryan, from that cardiologist?

8            MR. RYAN:  I have the medical records from that

9    cardiologist, and there is no causation opinion in there.

10           THE COURT:  Well, we'll see what happens.

11           MR. RYAN:  Okay.

12           THE COURT:  When are you going to talk to this --

13           MR. WOOTEN:  Your Honor, we made an effort to talk to

14   Dr. Hasanain.

15           THE COURT:  Right.

16           MR. WOOTEN:  And we got a message that he would not

17   speak to us because he was under subpoena, and he didn't feel

18   like it was proper to speak to us because he was under

19   Mr. Ryan's subpoena for a deposition.

20           THE COURT:  All right.  Well, then you're going to

21   have to do the best you can with your disclosure.  I -- you

22   know, then I'm not going to penalize them for a disclosure that

23   is their best effort based on medical records if he's not going

24   to talk to them based on a mistaken belief that since he's

25   under subpoena, he can't talk to them.

1    I can't erase that from the doctor's mind.  And I'm

2    not going to drag the doctor in over the phone saying, "You are

3    required to talk to the plaintiff's lawyers."

4    Sounds like they're going to be at as big a

5    disadvantage at that deposition as you are, Mr. Ryan.  But

6    let's hear what he has to say.  Make sure these deps occur in

7    enough time -- well, do you have them scheduled?

8    MR. RYAN:  Your Honor, we have subpoenas to the

9    doctors, hopefully having them on February 23rd and 24th.  But

10   they're doctors, so I don't know whether that's --

11   THE COURT:  All right.  But they're also citizens and

12   people amenable to service.  And let's work optimistically on

13   it.  To the extent -- I assume plaintiffs are available on

14   those dates?

15   MR. ZAMBON:  Those dates, I just made that -- asked

16   that question.  Those dates are fine.  And we'll reach out to

17   confirm them and hopefully have that --

18   THE COURT:  Yeah.

19   MR. ZAMBON:  -- nailed down in the next day or two.

20   THE COURT:  And, if need be, have, you know,

21   Ms. Hammer use her good graces with the doctors who have

22   treated her to emphasize to them the importance of making these

23   dates because it will -- if those can't be deposed by then, I'm

24   not going to force Mr. Ryan to hire an expert the day before

25   trial.

21

1          And even if you're not going to depose that expert,

2     I'm not going to force him to have to be stuck waiting to hire

3     an expert because -- on the eve of trial because the doctors

4     haven't been deposed before then.  Then you are at risk of

5     either losing your trial date or losing your witnesses.

6          MR. RYAN:  Your Honor, if I could just ask one more

7     question.  I just -- I don't know what expert to get because

8     their answer to my interrogatory was saying something about

9     atrial fibrillation, but then it goes -- but they might testify

10    here and there about other things.  Are we just talking about

11    atrial fibrillation?

12         THE COURT:  Oh, you're asking me to make a decision I

13    can't make.

14         MR. RYAN:  Okay.

15         THE COURT:  You're going to have to use your best

16    judgment.

17         MR. RYAN:  Okay.

18         THE COURT:  There are experts on everything.

19         MR. RYAN:  Okay.

20         THE COURT:  And they're all available to the lawyers.

21    And so -- now, had we --

22         Let's go off the record for a minute.

23       (Off-the-record discussion.)

24         THE COURT:  So let's go back on the record.

25         All right.  I have discussed with the parties the

1  advisability of going before Judge Martin for a settlement

2  conference, and I'm making that referral right now.

3        I've asked the attorneys to go to Judge Martin's

4  courtroom deputy immediately after we're recessed from here and

5  appear before Judge -- and, if Judge Martin can see you, set a

6  date for a settlement conference or talk about when you want to

7  talk about a date for a settlement conference.  I know you have

8  to contact clients and things like that.

9        But if we don't get the ball rolling on that, it will

10 never occur.  It's my firm opinion there ought to at least be a

11 settlement conference before we try this case.  Maybe it

12 doesn't work.  That's why we have trials.  But I don't think

13 it's in the parties' best interests to not at least have that

14 conference.

15       If Judge Martin had had a conference before and was

16 unsuccessful, I wouldn't order you back.  But that conference

17 was canceled because of the divergence of the demands and

18 offers.  And I think there ought to at least be an effort to do

19 that.

20       I'm going to give you a status date first couple days

21 of March before the motions *in limine* are due.  And you can

22 report to me at that point on what has occurred with the

23 doctors' depositions.  And, Mr. Ryan, you're -- and whether or

24 not there is additional time needed for any motions *in limine*.

25       I do not want to have a dozen motions *in limine* fully

briefed in front of me the day before trial. I've had that happen. It's no good for the parties because you don't know how to argue your case because I'm ruling -- you don't -- I won't have rulings immediately. And it's not good for me because I can't give it the time and the care that would normally -- would always be needed on a motion *in limine* when they come in at the last minute.

So I'm going to be reluctant to move those dates, but I will -- at that status conference, we can discuss whether certain motions -- if you intend to make them; you may not -- but certain motions on either side may -- I may give you an extended briefing schedule for filing them and briefing them if you give me reasons.

But don't delay on all the other motions *in limine* you have that could be prepared today if you wanted to because you know your case.

If there's something about these later doctor deps that are going to be the cause of a delay, I'll hear what you have to say in early March, and I'll inevitably give you more time.

MR. RYAN: And then one last question. If I were to have a rebuttal expert, what would be the deadline considering that I won't get the deposition transcript, my guess is, until --

THE COURT: Well, you're going to have to order

24

1    expedited transcripts.

2        MR. RYAN:  Right.

3        THE COURT:  If you need -- that's one.  And if your

4    motion needs the rebuttal -- if your motion needs the rebuttal

5    expert, I don't know what I'm going to do on that.  We're going

6    to have to discuss that in early March.  I'm -- if your motion

7    is just based on the -- you know, what these doctors said and

8    their medical records and you're questioning what they said in

9    their dep, you know, I'll give you time to file something a

10    short time after you get your transcripts.

11        But if you're not asking your questions with motions

12    *in limine* in mind, and if you're not asking on the plaintiff's

13    side your questions to prevent that motion *in limine* from being

14    granted, you're not -- you'd surprise me.  I'm sure you're all

15    going to be doing that because I've given you a preview of

16    where I have questions about the -- that testimony.

17        Okay.  So we'll give you a status date.

18        THE CLERK:  How is March 3rd for everybody?  That's a

19    Tuesday.  Does that work?

20        THE COURT:  And, Mr. Wooten, you can call in.

21        MR. WOOTEN:  Yes, sir.  And that's what I was about to

22    say.  I'm bouncing back and forth between Arkansas and Chicago

23    right now more than I'm staying at home.  I've got a Chapter 11

24    down there we're pretty busy with.  But I will --

25        THE COURT:  Not your own, I hope.

1    MR. WOOTEN:  -- make it work.  I will -- I'm sorry?

2    THE COURT:  Not your own, I hope.

3    MR. WOOTEN:  No, no, no.  No, sir.

4    THE COURT:  Okay.

5    MR. WOOTEN:  No, we had a grain brokerage go bust, and

6    $30 million went missing.  A bunch of farmers are trying to get

7    paid.

8    THE COURT:  Understood.

9    MR. WOOTEN:  I'll make it work.

10   THE COURT:  Well --

11   MR. WOOTEN:  I'll either be here or be on the phone.

12   THE COURT:  Yeah.  I would limit your trips to

13   Chicago.  One, you're going to be up here for trial.  Two,

14   you're going to have to likely be here for the settlement

15   conference.  For a five- or ten-minutes status --

16   MR. WOOTEN:  Sure.

17   THE COURT:  -- unless you have other business here, I

18   recommend you call in.

19   MR. WOOTEN:  Yes, sir.  I'll make it work one way or

20   the other.  And if it -- and like you say, in a five- or

21   ten-minute call, it's easier to do it --

22   THE COURT:  Yeah.  And Mr. Zambon has been very

23   protective of his client's interests.  So it's fine.

24   MR. ZAMBON:  To make a suggestion, your Honor, if we

25   end up taking these doctors' deps on the dates Mr. Ryan

1   indicated, set a status maybe before or just after that week.

2   Would it make sense to call in if we get those solidified?

3   That way Mr. Wooten will be around.

4           THE COURT:  Oh, yeah.  Well, what do you mean?

5           MR. ZAMBON:  Just to get the status in before -- based

6   on the timing concerns -- before March.

7           THE COURT:  Oh, sure.  No, if you -- I'm not here the

8   last week of February is the problem.

9           MR. ZAMBON:  Okay.  Okay.

10          THE COURT:  So if there's an emergency during that

11  time, contact my courtroom deputy.  I can hear you over the

12  phone, but I'd prefer not to.

13          MR. ZAMBON:  Okay.

14          THE COURT:  But if there's a reason to come in before

15  that status, just contact my courtroom deputy.  We can do it by

16  phone quickly.  I don't care if you're in court or not; we just

17  need it on the record.

18          Okay.  Anything else we need to discuss?

19          MR. WOOTEN:  Your Honor, Mr. Ryan handed me the

20  documents this morning from the Nautilus system, the inventory

21  of images.

22          THE COURT:  Yeah.

23          MR. WOOTEN:  It's 12 pages of images --

24          THE COURT:  Okay.

25          MR. WOOTEN:  -- that are linked to Ms. Hammer's loan.

1    Each image, as I represented to the Court before, has a unique

2    image identification number.  You know, some of them,

3    they're -- obviously, I can tell what they are.  There is a

4    group of documents that say that they are correspondence

5    documents, and there's a group of documents that say they're

6    unrecognized documents.

7              THE COURT:  All right.

8              MR. WOOTEN:  I don't understand it to be very

9    difficult to print these documents by their image number.  It

10   would probably be simpler just for us in our due diligence to

11   just have the images printed and delivered to us.  Mr. Ryan may

12   think that that's troublesome.  I don't know.  But --

13             THE COURT:  Well, again, these are -- by definition,

14   you haven't talked to him about it yet.

15             MR. WOOTEN:  Right.  We just got it this morning.

16             THE COURT:  All right.

17             MR. WOOTEN:  So my point is that I think it could be

18   done very easily to print these documents, but certainly there

19   are 12 pages of documents that are linked to Ms. Hammer's loan.

20   And I would suspect just by looking at them that there are a

21   number that we have not seen.

22             THE COURT:  Mr. Ryan?

23             MR. RYAN:  No, they've seen them all, your Honor.

24             THE COURT:  All right.

25             MR. RYAN:  They have all the documents.  They asked

1    for this inventory; I gave them the inventory.

2            THE COURT:  All right.  Well --

3            MR. RYAN:  It's just constant --

4            THE COURT:  Well, this is why the meet-and-confer

5    requirement is required before discovery disputes get brought

6    to me.  So you need to talk about it together.  If there truly

7    is a disagreement, then you can always bring it back to me.

8            But you need to meet and confer.  Mr. Ryan says you

9    have everything.

10           MR. WOOTEN:  And, your Honor, the other thing is we

11   did bring -- and we don't have to go into any great detail on

12   it.  But we did bring some of the notes that were presented in

13   the gap that were left out.  And there are notes dealing

14   specifically with the fact that the Court ordered and found in

15   state court there was a modification and the internal

16   correspondence about how RCS chose to handle that, actually

17   booked the modification into its system and then immediately

18   reissued a second foreclosure within 30 days.

19           So as we were concerned, I mean, those documents, not

20   only were they withheld, but they were -- they undermine

21   specifically the position of RCS with respect to the fact that

22   there was no modification.  Certainly we can supplement that

23   into any motion *in limine* or motion for summary judgment on

24   that issue.

25           THE COURT:  Well -- oh.  And -- well, all right.  What

1  you've just said, you're not asking me to do anything, so

2  there's nothing I can do.

3  　　　　　MR. WOOTEN:  Right.

4  　　　　　THE COURT:  There was a question, I think, of whether

5  or not I'd allow a motion for summary judgment to be filed at

6  this late time.  The answer is no.  Either go to trial or

7  settle.  Okay?  We're done.  We're done with motion practice

8  once I rule on the motion to dismiss.

9  　　　　　MR. WOOTEN:  Can we supplement those documents, your

10  Honor, with respect to the request to -- the punitive damages

11  inquiry?  I think they're relevant to being able to seek

12  punitive damages under the --

13  　　　　　THE COURT:  What is the status of that motion?

14  　　　　　MR. WOOTEN:  You have not ruled, have you?

15  　　　　　MR. ZAMBON:  If you look at the proposed order,

16  defendant was going to advise whether or not we can rely on the

17  Edgar filing from MTGE, which we believe --

18  　　　　　THE COURT:  Right.

19  　　　　　MR. ZAMBON:  -- is the parent company --

20  　　　　　THE COURT:  Right.

21  　　　　　MR. ZAMBON:  -- or if we need a ruling on that fully

22  briefed motion.  And I'm not sure of the answer to that.

23  　　　　　THE COURT:  Well, have you looked at the Edgar filing

24  yet?

25  　　　　　MR. ZAMBON:  Yeah, we're fine with that.  I think it's

1    a matter of whether or not defendant is going to stipulate to

2    it.

3            MR. RYAN:  Your Honor, at this point my client will

4    agree, will stipulate to it.

5            THE COURT:  Sure.

6            MR. RYAN:  It's a parent --

7            THE COURT:  They're admissions.

8            MR. RYAN:  It's a parent company.

9            THE COURT:  You -- you will --

10           MR. RYAN:  It's a --

11           THE COURT:  I'm sorry.  We're both talking at the same

12    time.

13           MR. RYAN:  Sorry.

14           THE COURT:  There's the unremarkable fact that your

15    client will stipulate that the SEC reports they filed to the

16    government under penalty of perjury are correct.  Fair enough.

17           So we don't need punitive damage discovery.  You've

18    got the net worth; you've got the balance sheet; you've got

19    income statements; you've got quarterly Ks filed; you've got --

20    or quarterly 10-Qs filed; you've got yearly 10-Ks filed.

21           You've got what you would get normally were I to order

22    discovery on punitives.  If I allow punitives in the case, you

23    can tell the jury how big a company they are -- if I allow them

24    in -- and you'll have the records to show how big a company

25    they are through their public filings, which they can't back

1    off of.

2         Okay.  Anything else -- but I'm not going to allow

3    summary judgment motion briefing at this time.  It's too late.

4         MR. ZAMBON:  Can I make one comment on that?

5         THE COURT:  Yeah.

6         MR. ZAMBON:  With respect to our side, with respect to

7    summary judgment, we were just going to move with respect to

8    issue preclusion, collateral estoppel.  Can we at least do that

9    in a motion *in limine*?

10        THE COURT:  Yeah, you can.

11        MR. ZAMBON:  Okay.

12        THE COURT:  Yeah, you can do it there.  But -- because

13   that's an issue of evidence.  Motion for summary judgment,

14   though, we're -- I'm just not going to hear it at this time.

15        Okay.

16        MR. WOOTEN:  Thank you, your Honor.

17        THE COURT:  Thank you all.

18        MR. RYAN:  Thank you, your Honor.

19        THE COURT:  Okay.

20        MR. ZAMBON:  Thank you, Judge.

21     (Concluded at 10:03 a.m.)

22

23

24

25

1                    C E R T I F I C A T E

2          I certify that the foregoing is a correct transcript of the

3    record of proceedings in the above-entitled matter.

4

5    /s/ LAURA R. RENKE                        March 25, 2015
     LAURA R. RENKE, CSR, RDR, CRR
6    Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25