# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| ALENA W. HAMMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13 C 6397 |
| | ) | |
| RESIDENTIAL CREDIT SOLUTIONS, INC., | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendant. | ) | |

## DEFENDANT RESIDENTIAL CREDIT SOLUTIONS, INC.'S, MOTION FOR JUDGMENT AS A MATTER OF LAW

Respectfully submitted,

Residential Credit Solutions, Inc.

/s/ P. Russell Perdew
P. Russell Perdew
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-1712
rperdew@lockelord.com

John P. Ryan
HINSHAW & CULBERTSON
222 N. LaSalle Street, Ste 300
Chicago, IL 60601
(312) 704-3000
jryan@hinshawlaw.com

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

LEGAL STANDARD................................................................................................2

ARGUMENT .............................................................................................................3

I.      Judgment must be entered for RCS on the contract and ICFA claims
        because there was no loan modification agreement as a matter of law. .............................3

        A.      Hammer's contract and ICFA claims depend on the formation of an enforceable
                loan modification agreement.................................................................3

        B.      Hammer rejected the loan modification offered by the FDIC. ...............................4

        C.      Hammer's change to the FDIC's proposal was material. ........................................5

        D.      Hammer's counteroffer was never accepted...........................................................7

        E.      Hammer's conversation with the FDIC is irrelevant. .............................................8

II.     Punitive damages should not have been submitted to the jury as a
        matter of law. ...........................................................................................11

III.    Judgment should be entered in RCS's favor on Hammer's RESPA claim........................14

        A.      There was no valid QWR because the letter was sent to the
                wrong address. .........................................................................................14

        B.      Hammer suffered no damages from any alleged RESPA violation......................16

CONCLUSION..........................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Appelbaum v. Milwaukee Metropolitan Sewerage Dist.*,
  340 F.3d 573 (7th Cir. 2003) ................................................................2

*Arrow Master, Inc. v. Unique Forming Ltd.*,
  12 F.3d 709 (7th Cir. 1993) ................................................................5

*Bally v. Homeside Lending, Inc.*,
  No. 02 C 5799, 2005 WL 2250856 (N.D. Ill. Sept. 8, 2005)..................................15

*Berneike v. CitiMortgage, Inc.*,
  708 F.3d 1141 (10th Cir. 2013) ................................................................15

*Business Sys. Eng'g v. IBM Corp.*,
  547 F.3d 882 (7th Cir. 2008) ................................................................2

*Byrd v. Homecomings Financial Network*,
  407 F. Supp. 2d 937 (N.D. Ill. 2005) ................................................................16

*Dawson Gen. Motors Corp.*,
  977 F.2d 369, 374 (7th Cir. 1992) ................................................................5

*Diedrich v. Ocwen Loan Servicing, LLC*,
  No. 13-CV-693, 2015 WL 1885630 (E.D. Wis. Apr. 24, 2015)..................................16

*E.B. Harper & Co. v. Nortek, Inc.*,
  104 F.3d 913 (7th Cir. 1997) ................................................................4

*Europlast, Ltd. v. Oak Switch Systems, Inc.*,
  10 F.3d 1266 (7th Cir. 1993) ................................................................12

*In re Destron, Inc.*,
  59 B.R. 240 (N.D. Ill. Bnkr. 1986) ................................................................6

*Jackson v. Bunge Corp.*,
  40 F.3d 239 (7th Cir. 1994) ................................................................3

*Jeppesen v. Rust*,
  8 F.3d 1235 (7th Cir. 1993) ................................................................12

*Kempner Mobile Elec. Inc. v. Southwestern Bell Mobile Sys.*,
  428 F.3d 706 (7th Cir. 2006) ................................................................3

*Konieczka v. Wachovia Mortg. Corp.*,
  No. 11 C 0071, 2012 WL 1049910 (N.D. Ill. Mar. 28, 2012) ..................................16

*Malcak v. The Westchester Park District*,
   754 F.2d 239 (7th Cir. 1985) ................................................................................2

*Massey v. Blue Cross-Blue Shield of Illinois*,
   226 F.3d 922 (7th Cir. 2000) ................................................................................2

*Mehra v. Shindler*,
   No. 14-cv-7506, 2015 WL 1996793 (N.D. Ill. Apr. 29, 2015)...............................11

*Ne. Ill. Reg'l R.R. Corp. v. Kiewit W. Co.*,
   396 F. Supp. 2d 913 (N.D. Ill. 2005) .....................................................................6

*Nelson v. Prod. Credit Ass'n of the Midlands*,
   930 F.2d 599 (8th Cir. 1991) ................................................................................6

*Roth v. CitiMortgage, Inc.*,
   756 F.3d 178 (2d Cir. 2014)................................................................................15

*Sipe v. Countrywide Bank*,
   690 F. Supp. 2d 1141 (E.D. Cal. 2010)..................................................................6

*Stafford v. Puro*,
   63 F.3d 1436 (7th Cir. 1995) ..............................................................................12

*Styx v. Wells Fargo Bank, N.A.*,
   No. 09-5960, 2010 WL 1253971 (N.D. Ill. Mar. 24, 2010) ...................................12

STATE CASES

*Aames Capital Corp. v. Interstate Bank of Oak Forest*,
   315 Ill. App. 3d 700 (Ill. App. Ct. 2000) ..............................................................10

*Academy Chicago Publishers v. Cheever*,
   144 Ill. 2d 24 (1991) .......................................................................................4, 10

*De Bouse v. Bayer*,
   235 Ill. 2d 544 (2009) ........................................................................................11

*Ebert v. Dr. Scholl's*,
   137 Ill. App. 3d 550 (Ill. App. Ct. 1985) ................................................................5

*First Nat. Bank of Logansport v. Logan Mfg. Co.*,
   577 N.E.2d 949 (Ind. 1991) ..................................................................................6

*Imperial Utility Corp. v. Cytron*,
   673 S.W.2d 858 (Mo. Ct. App. 1984)...................................................................13

*Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*,
   807 S.W.2d 559 (Tenn. Ct. App. 1990) ..................................................................6

*Melrose Park Nat'l Bank v. Carr*,
249 Ill. App. 3d 9 (Ill. App. Ct. 1993) ...................................................................10

*Morris v. Harvey Cycle and Camper*,
392 Ill. App. 3d 399 (Ill. App. Ct. 2009) ..............................................................11

*Peterson Development Co. v. Torrey Pines Bank*,
233 Cal. App. 3d 103 (Cal. Ct. App. 1991) .............................................................6

*Phillips. v. Old Ben Coal Co.*,
1991 Ill. App. LEXIS 72 (Ill. App. Ct. 1991) ......................................................12

*Stansel v. Am. Sec. Bank*,
547 A.2d 990 (D.C. Ct. App. 1988) ..........................................................................6

*Suffield Dev. Associates Ltd. P'ship v. Soc'y for Sav.*,
708 A.2d 1361 (Conn. 1998) .....................................................................................6

*T.O. Stanley Boot Co. v. Bank of El Paso*,
847 S.W.2d 218 (Tex. 1992) .....................................................................................6

**FEDERAL STATUTES**

Fed. R. Civ. P. 50(b) ...................................................................................................2

12 U.S.C. § 5104(e) ....................................................................................................8

15 U.S.C. § 45(a) ........................................................................................................8

15 U.S.C. § 1638(f) .....................................................................................................8

**STATE STATUTES**

740 ILCS 80/2 ...........................................................................................................10

**FEDERAL REGULATIONS**

12 C.F.R. § 1026.41(d) ...............................................................................................8

24 C.F.R. § 3500.21(e)(1) ........................................................................................14

Under Federal Rule of Civil Procedure 50(b), Defendant Residential Credit Solutions, Inc. ("RCS") hereby renews its motion for judgment as a matter of law in favor of RCS and against Plaintiff Alena W. Hammer on all counts of Hammer's complaint.

## INTRODUCTION

Hammer defaulted on her home mortgage loan in April 2009 and undisputedly failed to make a payment on the loan after that date. Hammer does not dispute her default but claims the default was cured by a loan modification she received in mid-2010. Her claims for breach of contract and violation of the Illinois Consumer Fraud Act ("ICFA") allege that RCS refused to honor the purported loan modification, refused to accept modified loan payments, and improperly pursued foreclosure when Hammer was complying with the loan modification. Thus, Hammer's contract and ICFA claims assume she received a valid loan modification.

But the evidence shows no enforceable loan modification agreement exists as a matter of law, so RCS is entitled to judgment on Hammer's contract and ICFA claims. Although Hammer's prior servicer ("FDIC") offered her a loan modification in June 2010, Hammer never accepted that modification. She instead made a material change to the proposed modification agreement (reducing the unpaid balance by over $2,300), which was a counteroffer. RCS never accepted Hammer's counteroffer (and neither did anyone else), so no loan modification agreement was ever formed. The lack of a loan modification agreement eliminates any basis for Hammer's contract and ICFA claims, so judgment for RCS should be entered on those claims.

Judgment for RCS on Hammer's punitive-damage claim should also be entered for two reasons. First, judgment on the ICFA claims eliminates any basis for punitive damages because those were the only claims on which a punitive-damage jury instruction was given. Second, even if judgment for Hammer on the ICFA claims stands, there was no basis for the submission of punitive damages to the jury. RCS strongly believes that no loan modification exists. But even if

the Court disagrees, RCS certainly had a reasonable and good-faith belief that no loan modification existed, and all of RCS's conduct was based on that reasonable belief. Further, unrebutted evidence shows that RCS repeatedly attempted to provide Hammer with a comparable loan modification, but she refused. Thus, there is no evidence that RCS acted in a willful and wanton manner towards Hammer, so as to support punitive damages.

Finally, judgment for RCS on Hammer's RESPA claim is required because Hammer did not send the purported qualified written request ("QWR") to the correct address, so there is no RESPA liability, and because there is no evidence any RESPA violation damaged Hammer.

For these reasons, judgment should be entered in RCS's favor on all claims.

## LEGAL STANDARD

A party who moved for judgment as a matter of law at the close of evidence can renew its motion after a verdict against that party. Fed. R. Civ. P. 50(b). The standard for evaluating a Rule 50(b) motion "mirrors that employed in evaluating a summary judgment motion." *Appelbaum v. Milwaukee Metropolitan Sewerage Dist.*, 340 F.3d 573, 578-79 (7th Cir. 2003). The court should not make credibility determinations, but should determine "only whether [the jury was] presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000). Despite the deference a jury verdict is owed, the fact remains that if "the nonmoving party did not introduce enough to support her claim, then judgment as a matter of law is correct." *Id.*

"Under Illinois law, if there is no dispute over the relevant facts, the question of the existence of a contract is solely a matter of law for determination by the court." *Malcak v. The Westchester Park District*, 754 F.2d 239, 243 (7th Cir. 1985) (reversing jury verdict; no evidence to support existence of contract); *Business Sys. Eng'g v. IBM Corp.*, 547 F.3d 882, n.2 (7th Cir. 2008) (existence of contract "was properly determined by the district court, and not a jury").

Whether to submit punitive damages to the jury is also a question of law for the trial court. *Kempner Mobile Elec. Inc. v. Southwestern Bell Mobile Sys.*, 428 F.3d 706, 714 (7th Cir. 2006) (affirming judgment as a matter of law on punitive damages; "the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law …."); *Jackson v. Bunge Corp.,* 40 F.3d 239, 247 (7th Cir. 1994) (same)

## ARGUMENT

I. **Judgment must be entered for RCS on the contract and ICFA claims because there was no loan modification agreement as a matter of law.**

    A. **Hammer's contract and ICFA claims depend on the formation of an enforceable loan modification agreement.**

Hammer's contract and ICFA claims were based entirely on RCS's failure to honor a purported loan modification Hammer alleges she received from the FDIC. Hammer argued that RCS improperly initiated collection and foreclosure activity against her even though she was trying to make her modified loan payments. *See* Ex. 1 hereto, Trial Transcript Excerpts, p. 1317:7–20 (Hammer's closing argument asserting "I said we were suing for three important rules. And the first was RCS did not follow the loan modification the FDIC gave to Hammer. … The second thing we told you is they didn't handle Miss Hammer's payments properly.").[1] In other words, Hammer's contract and ICFA claims required a valid loan modification agreement.

There could be no contract or ICFA claims without a loan modification agreement because Hammer was undisputedly in default under the original terms of her loan. RCS's witness Spencer Cull gave unrebutted testimony that: (1) Hammer's unmodified loan had a monthly payment of over $1,500 (Ex. 1, pp. 670:11–671:1); (2) when Hammer's loan transferred to RCS in August 2010, no such payments had been made since April 2009 (*Id.*, p. 605:17–606:5); and,

---

[1] The third thing related to the RESPA claim, which is discussed below. Ex. 1, pp. 1317:25–1318:2 ("And then the last thing was they did not properly respond to a request that they were required to respond to.").

(3) RCS rejected Hammer's payments of $749.88 because they were insufficient to bring her loan current under the unmodified terms. *Id.* p. 641:9–19. Given Hammer's undisputed default under the unmodified loan, RCS's collection and foreclosure were appropriate unless there was an enforceable loan modification. *See* Ex. 2 hereto, Def. Tr. Ex. 5, Mortgage (authorizing foreclosure in event of default). But as discussed below, there was no such modification.

### B.     Hammer rejected the loan modification offered by the FDIC.

"Hammer [had] the burden of proving … [t]he existence of a contract for a loan modification between Hammer and the FDIC." Doc. No. 179, p. 20, Jury Instruction No. 20. To prove a loan modification agreement, Hammer needed evidence of mutual assent, *i.e.*, a "meeting of the minds." *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991) ("An enforceable contract must include a meeting of the minds or mutual assent as to the terms of the contract."). Mutual assent requires offer and acceptance. *E.B. Harper & Co. v. Nortek, Inc.*, 104 F.3d 913, 918 (7th Cir. 1997) ("In Illinois, to prove a prima facie case for breach of contract, a party first must prove an offer, an acceptance and consideration."). The purported contractual terms must be clear enough that "the promises and performances to be rendered by each party are reasonably certain." *Cheever*, 144 Ill. 2d at 29. Where a contract "provides no basis for determining when breach has occurred, [there] is not a valid and enforceable contract."). *Id.*

The FDIC offered Hammer a loan modification in June 2010. Ex. 3 hereto, Def. Tr. Ex. 17, Proposed Modification. The modification would have brought Hammer current by waiving over $17,000 in unpaid and past-due interest (Ex. 1, pp. 648:18–21, 651:21–24) and would have cut Hammer's monthly payment in half (from more than $1,500 to $749.88) by reducing her interest rate and extending the loan's amortization period. Ex. 4 hereto, Pl. Tr. Ex. 5, Loan Modification Terms. The modification also recapitalized (*i.e.*, added to the principal balance)

$2,303.60 in fees and costs for the foreclosure previously filed against Hammer. Ex. 1, p. 654:10–23; Ex. 2, p. 7, ¶ 9 (authorizing addition of foreclosure fees to principal balance); Ex. 4.

While Hammer could have accepted the modification by returning a signed copy, Hammer chose to instead reject the offer and propose a significantly different loan. Specifically, Hammer changed one of the most basic and critical terms of the loan modification—the amount to be repaid. Hammer struck out the proposed unpaid principal balance of $209,471.59 and inserted a new, reduced, principal balance of $207,167.99. Ex. 5 hereto, Pl. Tr. Ex. 6, Hammer's counteroffer, p. 2; Ex. 1, p. 920:2–6. In other words, Hammer proposed reducing the repayment amount by $2,303.60 (the foreclosure fees recapitalized by the loan modification).

Changing a material term is not an acceptance, but is instead a rejection and counteroffer. *Dawson Gen. Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992) ("A purported acceptance that contains different or additional terms is not a valid acceptance, but is treated as a counter-offer."); *Ebert v. Dr. Scholl's*, 137 Ill. App. 3d 550, 559 (Ill. App. Ct. 1985) (no contract where "plaintiff's original offer was substantially modified by defendant, thus creating not an acceptance, but a counteroffer"). *See also,* Jury Instruction No. 21, Doc. No. 179, p. 21 ("For the acceptance to be valid … Hammer must have agreed to all of the material terms in the offer …"). Thus, Hammer's decision to change the loan amount and insert the lower amount she preferred was a rejection of the FDIC's proposed loan modification and a counteroffer.[2]

### C. Hammer's change to the FDIC's proposal was material.

Hammer's reduction of the loan amount by over $2,300 was a material change. A contract term is material if it is so important that the contract would not have been made without it. *Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 715 (7th Cir. 1993) ("In other

---

[2] Hammer also failed to accept the loan modification offer by June 25, 2010, which was the deadline for return of the signed modification agreement. Ex. 5, p. 1. This independently shows no acceptance.

words, we ask whether the performance of that provision was the *sine qua non* of the contract's fulfillment."). Numerous courts have specifically found that the loan amount is a material term of a loan agreement. *See In re Destron, Inc.*, 59 B.R. 240, 244 (N.D. Ill. Bnkr. 1986) (summary judgment on contract claim where no agreement on material terms; "[t]he minimum elements necessary to establish a contract to lend money are the amount, the interest rate, the duration of the loan and the method of repayment."); *Nelson v. Prod. Credit Ass'n of the Midlands*, 930 F.2d 599, 605 (8th Cir. 1991) (affirming judgment on contract claim; "[t]he district court correctly found that [defendant] and [plaintiffs] did not agree on a loan amount …, this is fatal to the formation of a contract."); *see also Ne. Ill. Reg'l R.R. Corp. v. Kiewit W. Co.*, 396 F. Supp. 2d 913, 921 (N.D. Ill. 2005) ("[p]rice is generally an essential term of a common law contract").[3]

Here, Hammer easily could have accepted the proposed loan modification by returning a signed copy, thereby agreeing to repay the proposed loan amount of $209,471.59. But Hammer

---

[3] There is widespread acceptance that the loan amount is a material term of a loan contract. *See, e.g., First Nat. Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 952 (Ind. 1991) (reversing judgment on contract claim; "there was no binding oral contract… [because] there was no agreement as to the amount of loan, the rate of interest, the duration, the terms of repayment, or security for the loan."); *Suffield Dev. Associates Ltd. P'ship v. Soc'y for Sav.*, 708 A.2d 1361, 1366 (Conn. 1998) (reversing jury verdict on contract claim because "the plaintiff did not produce sufficient evidence to show an agreement as to an essential term of the alleged contract, namely, the loan amount."); *Peterson Development Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 115 (Cal. Ct. App. 1991) (affirming summary judgment on contract claim because commitment letter did not include, among other terms, the loan amount; "[t]he material terms of a loan include … the amount of the loan …."); *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) (affirming dismissal of contract claim where material terms missing; "[i]n a contract to loan money, the material terms will generally be: the amount to be loaned, maturity date of the loan, the interest rate, and the repayment terms."); *Stansel v. Am. Sec. Bank*, 547 A.2d 990, 993 (D.C. Ct. App. 1988) (affirming directed verdict on contract claim in part due to lack of agreement over material terms; "Neither defendant offered evidence of any specific terms of the alleged agreement, such as the exact amount of the loans…"); *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990) (reversing jury verdict for borrowers on contract claim because material terms of loan not agreed upon; "for an agreement to loan money to be enforceable it must contain such essential elements as the amount of money to be loaned, the duration of the loan, the rate of interest, the method of payment, and collateral securing the loan."); *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1159 (E.D. Cal. 2010) (dismissing contract claim because material terms missing; "[i]n the lending context, a loan commitment is not binding on the lender unless it contains all of the material terms of the loan, which include… the amount of the loan….").

(who had a lawyer advising her regarding the loan modification)[4] instead chose to reject that loan amount and propose a lower amount of $207,167.99. Plainly, the amount Hammer was required to repay is a critical term (if not the defining term) of the loan agreement, so Hammer's attempt to reduce the loan amount was a material change. Certainly, no one could credibly argue that if the situation were reversed, and RCS attempted to *increase* the loan amount by over $2,300, then such a change would be deemed immaterial and something Hammer was simply required to accept. Thus, Hammer's proposed reduction of the loan amount was a material change constituting a rejection of the FDIC's proposed loan modification and a counteroffer.

      **D.**    **Hammer's counteroffer was never accepted.**

Hammer made her counteroffer to RCS by sending a signed and altered copy of the loan modification agreement (reflecting her $2,300 reduction in the loan amount) to RCS on or around August 16, 2010. Ex. 1, p. 922:2–6; Ex. 5, p. 5. There is no evidence RCS ever accepted Hammer's counteroffer. Instead, RCS immediately called Hammer's attorney (who had returned the altered loan modification agreement signed by Hammer) and said the change was unacceptable and no loan modification existed. Ex. 1, p. 922:7–10. Thus, there is no evidence that RCS ever accepted Hammer's counteroffer, so no loan modification contract exists.

There is also no evidence the FDIC accepted Hammer's counteroffer, though it had no authority to do so in any event. Hammer made her counteroffer on or after August 16, 2010. Ex. 1, p. 922:2–6; Ex. 5, p. 5. This was more than two weeks *after* servicing of Hammer's loan transferred from the FDIC to RCS. Ex. 6 hereto, Defense Trial Exs. 21 and 22, Servicing Transfer Notices. Hammer acknowledged receiving notice of the transfer. Ex. 1, p. 918:14–20.

---

[4] Ex. 1, pp. 914:23–915:11.

Thus, when Hammer rejected the FDIC's proposed loan modification and made her counteroffer, RCS was the loan servicer and the only entity with authority to accept her counteroffer.

Further, the loan modification as altered by Hammer could not have been accepted because the altered loan amount ($207,167.99) did not match the principal and interest payment ($749.88). RCS's representative offered unrebutted testimony that RCS's servicing system would have rejected a loan modification with those mismatched loan and payment amounts because that payment amount was calculated for the proposed loan amount ($209,471.59), and would not properly amortize for the loan amount as altered by Hammer. Ex. 1, pp. 614:10–620:12. Indeed, mortgage statements with the mismatched loan and payment amounts would be inaccurate and would potentially violate the federal Truth in Lending Act. 15 U.S.C. 1638(f) (requiring disclosure of unpaid principal balance in periodic statements to borrower); 12 C.F.R. § 1026.41(d) (requiring periodic statements to disclose payment amount and unpaid balance). Providing inaccurate monthly statements with the mismatched loan and payment amounts created by Hammer's alteration also could have subjected RCS to liability for deceptive acts under either the federal FTC Act (15 U.S.C. § 45(a)) or equivalent state statutes, including ICFA. Similarly, if RCS had reported incorrect information in the Mortgage Call Report mandated under the Secure and Fair Enforcement for Mortgage Licensing Act of 2008, it could have been liable for providing inaccurate information. *See* 12 U.S.C. 5104(e). Thus, RCS could not have accepted the mismatched loan and payment amounts created by Hammer's alternation.

In sum, Hammer's counteroffer was never accepted, so no loan modification was formed.

### E.     Hammer's conversation with the FDIC is irrelevant.

Finally, the lack of an enforceable loan modification agreement is not changed by Hammer's claimed August 2010 conversation with the FDIC. Hammer testified that she spoke

8

with an individual from the FDIC in August 2010, immediately before making her counteroffer to RCS. That conversation does not create an enforceable loan modification for four reasons.

First, and most significantly, this Court specifically ruled that the conversation was not offered for its truth (because it would then be inadmissible hearsay), so the jury could not consider the conversation in determining if an enforceable loan modification agreement existed:

> Ladies and gentlemen, the statements—as I told you yesterday, statements—by any representatives of the FDIC made to the plaintiff are not being offered for their truth. The FDIC is not here. There's no witness from the FDIC. They are merely being offered to show what Ms. Hammer did in response to statements from someone over the phone that said they were with the FDIC.
>
> **They're especially not being offered in any way to prove whether or not there is a valid contract or not.** Nothing that Ms. Hammer testifies as to whether or not— whether certain things were told to her by the FDIC goes to the issue of—those statements from that person from the FDIC she had on the phone, none of those go to the issue of—whether or not there's a valid contract or mortgage loan modification or not.

Ex. 1, p. 850:10–24 (emphasis added). Thus, this Court's own proper limiting instruction prevents considering the conversation to determine if a loan modification agreement exists.

Second, even aside from this Court's limiting instruction, Hammer's August 2010 conversation with the FDIC has no bearing on whether a loan modification exists because the FDIC no longer serviced the loan. Servicing transferred to RCS as of August 1, 2010, more than two weeks before Hammer's conversation. Ex. 6. Indeed, the individual Hammer spoke with acknowledged that servicing had already transferred. Ex. 1, p. 851:19–20 (Hammer testified the FDIC individual told her "the loan was transferred as of the beginning of the month"). Thus, the FDIC simply had no authority over the loan at that point, and could not have done anything to create an enforceable loan modification agreement.

Third, Hammer's loan could not have been altered by an oral agreement, under both the terms of her loan and the Illinois Statute of Frauds. As part of her original loan, Hammer signed

a "Notice of No Oral Agreements," providing that the terms of her loan "may not be contradicted by evidence of … subsequent oral agreements of the Parties." Ex. 7 hereto, Def. Tr. Ex. 7. Further, the Illinois Statute of Frauds prevents the enforcement of a contract affecting land and for a longer term than one year, unless the contract is in writing and signed by the person against whom enforcement is sought (here, RCS). 740 ILCS 80/2. This applies to Hammer's mortgage which is an interest in land and has a term longer than one year. *See Aames Capital Corp. v. Interstate Bank of Oak Forest*, 315 Ill. App. 3d 700, 703 (Ill. App. Ct. 2000) (mortgage "is an interest in land created by written instrument providing security in real estate to secure the payment of a debt") *citing Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 111 (Ill. App. Ct. 1993). The Statute of Frauds also applies to loan modification agreements. *See Melrose Park Nat'l Bank v. Carr*, 249 Ill. App. 3d 9, 15 (Ill. App. Ct 1993) (written contract within the statute of frauds may not be modified by oral agreement). Thus, an August 2010 conversation could not serve to create an enforceable loan modification agreement where that agreement was never signed by RCS.

Finally, even setting all those issues aside, the substance of the conversation does not even reveal an offer to reduce the principal balance. Instead, the individual Hammer spoke to simply stressed the urgency of sending in the modification immediately, and told Hammer not to worry about the fees "right now." Ex. 1, pp. 851:18–852:4. There is no indication that the person was even purporting to authorize a reduction in the loan amount, rather than express the need to submit the loan modification agreement quickly. Certainly nothing about that conversation shows certain terms as required for an enforceable contract. *See Cheever*, 144 Ill. 2d at 29.

But there is no need for the Court to parse the details of Hammer's purported conversation with the FDIC. As noted above, this Court already (and correctly) ruled the

conversation was inadmissible in determining whether a loan modification agreement existed. And because servicing had already transferred (which Hammer knew), the FDIC had no authority over the loan in any event. Thus, Hammer's August 2010 conversation with the FDIC is irrelevant in determining whether an enforceable loan modification agreement exists.

In summary, Hammer's contract and ICFA claims fall apart without an enforceable loan modification. Hammer undisputedly defaulted on the original terms of her loan, and she had the burden of proving a loan modification that cured her default, but she did not do so. Hammer was *offered* a loan modification, but she rejected it and counteroffered with a loan amount reduced by over $2,300. Hammer's counteroffer was never accepted, so no loan modification agreement was ever formed, and RCS therefore properly pursued collection and foreclosure. As a result, judgment for RCS must be entered on Hammer's contract and ICFA[5] claims.

## II.    Punitive damages should not have been submitted to the jury as a matter of law.

Assuming judgment is entered for RCS on Hammer's two ICFA claims, judgment must also be entered for RCS on Hammer's punitive-damage claim because the ICFA claims were the only claims on which the jury was authorized to award punitive damages. *See* Doc. No. 179, pp. 25, 42, 43, 52 (damages instructions for Hammer's claims). But even if judgment stands on the

---

[5] Judgment for RCS is also required on both ICFA claims because there was no evidence of recoverable damages. While Hammer introduced evidence of emotional distress, the jury was properly instructed that "in order for Hammer to recover emotional damages, she must prove she sustained actual economic damages." Doc. No. 179, p. 39. *See also Morris v. Harvey Cycle and Camper*, 392 Ill. App. 3d 399, 402 (Ill. App. Ct. 2009) (affirming dismissal of ICFA claim because "plaintiff did not allege actual damages in the form of specific economic injuries. She alleged only emotional damages."). And, Hammer's attorneys' fees, court time, or other economic damages relating to the foreclosure filing are not recoverable because the filing of a lawsuit cannot be the basis for an ICFA claim as a matter of law. *Mehra v. Shindler*, No. 14-cv-7506, 2015 WL 1996793, * 4 (N.D. Ill. Apr. 29, 2015) (dismissing ICFA claims based on litigation privilege; "[t]he only proper cause of action based on the filing of a lawsuit is either malicious prosecution or abuse of process."). Thus, Hammer has no recoverable damages on her ICFA claims, and judgment is required for this additional reason. Judgment is also required on Hammer's ICFA deception claim because there is no evidence she was deceived. *See De Bouse v. Bayer*, 235 Ill. 2d 544, 555 (2009) ("[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission."). Hammer cannot establish she was deceived because Hammer never testified to any action she took based on RCS's allegedly deceptive conduct.

ICFA claims, judgment for RCS must still be entered on Hammer's punitive-damage claim because the evidence was insufficient to support punitive damages.

Punitive damages are not favored under Illinois law. *Europlast, Ltd. v. Oak Switch Systems, Inc.*, 10 F.3d 1266, 1276 (7th Cir. 1993) ("The Illinois Supreme Court has noted that '[b]ecause of their penal nature, punitive damages are not favored in the law, and courts must be cautious in seeing that they are not improperly or unwisely awarded.'") *quoting Deal v. Byford,* 127 Ill.2d 192 (1989). Illinois allows punitive damages only when misconduct is "outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others." *Styx v. Wells Fargo Bank, N.A.*, No. 09-5960, 2010 WL 1253971, *3 (N.D. Ill. Mar. 24, 2010) (citing *Loitz v. Remington Arms Co.,* 138 Ill.2d 404, 415-16 (1990); *Stafford v. Puro*, 63 F.3d 1436, 1443 (7th Cir. 1995) (the Illinois Supreme Court "uniformly has required some kind of outrageous behavior for a recovery of punitive damages, something not necessarily presented by unjustified conduct").

A trial court's decision to submit punitive damages to the jury is reviewed *de novo* by an appellate court. *Europlast*, 10 F.3d at 1276. The Seventh Circuit has reversed jury awards of punitive damages where the evidence is insufficient to support the jury's conclusion that such damages were appropriate. *Id.* at 1277 (reversing punitive damage award due to "little if any evidence of 'gross,' 'wanton' or 'malicious' conduct"). Further, courts have specifically recognized that punitive damages are inappropriate where a defendant's conduct was based on a good-faith legal conclusion, even if that conclusion is later found incorrect. *Jeppesen v. Rust*, 8 F.3d 1235, 1237 (7th Cir. 1993) (reversing punitive damages award where plaintiff's "principal contention" was that defendants violated the terms of a joint venture and defendants denied the existence of the joint venture); *Phillips. v. Old Ben Coal Co.*, 1991 Ill. App. LEXIS 72, * 21 (Ill.

App. Ct. 1991) (affirming summary judgment on punitive damage claim where defendant breached duty to plaintiff based on "good faith belief that the [unenforceable contractual] waiver relieved them of any legal duty to prevent [damages at issue]"); *Imperial Utility Corp. v. Cytron*, 673 S.W.2d 858, 859 (Mo. Ct. App. 1984) (affirming directed verdict on punitive damages; "While the jury did find lawyer guilty of conversion …, we do not believe defendant's acts were in any way willful, wanton, malicious or so reckless as to be in utter disregard of consequences. The evidence indicates at most lawyer made an honest mistake.").

Here, all of RCS's conduct was based on its belief that no loan modification existed, and that Hammer was therefore in default under her original loan. RCS had a strong basis for that belief as set forth above. But even if this Court somehow disagrees with RCS's legal conclusion, RCS certainly had a reasonable and good faith basis for its belief. There is no evidence to suggest RCS was recklessly denying the validity of an obviously valid modification.

RCS's good faith is further demonstrated by RCS's repeated attempts to provide Hammer an alternative loan modification to cure her default and avoid further collection and foreclosure activity. Hammer's loan was in default when it transferred to RCS, and RCS immediately invited Hammer to apply for a loan modification. Ex. 8 hereto, Def. Tr. Ex. 16; Ex. 1, pp. 609:5–610:4. When Hammer sent RCS the loan modification agreement she had revised, RCS immediately informed Hammer that no valid modification existed because Hammer had changed the terms of the modification the FDIC had offered. Ex. 1, p. 922:7–10. At that time, RCS again invited Hammer to apply for a loan modification, but she refused, insisting that the loan modification she proposed (with a reduced loan amount and mismatched payment) should control. Ex. 1, p. 922:11–16. Despite Hammer's refusal to apply for a loan modification, RCS evaluated her for a loan modification using information she had submitted to the FDIC, and offered her a loan

13

modification with terms that were nearly identical to the modification offered by the FDIC. Ex. 9 hereto, Def. Tr. Ex. 34 (9/20/10 RCS letter to Hammer offering her modification with identical interest rate as, and monthly payment only $4/month higher than, FDIC's proposed modification); Ex. 1, 632:17–634:9; 636:2–638:11. Ms. Hammer again refused that modification, insisting that she should receive the modification she cobbled together from the FDIC's proposal and the reduced loan amount she created. Ex. 1, pp. 922:22–923:8. RCS only prosecuted the foreclosure after Hammer refused RCS's repeated offers of assistance.[6]

Given the very strong basis RCS had for believing that no enforceable loan modification existed, and given RCS's other attempts to provide Hammer loan modifications, there was no basis for the submission of punitive damages to the jury. Judgment on Hammer's claim for punitive damages should therefore be entered in RCS's favor.

**III.     Judgment should be entered in RCS's favor on Hammer's RESPA claim.**

**A.     There was no valid QWR because the letter was sent to the wrong address.**

Hammer's RESPA claim was based on a purported qualified written request (QWR) sent by Hammer's attorney Jack Kozar to RCS on October 28, 2011. Judgment on the RESPA claim must be entered in RCS's favor because there is no evidence that Kozar sent the letter to the address designated by RCS for a QWR. As a result, the letter (even assuming it otherwise met the criteria for a QWR) did not trigger any obligations under RESPA.

RESPA's implementing regulations allow servicers to "establish a separate and exclusive office and address for the receipt and handling of qualified written requests" by notifying borrowers of the address in either the servicing transfer notice or in a separate mailing. 24 C.F.R.

---

[6] As discussed in RCS's separately filed Motion for New Trial, RCS attempted to introduce other loan modification offers it made to Hammer as additional evidence of its good faith. Motion for New Trial, pp. 2–4. This evidence should have been admitted, and would further show punitive damages should not have been submitted to the jury.

§ 3500.21(e)(1).[7] Many courts, including the only two Circuit Courts of Appeal to consider the issues, hold that RESPA's obligations are not triggered when a borrower fails to send a QWR to the address designated by the servicer. *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1148-49 (10th Cir. 2013) (affirming dismissal of RESPA claim; "Failure to send the QWR to the designated address for receipt and handling of QWRs does not trigger the servicer's duties under RESPA."); *Roth v. CitiMortgage, Inc.*, 756 F.3d 178, 181-82 (2d Cir. 2014) (affirming dismissal of RESPA claim; "As long as a servicer complies with the notice requirements of 24 C.F.R. § 3500.21 for designating a QWR address, a letter sent to a different address is not a QWR, even if an employee at that address (who may not have training in RESPA compliance) in fact responds to that letter."); *Bally v. Homeside Lending, Inc.*, No. 02 C 5799, 2005 WL 2250856, at *2-3 (N.D. Ill. Sept. 8, 2005) (summary judgment on RESPA claim; "only a request sent to the [designated address] may constitute a qualified written request to defendant.").

Here, RCS followed the procedure in 24 C.F.R. § 3500.21 by designating an address (4282 N. Freeway, Fort Worth, TX 76137) for borrowers to send QWR's. *See* Ex. 6 hereto, Def. Tr. Ex. 22, p. 3. But Hammer's attorney sent the purported QWR to a different address: P.O. Box 163889. Ex. 11 hereto, Pl. Tr. Ex. 54, p. 1. And, there was no evidence establishing that the address to which the letter was sent had been designated by RCS at the time the letter was sent. Thus, because Hammer did not send the letter to the address specifically designated by RCS for QWR's, the letter did not trigger any obligations under RESPA. As a result, judgment must be entered for RCS on Hammer's RESPA claim.

---

[7] The version of 24 C.F.R. § 3500.21 that was in effect in November 2011 when the purported QWR was sent is attached hereto as Ex. 10. The regulation was changed in 2014.

**B.      Hammer suffered no damages from any alleged RESPA violation.**

Further, judgment for RCS must be entered on the RESPA claim because Hammer

introduced no evidence that she was damaged by the alleged RESPA violation. As the jury was

properly instructed, actual damages are an element of a RESPA claim. Doc. No. 179, p. 52

("Hammer must also establish that she suffered damages proximately caused by the RESPA

violation."). Further, it is not enough to show damage from other conduct by a loan servicer; the

damage must directly flow from the RESPA violation. *See Byrd v. Homecomings Financial*

*Network*, 407 F. Supp. 2d 937, 946 (N.D. Ill. 2005) (dismissing RESPA claim where damages

not caused by failure to respond to a QWR, but rather by earlier, separate conduct by servicer).

Here, Hammer introduced no evidence of damages resulting from RCS's credit reporting

within 60 days of receipt of the purported QWR. Though Hammer was upset by negative credit

reporting over the course of several years, she admitted that she could not remember any

particular month or year when she obtained a credit report. Ex. 1, p. 904:6-16, p. 933:14-934:6.

Hammer only said she obtained a credit report "[l]ike every year, year and a half, two years,"

(*Id.*, p. 934:3–4), but did not say she viewed a credit report reflecting RCS's credit reporting

within 60 days of receipt of the purported QWR. Similarly, Hammer never offered evidence that

RCS's November 7, 2011 response to the purported QWR caused her damages, or that she even

viewed the response or discussed it with Mr. Kozar, to whom it was sent.

Because Hammer never tied any RESPA violation to emotional distress or other

damages, judgment must be entered on the RESPA claim. *See Konieczka v. Wachovia Mortg.*

*Corp.*, No. 11 C 0071, 2012 WL 1049910, at *4 (N.D. Ill. Mar. 28, 2012) (dismissing RESPA

claim where no evidence that negative credit reporting caused economic damage such as higher

interest rate or denial of credit); *Diedrich v. Ocwen Loan Servicing, LLC*, No. 13-CV-693, 2015

WL 1885630, at *9 (E.D. Wis. Apr. 24, 2015) (summary judgment on RESPA claim where

16

plaintiffs "have not established a causal connection between the RESPA violation (Ocwen's failure to respond to the [QWR] for information) and their emotional distress.").

## <u>CONCLUSION</u>

Hammer's attempt to modify the FDIC's proposed loan modification was a counteroffer that was never accepted, and the lack of an enforceable loan modification eliminates any basis for Hammer's contract and ICFA claims. Judgment for RCS on the contract and ICFA claims must be entered for that reason. Judgment for RCS should also be entered on the punitive damage claims because all of RCS's conduct was based on its reasonable (and correct) belief that no valid loan modification existed, and there was no evidence that RCS's acted willfully or wantonly toward Hammer. Indeed, the unrebutted evidence was that RCS repeatedly tried to provide Hammer an alternative loan modification. Finally, judgment for RCS on Hammer's RESPA claims should be entered because the purported QWR was sent to the wrong address, and because there was no evidence the alleged RESPA violation damaged Hammer. For these reasons, judgment should be entered for RCS on all claims. Alternatively, if any portion of Hammer's claims survive this motion, RCS requests a new trial, or a reduction in damages, for the reasons set forth in the motions filed separately by RCS.

Respectfully submitted,

Residential Credit Solutions, Inc.

/s/ P. Russell Perdew
P. Russell Perdew
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-1712
rperdew@lockelord.com

John P. Ryan
HINSHAW & CULBERTSON
222 N. LaSalle Street, Ste 300
Chicago, IL 60601
(312) 704-3000
jryan@hinshawlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, an attorney, hereby certify that on June 3, 2015, I electronically filed the above document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ P. Russell Perdew
P. Russell Perdew